# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

ALLIANCE FOR FAIR BOARD
RECRUITMENT, *et al.*,

*Petitioners*,

v.

SECURITIES AND EXCHANGE
COMMISSION,

*Respondent,*

NASDAQ STOCK MARKET, L.L.C.,

*Intervenor*.

No. 21-60626

## PETITIONER ALLIANCE FOR FAIR BOARD RECRUITMENT'S UNOPPOSED MOTION FOR ENTRY OF PROTECTIVE ORDER GOVERNING CONFIDENTIALITY

Petitioner Alliance for Fair Board Recruitment ("Petitioner") respectfully requests the entry of a protective order governing the production, use, and submission of certain confidential and otherwise restricted information for the above-captioned case. Intervenor Nasdaq and Petitioner National Center for Public Policy Research do not oppose

this motion; and Respondent SEC takes no position on this motion. In further support of this motion, Petitioner states:

1.　　Petitioner challenges the final order of the Securities and Exchange Commission entitled *"Self-Regulatory Organizations; The Nasdaq Stock Market LLC; Order Approving Proposed Rule Changes, as Modified by Amendments No. 1, to Adopt Listing Rules Related to Board Diversity and to Offer Certain Listed Companies Access to a Complimentary Board Recruiting Service,"* Release No. 34-92590 (Aug. 6, 2021).

2.　　Petitioner's brief is due November 22, 2021. In that brief and in accompanying affidavits, Petitioner—a membership organization—will establish its standing by demonstrating that it has members who have suffered injury because of the actions at issue in this case. Because of the risks of invasion of privacy, harassment, and other harms attendant to publicly disclosing the identity of Petitioner's members, a protective order is appropriate.

3.　　Federal Rule of Appellate Procedure 25(a)(5) incorporates Federal Rule of Civil Procedure 5.2(e), entitled "protective orders," which

states that, for "good cause," the Court "may by order in a case: (1) require redaction of additional information; or (2) limit or prohibit a nonparty's remote electronic access to a document filed with the court." Fed. R. Civ. P. 5.2(e).

4. Good cause exists in this case to allow Petitioner to submit evidence to establish standing without publicly revealing the identity or identifying characteristics of its members, who would potentially face reprisal, harassment, or business disadvantages if their identities were revealed publicly.

5. Although there is a general right to inspect public court records, that right does not extend to records that may be "used to gratify private spite or promote public scandal" or that "might harm a litigant's competitive standing" in the business world. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Moreover, courts look more favorably on protecting identities where the suit is against the government and there is a risk of harassment given the subject nature of the suit. *See, e.g., Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (allowing plaintiffs to proceed pseudonymously because "[t]his suit—challenging a government

activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"). As a result, plaintiffs challenging laws on sensitive or controversial topics often proceed without publicly revealing their identities. *See June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2168 (2020) (Alito, J., dissenting) ("[A] woman who challenges an abortion restriction can sue under a pseudonym, and many have done so. Other precautions may be taken during the course of litigation to avoid revealing their identities.") (citation omitted); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995) (noting that, in the context of First Amendment rights, "[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible").

6. The matter is even more straight-forward where an organization openly sues under its own name but seeks to protect the identity of its members, as the public can still readily identify the plaintiff (or petitioner, as here). Indeed, this Court has previously assumed as undisputed that, in a suit against the federal government, a

membership organization can protect the identity of its members while still establishing injury for standing purposes. *See Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (noting that the plaintiff could have established standing by identifying a "'Jane Doe' member of the [plaintiff] who, if required to fill out question 19 on SF–85–P, would tend to incriminate herself by giving truthful answers").

7. Under these factors, good cause exists for issuing a protective order here. This petition is against the federal government and challenges government action; the public discussion of matters of race and sex discrimination may be highly sensitive and contentious, especially when it concerns high-profile positions and obligations in the corporate and securities world; Petitioner has sued in its own name and does not seek to keep that identity private; and the public revelation of the identity of Petitioner's members would likely cause them to suffer harassment, invasions of privacy, and loss of business standing. Indeed, one member of Petitioner who has been involved in prior lawsuits about race-based government actions and who is willing to identify himself publicly—Edward Blum—has been called a white supremacist, regularly

receives threatening and vile emails and texts, and has repeatedly received death threats for his advocacy work against racial preferences. *See* Exhibit A, Declaration of Edward Blum. Such behavior, sadly, is not uncommon for people who challenge race-based programs. In litigation challenging Harvard's affirmative-action program, members of the plaintiff organization—including Mr. Blum—submitted several affidavits detailing pages' worth of examples of harassment and death threats they had received, as well as the chilling effect the revelation of their identity (for those members who had not chosen to be revealed publicly) would have. *See, e.g.*, Exhibit B, Declaration of Abigail Fisher, *Students for Fair Admissions v. President & Fellows of Harvard College*, No. 1:14-cv-14176 (D. Mass. Apr. 29, 2016) (ECF No. 150-4).

8. Because such actions would surely deter individuals and entities from joining Petitioner, it keeps its membership rolls strictly confidential to ensure that its members do not face retaliation or reputational harm. *See NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) (recognizing that the "[i]nviolability of privacy in group association may in many circumstances be indispensable to preservation

of freedom of association, particularly where a group espouses dissident beliefs"); *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2384 (2021) (striking down a California law requiring disclosure of organization's donors because, *inter alia*, "[w]hen it comes to a person's beliefs and associations, broad and sweeping state inquiries into these protected areas ... discourage citizens from exercising rights protected by the Constitution" (alteration and quotation marks omitted)).

9.　　In addition to the concerns of harassment, this action is likely to involve non-public, sensitive, and detailed information about certain of Petitioner's members' professional backgrounds, experiences, and personal identity characteristics such as their race, sex, and other identity characteristics such as whether Plaintiffs' members identify as gay, lesbian, bisexual, or transgender. Special protection from public disclosure and from use for any purpose other than prosecution of this action is warranted. *See* Fed. R. Civ. Proc. 26(c) ("The court may, for good cause, issue an order to protect a party or person from *annoyance, embarrassment, oppression, or undue burden or expense.*" (emphasis added)).

7

10. For all these reasons, the Court should grant this motion and issue the attached protective order, *see* Exhibit C, which provides narrowly focused—but critically important—protections against public disclosure.

Dated: November 3, 2021　　　　　　　　　Respectfully submitted,

<u>/s/ Jonathan Berry</u>
C. BOYDEN GRAY
JONATHAN BERRY
　*Counsel of Record*
R. TRENT MCCOTTER
MICHAEL BUSCHBACHER
JORDAN E. SMITH
BOYDEN GRAY & ASSOCIATES
801 17th St NW, #350
Washington, DC 20006
(202) 955-0620
berry@boydengrayassociates.com

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

Dated: November 3, 2021  /s/ Jonathan Berry  
　　　　　　　　　　　　　Jonathan Berry  
　　　　　　　　　　　　　Boyden Gray & Associates  
　　　　　　　　　　　　　801 17th St NW, #350  
　　　　　　　　　　　　　Washington, DC 20006  
　　　　　　　　　　　　　(202) 955-0620

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the word limit of Fed. R. App. P. 27(d)(2)(A), excluding the parts of the document exempted by Fed. R. App. P. 32(f), because this document contains 1182 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

Dated: November 3, 2021　　　　　　　/s/ Jonathan Berry
　　　　　　　　　　　　　　　　　　Jonathan Berry
　　　　　　　　　　　　　　　　　　Boyden Gray & Associates
　　　　　　　　　　　　　　　　　　801 17th St NW, #350
　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　(202) 955-0620