# EXHIBIT A

## **AFFIDAVIT OF** 

1. My name is ▮▮▮▮▮▮▮▮▮▮ I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my own capacity.

2. I am a dues-paying member of the Alliance for Fair Board Recruitment.

3. I have an active interest in being recruited as an independent director by one or more boards, and I am ready, willing, and able to apply for such positions, including with Nasdaq-listed companies.

4. I am a senior executive, entrepreneur, and community leader with a proven track record of building and managing successful and profitable businesses in diverse industries. 

5. 

6. 

7. I have also played the leading role in the management and growth of 

8.

9.

10. I established [REDACTED]

11. I developed and served as president o[REDACTED]

12. On August 6, 2021, the Securities and Exchange Commission approved Nasdaq Rule 5605(f).

13. Under Rule 5605(f), most Nasdaq-listed companies must have (or explain why they do not have) two "diverse" directors, meaning:

    a. at least one director who self-identifies as female, and

    b. at least one "minority" director meaning an individual who self-identifies as either "lesbian, gay, bisexual, transgender, or as a member of the queer community," or "Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities."

14. Smaller reporting companies and foreign companies may instead meet the quota with two individuals who self-identify as female. Companies with five or fewer directors may meet the quota with just one "diverse" director.

15. Nasdaq Global Select Market or Nasdaq Global Market companies are required to have—or explain why they do not have—one "diverse" director by August 7, 2023, and two "diverse" directors by August 6, 2025.

16. Nasdaq Capital Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two "diverse" directors by August 6, 2026.

17. Companies with boards that have five or fewer directors, regardless of listing tier, are required to have, or explain why they do not have, one "diverse" director by August 7, 2023.

18. If a company fails to adhere to Rule 5605(f), the Exchange's Listing Qualifications Department would promptly notify the company and inform it that it has until the later of its next annual shareholders meeting or 180 days from the event that caused the deficiency to cure the deficiency. If a company

does not regain compliance within the applicable cure period, the Listings Qualifications Department would issue a Staff Delisting Determination Letter. This would delist the company from the exchange.

19.   I do not self-identify as female or lesbian, gay, bisexual, transgender, or as a member of the queer community. I also do not identify as Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities.

20.   Because I do not self-identify as any of the diverse-director categories favored by Nasdaq's Rule 5605(f), the Rule places me at a significant competitive disadvantage compared to other candidates who do satisfy one or more of these mandated identity characteristics. Under the Rule, most Nasdaq-listed companies are encouraged—indeed, practically compelled—by the comply-or-explain framework to discriminate against me when filling their board seats. This means I will never be able to compete fairly in any of the approximately 3,000 Nasdaq-listed companies again.

21.   Based on my knowledge of the independent directorship market, Nasdaq's Rule 5605(f) will injure me. By limiting my access to a fair and unbiased director recruiting process, I believe that the Rule is very likely to deprive me of monetary compensation associated with being a corporate director at a Nasdaq-listed company. It also deprives me of the dignity and opportunity of being fairly considered on my individual merits for the positions that I am qualified for at Nasdaq-listed companies, and unfairly stigmatize me based on my sex, race, and other identity characteristics.

22.   I also own common stock in Netflix, a public corporation that is traded on the Nasdaq stock exchange.

23.   As a shareholder, I also believe that focusing on the board's racial, ethnic, or sex and sexual preference composition is an empty distraction that is likely to harm my share value in the long run.

24.   Netflix's board of directors consists of twelve directors. 2021 Netflix Proxy Statement 10.

25.   Netflix's certificate of incorporation and bylaws authorize shareholders to vote at annual shareholder meetings. Netflix's Certificate of Incorporation Art. IV, Netflix Bylaws § 2.8.

26. Directors on Netflix's board are elected by a plurality of the votes of the shares present in person or represented by proxy at the annual meeting. Netflix Bylaws § 2.8.

27. Netflix's bylaws also allow shareholders to nominate director candidates. Netflix Bylaws § 2.14(ii); Netflix Proxy Statement 19.

28. Netflix must include shareholder nominations in its proxy statement if they comply with the Exchange Act's regulations governing shareholder proposals. 17 CFR § 240.14a-8.

29. Netflix's directors serve staggered three-year terms and are therefore regularly subject to elections. Netflix Bylaws § 3.3.

30. I am able and intend to vote in all future elections for directors of Netflix.

31. I believe it would greatly harm Netflix's share value for it to ignore the Rule's quotas and instead "explain" why it has not complied with them.

32. Nasdaq's new rule requires or encourages me to discriminate based on race and ethnicity, sexual orientation, and sex. A reasonable shareholder deciding how to vote could not assume that other shareholders would vote to elect the requisite number of "diverse" board members. Therefore, each shareholder would understand that a failure to vote for a "diverse" candidate would contribute to the risk of requiring the company to publish disclosures about its diversity data and exposing it to negative press. Indeed, Nasdaq must have concluded that this "diversity" rule would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for a white, heterosexual, male board member, Nasdaq's Rule could not achieve its goal of reaching increasing "diversity" on boards.

33. A true and correct copy of my curriculum vitae, detailing my educational and professional experience, is attached to this declaration.

34. I declare under penalty of perjury that the foregoi

Executed on: November __/6__, 2021







Page 3

# EXHIBIT B

## AFFIDAVIT OF ██████

1. My name is ███████ I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my individual capacity.

2. I am a dues-paying member of the Alliance for Fair Board Recruitment.

3. I have an active interest in being recruited as an independent director by one or more boards, and I am ready, willing, and able to apply for such positions, including with Nasdaq-listed companies.

4. I have extensive professional experience as an independent director, having served as a director and the chairperson of ██████████████

5. In particular, in 2006, I was appointed to the board of ██████████

6. ████████ is a publicly traded company listed on The Nasdaq Stock Market, LLC ("Nasdaq") stock exchange.

7. ███████████████████████████████████████████



8. ███████████████████████████████████████████

9. ███████████████████████████████████████████

██████████████████████████████

10.

11. During my tenure at ████████ the company implemented robust internal controls and had no reported violations of any law or regulation relating to auditing.

12. ████ I was discharged from my position as an independent director at ████████████████████████████████ informed me orally that it was because of "this woman thing." By that, I understood ████ to mean the increased legal, regulatory and financial pressure to recruit women to boards. ████████████████ the firm was in no position to expand the board of directors to accommodate compensation for an additional director.

13. I was replaced with ████████████████ a woman.

14. I continue to be interested in being hired as an independent director.

15. Even before my departure from ▇▇▇▇▇▇ I pursued opportunities to work as an independent director at several other corporations.

16. I recently was considered as an independent-director candidate by Nasdaq-listed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ However, I ultimately was not recruited to the board. The company instead recruited a woman. The company said that any future vacancies will have to be filled by women or underrepresented minorities.

17. On August 6, 2021, the Securities and Exchange Commission approved Nasdaq Rule 5605(f).

18. Under Rule 5605(f), most Nasdaq-listed companies must have (or explain why they do not have) two "diverse" directors, meaning:

    a. at least one director who self-identifies as female, and

    b. at least one "minority" director meaning an individual who self-identifies as either "lesbian, gay, bisexual, transgender, or as a member of the queer community," or "Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities."

19. Smaller reporting companies and foreign companies may instead meet the quota with two individuals who self-identify as female. Companies with five or fewer directors may meet the quota with just one "diverse" director.

20. Nasdaq Global Select Market or Nasdaq Global Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two diverse directors by August 6, 2025.

21. Nasdaq Capital Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two diverse directors by August 6, 2026.

22. Companies with boards that have five or fewer directors, regardless of listing tier, are required to have, or explain why they do not have, one diverse director by August 7, 2023.

23. If a company fails to adhere to Rule 5605(f), the Exchange's Listing Qualifications Department would promptly notify the company and inform it that it has until the later of its next annual shareholders meeting or 180 days

from the event that caused the deficiency to cure the deficiency. If a company does not regain compliance within the applicable cure period, the Listings Qualifications Department would issue a Staff Delisting Determination Letter. This would delist the company from the exchange.

24. I do not self-identify as female or lesbian, gay, bisexual, transgender, or as a member of the queer community. I also do not identify as Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities.

25. Because I do not self-identify as any of the diverse-director categories favored by Nasdaq's Rule 5605(f), the rule places me at a significant competitive disadvantage compared to other candidates who do satisfy one or more of these mandated identity characteristics. Under the Rule, most Nasdaq-listed companies are encouraged—and, indeed, practically compelled—by the comply-or-explain framework to discriminate against me when filling their board seats. This means I will never be able to compete fairly for board positions with any of the approximately 3,000 Nasdaq-listed companies again.

26. Based on my personal experience with other discriminatory requirements and my knowledge of the independent directorship market, Nasdaq's Rule 5605(f) will injure me. By limiting my access to a fair and unbiased director recruiting process, I believe that the Rule is very likely to deprive me of monetary compensation associated with being a corporate director at a Nasdaq-listed company. It also deprives me of the dignity and opportunity of being fairly considered on my individual merits for the positions that I am qualified for at Nasdaq-listed companies, and unfairly stigmatize me based on my sex and identity characteristics.

27. A true and correct copy of my curriculum vitae, detailing my educational and professional experience, is attached to this declaration.

28. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: *16 November*, 2021



Resume

# EXHIBIT C

## AFFIDAVIT OF

1.  My name is ███████████        I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my own capacity.

2.  I am a dues-paying member of the Alliance for Fair Board Recruitment.

3.  I have an active interest in being recruited as an independent director by one or more boards, and I am ready, willing, and able to apply for such positions, including with Nasdaq-listed companies.

4.  I have extensive professional experience as a member of multiple boards of directors, including service as ███████████████████████████

5.  I began my career by advising boards and management teams on ██████

6.  I am the executive chairman of ██████████████

7.  I was recently appointed to serve on the board of directors for the

8.  I served on the board of directors of ██████████



9.    I also served as a retained executive search consultant ███████

10.   I served on the board of directors of ███████

11.   I served on the board of directors for ███████

12.   I served on the ███████

13.   I was chairman of ███████

14.   I received my ███████

15.   On August 6, 2021, the Securities and Exchange Commission approved Nasdaq Rule 5605(f).

16.   Under Rule 5605(f), most Nasdaq-listed companies must have (or explain why they do not have) two "diverse" directors, meaning:

       a.   at least one director who self-identifies as female, and

       b.   at least one "minority" director meaning an individual who self-identifies as either "lesbian, gay, bisexual, transgender, or as a member of the queer community," or "Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities."

17. Smaller reporting companies and foreign companies may instead meet the quota with two individuals who self-identify as female. Companies with five or fewer directors may meet the quota with just one "diverse" director.

18. Nasdaq Global Select Market or Nasdaq Global Market companies are required to have—or explain why they do not have—one "diverse" director by August 7, 2023, and two "diverse" directors by August 6, 2025.

19. Nasdaq Capital Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two "diverse" directors by August 6, 2026.

20. Companies with boards that have five or fewer directors, regardless of listing tier, are required to have, or explain why they do not have, one "diverse" director by August 7, 2023.

21. If a company fails to adhere to Rule 5605(f), the Exchange's Listing Qualifications Department would promptly notify the company and inform it that it has until the later of its next annual shareholders meeting or 180 days from the event that caused the deficiency to cure the deficiency. If a company does not regain compliance within the applicable cure period, the Listings Qualifications Department would issue a Staff Delisting Determination Letter. This would delist the company from the exchange.

22. I do not self-identify as female or lesbian, gay, bisexual, transgender, or as a member of the queer community. I also do not identify as Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities.

23. Because I do not self-identify as any of the diverse-director categories favored by Nasdaq's listing rule, the diversity rule places me at a significant competitive disadvantage compared to other candidates who do satisfy one or more of these mandated identity characteristics. Under the rule, most Nasdaq-listed companies are encouraged—indeed, practically compelled—by the comply-or-explain framework to discriminate against me when filling their board seats. This means I will never be able to compete fairly in any of the Nasdaq-listed companies again.

24. I believe that the Rule is very likely to deprive me of monetary compensation associated with being a corporate director at a Nasdaq-listed company. It also deprives me of the dignity and opportunity of being fairly considered on my individual merits for the positions for which I am qualified at Nasdaq-listed companies.

25. I also own common stock in Microsoft Corp. and Apple Inc., public corporations that are traded on the Nasdaq stock exchange.

26. As a shareholder, I also believe that focusing on the board's racial, ethnic, or sex and sexual preference composition is an empty distraction that is likely to harm my share value in the long run.

27. Microsoft's board of directors consists of twelve directors. 2020 Microsoft Proxy Statement 20.

28. Each share of common stock of Microsoft is entitled to one vote for each director nominated at the annual shareholder meeting. 2020 Microsoft Proxy Statement 1.

29. Directors on Microsoft's board are elected by a majority of the votes cast. Microsoft's Bylaws 13.

30. Microsoft's directors are all elected annually and are therefore regularly subject to elections. 2020 Proxy Statement 5.

31. Apple's board of directors consists of eight directors. 2021 Apple Inc. Proxy Statement 14.

32. Each share of Apple stock is entitled to one vote for each director nominated at the annual shareholder meeting. 2021 Apple Inc. Proxy Statement 16.

33. Directors on Apple's board are elected by a majority of the votes cast. 2021 Apple Inc. Proxy Statement 16.

34. Apple's directors are all elected annually and are therefore regularly subject to elections. 2021 Apple Inc. Proxy Statement 16.

35. I am able and intend to vote in all future elections for directors of Microsoft and Apple.

36. I believe it would greatly harm Apple and Microsoft's share value for them to ignore the Rule's quotas and instead "explain" why they have not complied with them.

37. Nasdaq's new Rule requires or encourages me to discriminate based on race and ethnicity, sexual orientation, and sex as a shareholder of these two companies. A reasonable shareholder deciding how to vote could not assume that other shareholders would vote to elect the requisite number of "diverse" board members. Therefore, each shareholder would understand that a failure to vote for a "diverse" candidate would contribute to the risk of requiring the company to publish disclosures about its diversity data and exposing it to negative press. Indeed, Nasdaq must have concluded that this "diversity" rule

would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for a white, heterosexual, male board member, Nasdaq's Rule could not achieve its stated goal of reaching increasing "diversity" on boards.

38. A true and correct copy of my curriculum vitae, detailing my educational and professional experience, is attached to this declaration.

39. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 16, 2021



Page 2



# EXHIBIT D


## AFFIDAVIT OF ▮▮▮▮▮▮

1. My name is ▮▮▮▮▮▮▮▮ am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my own capacity.

2. I am a dues-paying member of the Alliance for Fair Board Recruitment.

3. I have served as chairman of the board of ▮▮▮▮▮▮ and president ▮▮▮▮▮▮ I have been a director of ▮▮▮▮▮▮

4. ▮▮▮▮ is a Nasdaq-listed company and is also the parent company ▮▮▮▮ nd various other corporations.

5. I have an active interest in maintaining my current board of directors positions and in seeking additional director positions.

6. I am a member of ▮▮▮▮▮▮

7. In 2017, I was named ▮▮▮▮▮▮

8. I graduated from ▮▮▮▮▮▮

9. On August 6, 2021, the Securities and Exchange Commission approved Nasdaq Rule 5605(f).

10. Under the listing Rule 5605(f), most Nasdaq-listed companies, including ▮▮▮▮ must have (or explain why they do not have) two "diverse" directors, meaning:

    a. at least one director who self-identifies as female, and

    b. at least one "minority" director meaning an individual who self-identifies as either "lesbian, gay, bisexual, transgender, or as a member of the queer community," or "Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities."

XXXSUBJECTXX0XN0020XX00060X0RX0242XN02345XN0243X06060242200X1CRXXXXXX

11. Smaller reporting companies and foreign companies may instead meet the quota with two individuals who self-identify as female. Companies with five or fewer directors may meet the quota with just one "diverse" director.

12. Nasdaq Global Select Market or Nasdaq Global Market companies are required to have—or explain why they do not have—one "diverse" director by August 7, 2023, and two "diverse" directors by August 6, 2025.

13. Nasdaq Capital Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two "diverse" directors by August 6, 2026.

14. Companies with boards that have five or fewer directors, regardless of listing tier, are required to have, or explain why they do not have, one "diverse" director by August 7, 2023.

15. If a company fails to adhere to Rule 5605(f), the Exchange's Listing Qualifications Department would promptly notify the company and inform it that it has until the later of its next annual shareholders meeting or 180 days from the event that caused the deficiency to cure the deficiency. If a company does not regain compliance within the applicable cure period, the Listings Qualifications Department would issue a Staff Delisting Determination Letter. This would delist the company from the exchange.

16. I do not self-identify as female or lesbian, gay, bisexual, transgender, or as a member of the queer community. I also do not identify as Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities.

17. Because I do not self-identify as any of the categories favored by Nasdaq's listing rule, I believe the diversity rule places me at a significant competitive disadvantage compared to other candidates who do satisfy one or more of these mandated identity characteristics. Under the Rule, Nasdaq companies face significant pressure to discriminate against me when filling out their board seats. This means that I will never be able to compete on a level playing field for a director position in any Nasdaq-listed company again.

18. Based on my knowledge of the directorship market, Nasdaq's Rule 5605(f) injures me. By limiting my access to a fair and unbiased director recruiting process, I believe that the Rule deprives me of the dignity and opportunity of being fairly considered on my individual merits for the positions that I am qualified for at Nasdaq-listed companies, and it unfairly stigmatizes me based on my sex, race, and other identity characteristics.

19. As a member of ⬛⬛⬛⬛⬛⬛ board of directors, I am responsible for selecting board members to fill newly created directorships resulting from an increase in the number of the directors, and any vacancy on the board of directors must be filled by an affirmative vote of a majority of the directors then in office. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ Thus, I believe that Nasdaq's rule will force or encourage me to discriminate against male and non-minority candidates or else face the negative publicity, reputational, and economic consequences of being forced to explain ⬛⬛⬛⬛⬛⬛ noncompliance with Nasdaq's gender, race, and sexual-orientation quotas.

20. Due to this pressure to discriminate in selecting directors, I will have to discriminate on the basis of race, sex, ethnicity, and sexual orientation in selecting new board members as part of my duty to act in the best interests of ⬛⬛⬛⬛⬛⬛ But by discriminating in this manner, however, I may be exposed to liability under 42 U.S.C. § 1981, as well as other state and local civil rights laws.

21. I also own stock in ⬛⬛⬛⬛⬛ a public corporation that is traded on the Nasdaq stock exchange.

22. ⬛⬛⬛⬛⬛ board of directors consists of ⬛⬛⬛⬛⬛⬛⬛⬛ directors, ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

23. ⬛⬛⬛⬛⬛ shareholders are entitled to vote at annual shareholder meetings.

24. Directors on ⬛⬛⬛⬛⬛ board are elected by a majority of the votes of the shares present in person or represented by proxy at the annual meeting. ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛

25. ⬛⬛⬛⬛⬛ also allows shareholders to nominate director candidates.

26. ⬛⬛⬛⬛⬛ directors serve one-year terms and are therefore regularly subject to elections. ⬛⬛⬛⬛⬛⬛⬛⬛

27. I am able and intend to vote in all future elections for directors of ⬛⬛⬛⬛⬛



28. As a ▮▮▮▮▮▮▮ shareholder, I also believe that focusing on the board's racial, ethnic, or sex and sexual preference composition is an empty distraction that is likely to harm my share value in the long run.

29. But Nasdaq's new Rule requires or encourages me to discriminate based on race and ethnicity, sexual orientation, and sex in casting my vote for directors. I do not think that a reasonable shareholder deciding how to vote could assume that other shareholders would vote to elect the requisite number of "diverse" board members. Therefore, I believe that each shareholder—including myself—would understand that a failure to vote for a "diverse" candidate would contribute to the risk of requiring the company to publish an "explanation" about why it did not satisfy Nasdaq's diversity quotas. The option to "explain" why the company did not satisfy Nasdaq's preferred quotas is no option at all, as it forces the company to single itself out for holding a view contrary to Nasdaq's on a very controversial issue, resulting in negative press, reputational harm, shaming, and political retribution—all of which would have a negative economic effect on the company. I believe that Nasdaq must have concluded that this "diversity" rule would have such an effect on individual shareholders; otherwise, if each individual shareholder felt free to vote for a white, heterosexual, male board member, Nasdaq's rule could not achieve its goal of increasing "diversity" on boards.

30. A true and correct copy of my biography, detailing my professional experience, is attached to this declaration.

31. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November ___17___, 2021

SUBJECT TO PROTECTIVE ORDER IN CASE NO. 21-60626 (5TH CIR.)

Biography





# EXHIBIT E

## AFFIDAVIT OF ▮▮▮▮▮

1. My name is ▮▮▮▮▮▮▮ I am over the age of 18 and am competent to make this declaration. The facts set forth in this declaration are based on my personal knowledge and are submitted solely in my own capacity.

2. I am a dues-paying member of the Alliance for Fair Board Recruitment.

3. I am ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4. I was a member of ▮▮▮▮▮▮▮▮▮▮▮▮ board of directors ▮▮▮▮ have been a member of ▮▮▮▮▮▮▮ board of directors from ▮▮▮▮ I also served

5. ▮▮▮▮▮▮ s a Nasdaq-listed company and is the parent company of ▮▮▮▮ and various other corporations.

6. I have an active interest in being recruited as an independent director by one or more boards, as well as an interest in maintaining my current board positions.

7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9. On August 6, 2021, the Securities and Exchange Commission approved Nasdaq Rule 5605(f).

10.  Under the listing Rule 5605(f), most Nasdaq-listed companies, including ▬▬▬▬▬▬ must have (or explain why they do not have) two "diverse" directors, meaning:

   a.  at least one director who self-identifies as female, and

   b.  at least one "minority" director, meaning an individual who self-identifies as either "lesbian, gay, bisexual, transgender, or as a member of the queer community," or "Black or African American, Hispanic or Latinx, Asian, Native American, or Alaska Native, Native Hawaiian or Pacific Islander, or as two or more races or ethnicities."

11.  Smaller reporting companies and foreign companies may instead meet the quota with two individuals who self-identify as female. Companies with five or fewer directors may meet the quota with just one "diverse" director.

12.  Nasdaq Global Select Market or Nasdaq Global Market companies are required to have—or explain why they do not have—one "diverse" director by August 7, 2023, and two "diverse" directors by August 6, 2025.

13.  Nasdaq Capital Market companies are required to have, or explain why they do not have, one diverse director by August 7, 2023, and two "diverse" directors by August 6, 2026.

14.  Companies with boards that have five or fewer directors, regardless of listing tier, are required to have, or explain why they do not have, one "diverse" director by August 7, 2023.

15.  If a company fails to adhere to Rule 5605(f), the Exchange's Listing Qualifications Department must promptly notify the company and inform it that it has until the later of its next annual shareholders meeting or 180 days from the event that caused the deficiency to cure the deficiency. If a company does not regain compliance within the applicable cure period, the Listings Qualifications Department must issue a Staff Delisting Determination Letter. This would delist the company from the exchange.

16.  Rule 5605(f) impacts me personally and professionally in a number of harmful ways.

17.  ***Stigma and Dignitary Harm.*** The Rule deprives me of the dignity and opportunity of being fairly considered on my individual merits and unfairly stigmatizes me based on my ethnicity.

a. I am a Hispanic man. The Rule's condescending approach to "helping" me and other Hispanics creates and perpetuates harmful stereotypes about Hispanics as being somehow inferior to whites. It implies that Hispanics cannot meaningfully compete for board positions without Nasdaq's assistance. As my own professional history demonstrates, however, this is not the case. I have succeeded not because of my skin color or ethnicity, but because of my hard work, intelligence, and drive to succeed. Going forward, however, I will be viewed as a "diversity hire" because of this Rule, unfairly undermining my reputation and devaluing my career accomplishments. This is deeply offensive and harmful to my professional reputation.

b. I will also suffer dignitary harm because the incentive to hire Hispanic board directors will result in my being recruited for other positions in the future based more on my ethnic identity than my skills and experience. Based on my knowledge and experience of the business world, moreover, I believe that if hired, the stigma of being a "diversity hire" will mean that I would not be given important, substantive assignments.

18. **Compelled Speech**. Nasdaq's rule pressures me to make my self-identification as "Hispanic" or "Latinx" (a term invented by American liberals that virtually no Latino or Latina would ever use, much less "self identify" as) public so that ▮▮▮▮▮ can claim compliance with the Rule. But this personal information is irrelevant to my fitness for my work as a director, and I strongly object to being forced to make any statement about my ethnicity in that context. And there is no meaningful choice under Nasdaq's Rule: I have a fiduciary duty to ▮▮▮▮▮ and I cannot risk the company suffering adverse consequences from not satisfying Nasdaq's diversity Rule, meaning I am indeed compelled to reveal and speak about my ethnicity despite Nasdaq claiming it is "voluntary" to do so.

19. **The Rule Forces Me to Discriminate**. As an independent member of ▮▮▮▮▮ board of directors, I am responsible for selecting board members to fill newly created directorships resulting from an increase in the number of the directors, and any vacancy on the board of directors must be filled by an affirmative vote of a majority of the directors then in office. ▮▮▮▮▮ ▮▮▮▮▮ Thus, I believe that Nasdaq's rule will force me to discriminate against male and non-minority candidates or else face the potentially disastrous publicity consequences of explaining ▮▮▮▮▮ noncompliance with the gender, race, and sexual-orientation quotas.

20. Due to this pressure to discriminate in selecting directors, I will have to discriminate on the basis of race, sex, ethnicity, and sexual orientation in selecting new board members as part of my duty to act in the best interests of █████████ But by discriminating in this manner, however, I may be exposed to liability under 42 U.S.C. § 1981, as well as other state and local civil rights laws.

21. A true and correct copy of my curriculum vitae, detailing my educational and professional experience, is attached to this declaration.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November ⁄7, 2021



