No. 21-60626

# In the United States Court of Appeals for the Fifth Circuit

───────

ALLIANCE FOR FAIR BOARD RECRUITMENT, and
NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,
*Petitioners,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

───────

On Petition for Review of an Order of the
United States Securities and Exchange Commission
No. 34-92590

───────

**AMICUS BRIEF OF THE STATES OF ARIZONA, ALABAMA, ALASKA, ARKANSAS, FLORIDA, INDIANA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, OKLAHOMA, SOUTH CAROLINA, TEXAS, AND UTAH IN SUPPORT OF PETITIONER NATIONAL CENTER FOR PUBLIC POLICY RESEARCH**

───────

**MARK BRNOVICH**
**ATTORNEY GENERAL**

Joseph A. Kanefield
*Chief Deputy & Chief of Staff*

Brunn ("Beau") W. Roysden III
  *Solicitor General*

\* Counsel of Record

Drew C. Ensign\*
  *Deputy Solicitor General*
Wilson C. Freeman
James Rogers
  *Senior Litigation Counsel*
2005 N. Central Avenue
Phoenix, AZ 85004
Phone:    (602) 542-5025
Fax:      (602) 542-4377

*Counsel for the State of Arizona*

Dated: December 27, 2021

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Petitioner National Center for Public Policy Research is a non-profit corporation and has no parent corporations or subsidiaries.

2. Margaret A. Little and Sheng Li of The New Civil Liberties Alliance—*Counsel* for Petitioner National Center for Public Policy Research.

3. Petitioner Alliance for Fair Board Recruitment is a non-profit membership corporation and has no parent corporations or subsidiaries.

4. C. Boyden Gray, Jonathan Berry, R. Trent McCotter, Michael Buschbacher, and Jordan E. Smith of Boyden Gray & Associates—*Counsel* for Petitioner Alliance for Fair Board Recruitment.

5. The Securities and Exchange Commission is a federal agency.

6. Michael A. Conley, Daniel E. Matro, Vanessa Ann Countryman, and Tracy A. Hardin of the Securities and Exchange Commission—*Counsel* for Respondent Securities and Exchange Commission.

7. Allyson N. Ho, Bradley G. Hubbard, Amir C. Tayrani, and Amalia E. Reiss of Gibson, Dunn & Crutcher LLP; John Zecca, Jeffrey S. Davis, John Yetter, and Joanne Pedone of The Nasdaq Stock Market L.L.C.; and Burt M. Rublin, Stephen J. Kastenberg, Paul Lantieri III, Peter F. Andrews, and Seth D. Berlin of Ballard Spahr LLP—*Counsel* for Intervenor Nasdaq Stock Market, L.L.C.

8. The States of Arizona, Alabama, Alaska, Arkansas, Florida, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, and Utah.

9. Drew C. Ensign, Joseph A. Kanefield, Brunn ("Beau") W. Roysden III, Wilson C. Freeman, and James Rogers—*Counsel for Amici States.*[1]

December 27, 2021

s/ Drew C. Ensign
Drew C. Ensign

---

[1] Because the States are permitted to file amicus briefs without consent under FRAP 29(a)(2), they are not subject to FRAP 29(a)(4)(E). Nonetheless, the Amici States declare that this brief was authored entirely by counsel for the Amici States, and no party or person contributed money that was intended to fund preparation or submission of this brief. The Interests of Amici section, *infra* at 1, sets forth the identity of the Amici States, as well as their interests and authority. *See* FRAP 29(a)(4)(E).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................... vi

INTERESTS OF AMICI ............................................................................ 1

ARGUMENT ............................................................................................. 2

I.    Nasdaq's Quota Rule Violates The Constitution's Guarantee Of Equal Protection.............................................................................. 3

    A.    Nasdaq's Quota Rule, And The SEC's Approval Of It, Are Subject To Constitutional Scrutiny.................................. 3

    B.    SEC's Quotas Violate The Equal Protection Clause .............. 5

II.    The Quota Rule Undermines Traditional State Authority And Violates State Laws.................................................................. 8

    A.    Nasdaq And The SEC's Rulemaking Authority Is Limited in Scope....................................................................... 9

    B.    Nasdaq's Regulation Of Corporate Board Diversity Alters the Federal-State Balance......................................... 11

    C.    The Purported Statutory Justifications For The Quota Rule Are Inadequate ........................................................... 15

CONCLUSION ....................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors, Inc. v. Pena,*
  515 U.S. 200 (1995) ................................................................ 6

*Alabama Ass'n of Realtors v. HHS,*
  141 S. Ct. 2485 (2021) ................................................ 8, 9, 14

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
  458 U.S. 592 (1982) ................................................................ 1

*Application of Griffiths,*
  413 U.S. 717 (1973) ................................................................ 6

*Archer v. SEC,*
  133 F.2d 795 (8th Cir. 1943) .................................................. 4

*Bass v. Bd. of Cnty. Comm'rs, Orange Cty., Fla.,*
  256 F.3d 1095 (11th Cir. 2001) .............................................. 6

*Bolling v. Sharpe,*
  347 U.S. 497 (1954) ................................................................ 5

*Business Roundtable v. SEC,*
  905 F.2d 406 (D.C. Cir. 1990) ........................................ 2, 18

*Cort v. Ash,*
  422 U.S. 66 (1975) ................................................................ 12

*Crawford v. Carroll,*
  529 F.3d 961 (11th Cir.2008) ................................................ 6

*Crimmins v. Am. Stock Exch., Inc.,*
  346 F. Supp. 1256 (S.D.N.Y. 1972) ...................................... 4

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) ........................................................ 17

*Fisher v. Univ. of Texas at Austin,*
    570 U.S. 297 (2013) ............................................................ 6, 8

*Graham v. Richardson,*
    403 U.S. 365 (1971) ............................................................... 6

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991) ............................................................... 9

*Grutter v. Bollinger,*
    539 U.S. 306 (2003) ................................................ 2, 7, 8, 19

*Hughes v. SEC,*
    174 F.2d 969 (D.C. Cir. 1949) ............................................. 4

*Intercontinental Indus., Inc. v. Am. Stock Exch.,*
    452 F.2d 935 (5th Cir. 1971) ............................................... 4

*J.E.B. v. Alabama ex rel. T.B.,*
    511 U.S. 127 (1994) ............................................................... 6

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991) ............................................................... 12

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) ............................................... 3

*League of United Latin Am. Citizens v. Perry,*
    548 U.S. 399 (2006) ............................................................... 2

*Marsh v. Rosenbloom,*
    499 F.3d 165 (2d Cir. 2007) ............................................... 11

*McDonald v. Santa Fe Trail Transp. Co.,*
    427 U.S. 273 (1976) ............................................................... 7

*Meland v. Weber,*
    2 F.4th 838 (9th Cir. 2021) ............................................... 13

*Morrison v. Olson,*
    487 U.S. 654 (1988) ............................................................... 7

*Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) .......................................................................... 8, 19

*Rooms v. SEC*,
  444 F.3d 1208 (10th Cir. 2006) ............................................................ 4

*Santa Fe Industries v. Green*,
  430 U.S. 462 (1977) .............................................................................. 12

*Sessions v. Morales*,
  137 S. Ct. 1678 (2017) ........................................................................... 5

*Sloan v. New York Stock Exch., Inc.*,
  489 F.2d 1 (2d Cir. 1973) ...................................................................... 5

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976) .............................................................................. 17

*U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*,
  140 S. Ct. 1837 (2020) ........................................................................... 9

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) ............................................................................... 9

*Villani v. N.Y. Stock Exch., Inc.*,
  367 F. Supp. 1124 (S.D.N.Y. 1973) ...................................................... 5

*Villani v. N.Y. Stock Exch., Inc.*,
  348 F. Supp. 1185 (S.D.N.Y. 1972) ...................................................... 4

*Whitman v. American Trucking Ass'ns*,
  531 U.S. 457 (2001) ............................................................................... 9

**STATUTES**

15 U.S.C. § 78f ....................................................................................... 10

15 U.S.C. § 78s ......................................................................................... 3

A.R.S. § 41-1463 ..................................................................................... 13

Cal. A.B. 979 (2020) ............................................................................... 13

viii

H.R. 1277, 117th Cong. (2021-2022) ........................................................ 14

H.R. 5084, 116th Cong. (2019-2020) ........................................................ 14

**REGULATIONS**

86 Fed. Reg. 44,424 (2021) ........................................................ 13, 16, 17

**OTHER AUTHORITIES**

Commissioner Elad L. Roisman, *Statement on the Commission's Order Approving Exchange Rules Relating to Board Diversity* (Aug. 6, 2021), https://www.sec.gov/news/public-statement/roisman-board-diversity 11

Commissioner Hester M. Pierce, *Statement on the Commission's Order Approving Proposed Rule Changes* (Aug. 6, 2021), https://www.sec.gov/news/public-statement/peirce-nasdaq-diversity-statement-080621 ..................................................................... 16

Commissioners Allison Herren Lee and Caroline A. Crenshaw, *Statement on Nasdaq's Diversity Proposals – A Positive First Step for Investors* (Aug. 6, 2021), https://www.sec.gov/news/public-statement/statement-nasdaq-diversity-080621 ................................... 11

Nasdaq, *Response to Comments and Notice of Filing of Amendment No. 1*, File No. SR-NASDAQ-2020-081 (Feb. 26, 2021) ....................... 16, 17

**INTERESTS OF AMICI**

The States of Arizona, Alabama, Alaska, Arkansas, Florida, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, and Utah ("Amici States" or "States") have significant interests here. As explained below, the States have a unique interest as States are traditionally the primary regulator of corporate structure and organization.

In addition, the States have "quasi-sovereign interest[s] in the health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). Moreover, federal courts "ha[ve] had too much experience with the political, social, and moral damage of discrimination not to recognize that a State has a substantial interest in assuring its residents that it will act to protect them from these evils." *Id.* at 609.

The legal issues in this case, and the real-world impact of their resolution, are of great importance to the Amici States. Nasdaq's proposed rule and the SEC's approval of it not only contravenes the federal Constitution, but potentially undermines state law and policy on corporate board composition and on racial and gender preferences.

1

# ARGUMENT

"It is a sordid business, this divvying us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring in part). But far from having any apparent aversion to such sordidness, SEC has an unmistakable appetite for it. It therefore has blessed explicit race-based requirements for listed corporations, and further threw in overt sex-based and sexual-orientation-based mandates to boot. And the type of preference it adopted is particularly pernicious: outright quotas rather than any sort of "plus factor."

None of this is remotely lawful, and SEC has transgressed both constitutional and statutory limitations on its authority. Indeed, SEC's Quota Rule "amount[s] to outright racial balancing, which is patently unconstitutional." *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003).

Similarly, SEC lacks the "power to interfere in the management of corporations." *Business Roundtable v. SEC*, 905 F.2d 406, 411 (D.C. Cir. 1990). SEC thus lacked statutory authority to embark upon its social-justice-fixated frolic into the compositions of corporate boards generally—even if it had managed to stay within constitutional bounds in the course of that trek. That its crusade culminated in the form of

2

adopting explicit race- and sex-based quotas makes this case an exceptionally easy one: the Quota Rule violates both the Constitution and exceeds the SEC and Nasdaq's statutory authority. Its manifest illegality warrants forceful rejection by this Court.

## I.   Nasdaq's Quota Rule Violates The Constitution's Guarantee Of Equal Protection

### A.   Nasdaq's Quota Rule, And The SEC's Approval Of It, Are Subject To Constitutional Scrutiny

The Securities Exchange Act commands that "[t]he Commission shall approve a proposed rule change of a self-regulatory organization," but only if the Commission "finds that such proposed rule change is consistent with the requirements of this chapter and the rules and regulations issued under this chapter that are applicable to such organization." 15 U.S.C. § 78s(b)(2)(C)(i).

As with all federal statutes, the Securities Exchange Act and its regulations cannot mandate any actions that violate the Constitution: "[G]overnmental discretion is always constrained by the Constitution." *Kinney v. Weaver*, 367 F.3d 337, 357 (5th Cir. 2004). Furthermore, "regulation [under the Securities Exchange Act] must be done in strict subordination to constitutional and lawful safeguards of individual

rights." *Archer v. SEC*, 133 F.2d 795, 803 (8th Cir. 1943); *Hughes v. SEC*, 174 F.2d 969, 975 (D.C. Cir. 1949) (same).

And when it comes to Self-Regulatory Organizations ("SROs"), such as Nasdaq, their "intimate involvement ... with the Securities and Exchange Commission brings [them] within the purview of the Fifth Amendment controls over governmental due process." *Intercontinental Indus., Inc. v. American Stock Exch.*, 452 F.2d 935, 941 (5th Cir. 1971); accord *Rooms v. SEC*, 444 F.3d 1208, 1214 (10th Cir. 2006) (holding that Due Process requirements apply to NASD). When an SRO acts "under the self-regulatory power conferred upon it by the 1934 Act, it is engaged in governmental action, federal in character, and the Act imposed upon it the requirement that it comply with …. Fifth Amendment due process." *Crimmins v. American Stock Exch., Inc.*, 346 F. Supp. 1256, 1259 (S.D.N.Y. 1972).

"It is now beyond dispute that the Fifth Amendment due process requirements as to federal action apply to" SROs because they act "under the self-regulatory power conferred upon it by a federal agency, the Securities & Exchange Commission." *Villani v. N.Y. Stock Exch., Inc.*, 348 F. Supp. 1185, 1188 n.1 (S.D.N.Y. 1972), *opinion modified on*

*reargument*, 367 F. Supp. 1124 (S.D.N.Y. 1973), *and aff'd sub nom. Sloan v. New York Stock Exch., Inc.*, 489 F.2d 1 (2d Cir. 1973).

The Supreme Court established in *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) that the Equal Protection Clause of the Fourteenth Amendment is incorporated against the federal government through the Fifth Amendment's Due Process Clause. *See also Sessions v. Morales*, 137 S. Ct. 1678, 1686 n.1 (2017) (the Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment").

Because SROs such as Nasdaq are bound by the Due Process Clause of the Fifth Amendment, and because that clause incorporates the requirements of the Equal Protection Clause, Nasdaq is unambiguously subject to the requirements of the Equal Protection Clause. (For ease of reference this brief will refer to the Equal Protection Clause, although it is technically the Fifth Amendment's incorporation of that clause that applies to SEC/Nasdaq.)

## B.    SEC's Quotas Violate The Equal Protection Clause

SEC's Quota Rule is one of the most blatant and sweeping violations of the Equal Protection Clause in decades. The Quota Rule

5

imposes explicit preferences on the basis of race, ethnicity, and sex. All of these categories trigger strict or heightened scrutiny. *See, e.g., Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) ("[A]ll racial classifications … must be analyzed by a reviewing court under strict scrutiny"); *Application of Griffiths*, 413 U.S. 717, 721 (1973); *Graham v. Richardson*, 403 U.S. 365, 371, 375-76 (1971); *see also Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 310 (2013) (strict scrutiny applies to "action that treats a person differently on account of his race or ethnic origin"); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994) (applying "heightened scrutiny" to sex-based classifications). The justifications for the quota rule offered by Nasdaq and the SEC could not pass rational basis review, let alone strict or heightened scrutiny.

"Discrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim. Our Constitution does not distinguish between races and neither do [courts]." *Bass v. Bd. of Cnty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001) *overruled in part on other grounds* by *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). The law is blind—the same legal standards and protections apply regardless of the race, ethnicity, or sex that is treated

differently. *See, e.g. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976) (holding that Civil Rights Act applies "to racial discrimination in private employment against white persons").

Moreover, the type of race- and sex-based preferences here are particularly crude and odious: outright quotas rather than any sort of holistic analysis or plus factor. "[T]his wolf comes as a wolf." *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting).

"Properly understood, a 'quota' is a program in which a certain fixed number or proportion of opportunities are reserved exclusively for certain minority groups." *Grutter*, 539 U.S. at 335 (cleaned up). "Quotas impose a fixed number or percentage which must be attained." *Id.* (cleaned up).

The Rule at issue here plainly does just that, imposing a fixed-number requirement for (1) women and (2) either racial minorities or self-identified LGBTQ+ members. (SEC does not explain the apparent and complete interchangeability of racial minorities and members of the LBBTQ+ community in its social justice hierarchy.)

But quotas are "patently unconstitutional." *Id.* at 308 (explaining that seeking "to assure some specified percentage of a particular group

merely because of its race or ethnic origin would be patently unconstitutional"). "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" *Fisher*, 570 U.S. at 311 (quoting *Parents Involved in Community Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 732 (2007)).[2]

## II. The Quota Rule Undermines Traditional State Authority And Violates State Laws

The federal courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance'" and to use "exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Alabama Ass'n of Realtors v. HHS (hereinafter "Alabama Realtors")*, 141 S. Ct. 2485, 2489 (2021) (quotation omitted). *Accord Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468 (2001). The Supreme Court has required this sort of clear statement of agency authority in a range of circumstances,

---

[2] Nor does the penalty for non-compliance—*i.e.*, requiring corporations to announce their failure to meet the quota and stigmatize themselves—render the Quota Rule constitutional. The imposition of *any* penalty for non-compliance with an unconstitutional requirement violates the Constitution, even if the penalty is not the most extreme available (here complete delisting).

from regulation of "the landlord-tenant relationship," *Alabama Realtors*, 141 S. Ct. at 2489, to the regulation of private property, *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 140 S. Ct. 1837, 1849–50 (2020), to the regulation of the retirement age of state court judges, *Gregory v. Ashcroft*, 501 U.S. 452, 460–61 (1991).

The SEC, acting through its approval of the Nasdaq Quota Rule, seeks to encroach upon an area of traditional state concern: corporate governance. The Exchange Act was deliberately limited in scope and has never been understood to allow entities like Nasdaq to use their management authority over the financial system to address matters outside the maintenance of fair and honest markets in securities. Here, the Quota Rule is transparently an attempt to effectuate social change, although falsely (but only intermittently) characterized as a mere disclosure requirement. This Court should see through this ruse and recognize the far-reaching impact of Nasdaq's Rule.

## A. Nasdaq And The SEC's Rulemaking Authority Is Limited in Scope

SROs like Nasdaq do not have unlimited power to make rules under the Exchange Act. Sections 6(b)(5) and 6(b)(8) of the Exchange Act, 15 U.S.C. § 78f(b)(5), (b)(8), require that the rules of a national

securities exchange be designed to achieve at least one of several goals, including preventing fraudulent and manipulative acts and practices, promoting just and equitable principles of trade, removing impediments to, and perfecting the mechanism of, a free and open market and a national market system, or protecting investors and the public interest. *Id.* The same section expressly states that Nasdaq's rules must *not*, among other things, regulate matters unrelated to the purposes of the Exchange Act or the administration of the exchange. *Id.*

In other words, Nasdaq's rule must be grounded in the Exchange Act's overarching purposes and must be tied to one of the several enumerated goals under the Act. But the purpose of the Quota Rule is to force companies to adopt Nasdaq's racial and gender quotas to redress historical imbalances and to fix "harmful disparities in representation," as the SEC's commissioners explained in statements accompanying their approval of the rule. *See* Commissioner Elad L. Roisman, *Statement on the Commission's Order Approving Exchange Rules Relating to Board Diversity* (Aug. 6, 2021), https://www.sec.gov/news/public-statement/roisman-board-diversity ("Throughout history, there have been too many barriers preventing

10

deserving individuals from participating fully in our economy… it is important for all of us to assess the causes for such barriers and move to address them."); Commissioners Allison Herren Lee and Caroline A. Crenshaw, *Statement on Nasdaq's Diversity Proposals – A Positive First Step for Investors* (Aug. 6, 2021), https://www.sec.gov/news/public-statement/statement-nasdaq-diversity-080621 ("There is a continued, harmful disparity in the representation of a wide range of communities in our capital markets.").

These Commissioners were thus simply stating the obvious—the purpose of the Rule is not to encourage disclosure neutrally, but to reshape corporate governance in their desired image.

### B. Nasdaq's Regulation Of Corporate Board Diversity Alters the Federal-State Balance

The Second Circuit has recognized that "corporate law is overwhelmingly the province of the states." *See Marsh v. Rosenbloom*, 499 F.3d 165, 176–77 (2d Cir. 2007) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98–99 (1991)). Similarly, "the Supreme Court expressly has cautioned against displacement of state law" in this area. *Id.* at 177. Indeed, in *Santa Fe Industries v. Green*, 430 U.S. 462, 479 (1977), the Court expressly refused to hold that the Exchange Act

11

provided a cause of action for corporate mismanagement because it "would overlap and quite possibly interfere with state corporate law" and "federalize" an area of traditional state concern. *Id.* (citing *Cort v. Ash*, 422 U.S. 66, 85 (1975)). The Court there explained that "investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors, state law will govern the internal affairs of the corporation." *Id.* (emphasis added).

There is no question that corporate board composition is a traditional state concern. Board composition might even be called the quintessential example of the "internal affairs of the corporation" that are outside federal reach without express Congressional authorization. *Id.* In fact, as Nasdaq and the SEC recognized, several states have enacted or adopted policies related to board diversity. *See Order Approving Proposed Rule Changes to Adopt Listing Rules Related to Board Diversity*, 86 Fed. Reg. 44,424, 44,438 (2021). *See also* Cal. A.B. 979 (2020) (requiring corporations headquartered in California to have female and "underrepresented" directors). The choice to have such laws—or not to have them—is a matter for the states, subject to

12

constitutional and statutory limitations. *See also Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021) (shareholders had standing to challenge sex-based quotas for boards of directors).

Furthermore, the Quota Rule is at least in tension with—if not outright violation of—the existing civil rights laws of States. For example, Arizona's Civil Rights Law expressly states that employers may not discriminate in employment on the basis of race or sex and may not "limit, segregate or *classify* employees or applicants" "because of the individual's race, color, religion, sex, age or national origin or on the basis of disability." A.R.S. § 41-1463 (emphasis added). But the Quota Rule necessarily requires corporations to "classify" directors based on prohibited grounds.

Accordingly, SEC's Quota Rule interferes with and alters the federal-state balance in corporate management. And, as stated above, Congress must use "exceedingly clear language" to allow agencies to alter this balance. *See Alabama Realtors*, 141 S. Ct. at 2489 (quotation omitted). Indeed, Congress has repeatedly considered legislation which would provide such exceedingly clear language and expressly require companies to disclose or engage in active board diversity measures. *See,*

*e.g.*, H.R. 1277, 117th Cong. (2021-2022) (requiring certain issuers of securities to disclose the racial, ethnic, and gender composition of their boards of directors and executive officers, as well as their plans to promote diversity among those groups); H.R. 5084, 116th Cong. (2019-2020) (same).

In this context, the Court should require a clear connection between Nasdaq's rule and the existing purposes of the Exchange Act. But as stated above, the true purpose here is hardly secret: SEC commissioners in their accompanying statements are forthright that the Quota Rule is designed to redress historical discrimination and increase minority representation on corporate boards. *See supra* at 10-11. SEC is not even bothering to say the "quiet part" quietly.

Since these purposes are plainly outside the scope of the Exchange Act, Nasdaq and the SEC have attempted to formally justify the Rule with reference to the Exchange Act's purposes of disclosure and honesty in securities transactions. This justification does not withstand scrutiny.

## C.    The Purported Statutory Justifications For The Quota Rule Are Inadequate

Nasdaq and the SEC both concluded that the rule was permissible and furthered the purposes of the Exchange Act because it would cause disclosure of information related to board diversity, and this disclosure would benefit investors.[3] For example, Nasdaq asserted that "investors consider diversity disclosures material to their investment and voting decisions" and that the Quota Rule would "level the playing field for [investors] by providing them with accessible, comparable, transparent information that is material to their voting and investment decisions." Nasdaq, *Response to Comments and Notice of Filing of Amendment No. 1*, File No. SR-NASDAQ-2020-081 at 12-13 (Feb. 26, 2021) (Nasdaq Letter). Similarly, the SEC argued that the rule would make "consistent and comparable information relating to the corporate governance of

---

[3]  Nasdaq also asserted that the Quota Rule would increase returns by improving company performance. *See* Nasdaq Letter at 8-9. As explained in the Brief filed by the Alliance for Fair Board Recruitment, Brief at 54-57, this justification was not relied on by the SEC and was effectively refuted. *See also* Commissioner Hester M. Pierce, *Statement on the Commission's Order Approving Proposed Rule Changes* (Aug. 6, 2021),                https://www.sec.gov/news/public-statement/peirce-nasdaq-diversity-statement-080621 (acknowledging that SEC views Nasdaq's evidence on company performance as "equivocal" and arguing that this "should have doomed" the Rule).

Nasdaq-listed companies … widely available on the same basis to investors, which would increase efficiency for investors that gather and use this information." 86 Fed. Reg. at 44,438.

There are two problems with this explanation. *First*, the Quota Rule is not simply a disclosure rule. *See supra* at 10-11. Rather, the Quota Rule requires an "explanation" if the diversity quotas are not met. This explanation is—for all intents and purposes—a punishment for non-compliance with SEC's quotas. Indeed, using the threat of a forced apology and bad PR to force companies to increase diversity is the purpose of the Quota Rule, as Nasdaq effectively admits. Nasdaq expressly states that it is not simply seeking to increase disclosure but to "encourage" companies to increase board diversity. *See* Nasdaq Letter at 25-26 (discussing how "regulatory action" can "increas[e] board diversity" and how "absent encouragement, progress toward increased board diversity has been demonstrably slow").

This Court need not cast a blind eye to Nasdaq's avowed purposes and the actual effect of the Quota Rule in evaluating it; it is not, in other words, "required to exhibit a naiveté from which ordinary citizens are free.'" *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575-76

(2019) (citation omitted). Nasdaq has been perfectly clear what the intent of the Quota Rule is—and it is not merely "disclosure." This Court should take Nasdaq at its word as to its true objectives.

*Second*, the Exchange Act's fundamental concern with disclosure extends only to the disclosure of *material* information. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 447 (1976) ("[T]here must be a substantial likelihood that disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.") (cleaned up). The SEC never establishes that diversity information meets the materiality standard. Instead, the SEC asserts that it is allowed to enhance "transparency" even when the information is not material, as long as such disclosures do not "conflict with existing federal securities laws." 86 Fed. Reg. at 44,440. This view is simply incompatible with the principles articulated above—*i.e.*, that rules which alter the federal-state balance must have clear Congressional authorization. *Supra* at 11-13. This extension of the SEC's disclosure authority into spheres which impinge on State prerogatives is not at all supported by the Exchange Act, much less "clearly" so.

17

The D.C. Circuit has previously struck down an SEC rule governing SROs which attempted to insert the Exchange Act into traditional state-law corporate governance issues. In *Business Roundtable*, the D.C. Circuit rejected a rule which would have barred national security exchanges from listing stock of corporations which adopted certain prohibited stock voting structures. 905 F.2d at 407. The D.C. Circuit explained that the 1934 Exchange Act "did not seek to regulate the stockholders' choices" and did not give the SEC or the exchanges the "power to interfere in the management of corporations." *Id.* at 411. In so doing, the *Business Roundtable* court rejected various SEC explanations tying the rule to the Exchange Act because they could not provide an explanation justifying the rule which would not also justify a claim to regulate "corporate governance as a whole." *Id.* at 413. Rather, the D.C. Circuit required a strong tie between the proffered rule and the Exchange Act's fundamental purposes.

The same principle controls here. There is simply no tie between the Quota Rule and federal law which would justify overturning State authority. The Quota Rule thus exceeds SEC's authority and trespasses upon the State's traditional authority.

18

## CONCLUSION

The Quota Rule adopts explicit race- and sex-based quotas and is hence "patently unconstitutional." *Grutter*, 539 U.S. at 308. SEC's willingness to employ such crude tools as outright quotas, which are plainly repugnant to the Constitution, is alarming. "Accepting [SEC's] approach would do no more than move us from 'separate but equal' to 'unequal but [putatively] benign.'" *Parents Involved*, 551 U.S. at 742. Moreover, SEC lacks statutory authority to promulgate the Quota Rule, and has no license to impose its preferred vision of social justice on publicly traded companies.

Because SEC has transgressed both constitutional and statutory limitations on its authority, the Quota Rule merits decisive rejection by this Court.

Dated:  December 27, 2021

Respectfully submitted,

**MARK BRNOVICH**
**ATTORNEY GENERAL**

<u>s/ Drew C. Ensign</u>

Joseph A. Kanefield
*Chief Deputy & Chief of Staff*

Brunn ("Beau") W. Roysden III
  *Solicitor General*

\*  Counsel of Record

Drew C. Ensign\*
  *Deputy Solicitor General*
Wilson C. Freeman
James Rogers
  *Senior Litigation Counsel*
2005 N. Central Avenue
Phoenix, AZ 85004
Phone:    (602) 542-5025
Fax:       (602) 542-4377

*Counsel for the State of Arizona*

**ALSO SUPPORTED BY:**

STEVE MARSHALL
*Alabama Attorney General*

TREG R. TAYLOR
*Alaska Attorney General*

LESLIE RUTLEDGE
*Arkansas Attorney General*

ASHLEY MOODY
*Florida Attorney General*

DEREK SCHMIDT
*Kansas Attorney General*

DANIEL CAMERON
*Kentucky Attorney General*

THEODORE E. ROKITA
*Indiana Attorney General*

JEFF LANDRY
*Louisiana Attorney General*

LYNN FITCH
*Mississippi Attorney General*

ERIC S. SCHMITT
*Missouri Attorney General*

AUSTIN KNUDSEN
*Montana Attorney General*

DOUGLAS J. PETERSON
*Nebraska Attorney General*

JOHN M. O'CONNOR
*Oklahoma Attorney General*

ALAN WILSON
*South Carolina Attorney General*

KEN PAXTON
*Texas Attorney General*

SEAN D. REYES
*Utah Attorney General*

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because it contains 3,597 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).


s/ Drew C. Ensign
Drew C. Ensign

## CERTIFICATE OF SERVICE

I, Drew C. Ensign, hereby certify that I electronically filed the foregoing Brief of Amici Curiae States of Arizona, Alabama, Alaska, Arkansas, Florida, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Oklahoma, South Carolina, Texas, and Utah in with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on January 6, 2022, which will send notice of such filing to all registered CM/ECF users.

s/ Drew C. Ensign
Drew C. Ensign