No. 21-60626

# In the United States Court of Appeals for the Fifth Circuit

ALLIANCE FOR FAIR BOARD RECRUITMENT;
NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

On Petition for Review of an Order of the
Securities and Exchange Commission

## ADDENDUM OF INTERVENOR THE NASDAQ STOCK MARKET LLC

John Zecca
Jeffrey S. Davis
John Yetter
Joanne Pedone
THE NASDAQ STOCK MARKET LLC
805 King Farm Boulevard
Rockville, Maryland  20850

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103

Seth D. Berlin
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, D.C.  20006

Allyson N. Ho
Bradley G. Hubbard
Paulette C. Miniter
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone: (214) 698-3100
Facsimile:  (214) 573-2900

Amir C. Tayrani
Amalia E. Reiss
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Counsel for Intervenor The Nasdaq Stock Market LLC*

## INDEX TO ADDENDUM

| Tab | Document |
| --- | --- |
| A | Exchange Act to U.S. Code Conversion Chart |
| B | 15 U.S.C. § 78f |
| C | 15 U.S.C. § 78o-3 |
| D | 15 U.S.C. § 78s |
| E | 15 U.S.C. § 78w |
| F | 15 U.S.C. § 78y |
| G | 17 C.F.R. § 229.407 |
| H | 17 C.F.R. § 240.12d2-2 (1970) |
| I | 17 C.F.R. § 240.12d2-2 (2021) |
| J | 17 C.F.R. § 240.19b-4 |

Dated:  February 25, 2022

Respectfully submitted,


 /s/ *Allyson N. Ho*

John Zecca
Jeffrey S. Davis
John Yetter
Joanne Pedone
THE NASDAQ STOCK MARKET LLC
805 King Farm Boulevard
Rockville, Maryland  20850

Allyson N. Ho
Bradley G. Hubbard
Paulette C. Miniter
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2971
*aho@gibsondunn.com*
*bhubbard@gibsondunn.com*
*pminiter@gibsondunn.com*

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103

Seth D. Berlin
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, D.C.  20006

Amir C. Tayrani
Amalia E. Reiss
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Counsel for Intervenor*
*The Nasdaq Stock Market LLC*

## CERTIFICATE OF SERVICE

I certify that, on February 25, 2022, a true and correct copy of this Addendum was served via the Court's CM/ECF system on all counsel of record.

 /s/ Allyson N. Ho
Allyson N. Ho

# TAB A

## EXCHANGE ACT TO U.S. CODE CONVERSION CHART

| Exchange Act | U.S. Code |
|---|---|
| Section 6 | 15 U.S.C. § 78f |
| Section 15A | 15 U.S.C. § 78o-3 |
| Section 19 | 15 U.S.C. § 78s |
| Section 23 | 15 U.S.C. § 78w |
| Section 25 | 15 U.S.C. § 78y |

# TAB B

(6) the cooperation with and assistance to State securities administrators by the national securities associations to promote investor protection;

(7) how the funding of national securities associations is used to support the mission of the national securities associations, including—

(A) the methods of funding;

(B) the sufficiency of funds;

(C) how funds are invested by the national securities association pending use; and

(D) the impact of the methods, sufficiency, and investment of funds on regulatory enforcement by the national securities associations;

(8) the policies regarding the employment of former employees of national securities associations by regulated entities;

(9) the ongoing effectiveness of the rules of the national securities associations in achieving the goals of the rules;

(10) the transparency of governance and activities of the national securities associations; and

(11) any other issue that has an impact, as determined by the Comptroller General, on the effectiveness of such national securities associations in performing their mission and in dealing fairly with investors and members;[1]

**(b) Reimbursements for cost of reports**

**(1) Reimbursements required**

The Commission shall reimburse the Government Accountability Office for the full cost of making the reports under subsection (a), as billed therefor by the Comptroller General.

**(2) Crediting and use of reimbursements**

Such reimbursements shall—

(A) be credited to the appropriation account ''Salaries and Expenses, Government Accountability Office'' current when the payment is received; and

(B) remain available until expended.

(Pub. L. 111–203, title IX, § 964, July 21, 2010, 124 Stat. 1910.)

CODIFICATION

Section was enacted as part of the Investor Protection and Securities Reform Act of 2010 and also as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and not as part of the Securities Exchange Act of 1934 which comprises this chapter.

EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

DEFINITIONS

For definitions of terms used in this section, see section 5301 of Title 12, Banks and Banking.

## § 78e. Transactions on unregistered exchanges

It shall be unlawful for any broker, dealer, or exchange, directly or indirectly, to make use of the mails or any means or instrumentality of interstate commerce for the purpose of using any facility of an exchange within or subject to the jurisdiction of the United States to effect any transaction in a security, or to report any such transaction, unless such exchange (1) is registered as national securities exchange under section 78f of this title, or (2) is exempted from such registration upon application by the exchange because, in the opinion of the Commission, by reason of the limited volume of transactions effected on such exchange, it is not practicable and not necessary or appropriate in the public interest or for the protection of investors to require such registration.

(June 6, 1934, ch. 404, title I, § 5, 48 Stat. 885.)

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78f. National securities exchanges

**(a) Registration; application**

An exchange may be registered as a national securities exchange under the terms and conditions hereinafter provided in this section and in accordance with the provisions of section 78s(a) of this title, by filing with the Commission an application for registration in such form as the Commission, by rule, may prescribe containing the rules of the exchange and such other information and documents as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

**(b) Determination by Commission requisite to registration of applicant as a national securities exchange**

An exchange shall not be registered as a national securities exchange unless the Commission determines that—

(1) Such exchange is so organized and has the capacity to be able to carry out the purposes of this chapter and to comply, and (subject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) to enforce compliance by its members and persons associated with its members, with the provisions of this chapter, the rules and regulations thereunder, and the rules of the exchange.

(2) Subject to the provisions of subsection (c) of this section, the rules of the exchange provide that any registered broker or dealer or natural person associated with a registered broker or dealer may become a member of such exchange and any person may become associated with a member thereof.

(3) The rules of the exchange assure a fair representation of its members in the selection of its directors and administration of its affairs and provide that one or more directors shall be representative of issuers and investors and not be associated with a member of the exchange, broker, or dealer.

(4) The rules of the exchange provide for the equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using its facilities.

---

[1] So in original. The semicolon probably should be a period.

(5) The rules of the exchange are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest; and are not designed to permit unfair discrimination between customers, issuers, brokers, or dealers, or to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter or the administration of the exchange.

(6) The rules of the exchange provide that (subject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) its members and persons associated with its members and persons associated with its members shall be appropriately disciplined for violation of the provisions of this chapter, the rules or regulations thereunder, or the rules of the exchange, by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction.

(7) The rules of the exchange are in accordance with the provisions of subsection (d) of this section, and in general, provide a fair procedure for the disciplining of members and persons associated with members, the denial of membership to any person seeking membership therein, the barring of any person from becoming associated with a member thereof, and the prohibition or limitation by the exchange of any person with respect to access to services offered by the exchange or a member thereof.

(8) The rules of the exchange do not impose any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter.

(9)(A) The rules of the exchange prohibit the listing of any security issued in a limited partnership rollup transaction (as such term is defined in paragraphs (4) and (5) of section 78n(h) of this title), unless such transaction was conducted in accordance with procedures designed to protect the rights of limited partners, including—

(i) the right of dissenting limited partners to one of the following:

(I) an appraisal and compensation;

(II) retention of a security under substantially the same terms and conditions as the original issue;

(III) approval of the limited partnership rollup transaction by not less than 75 percent of the outstanding securities of each of the participating limited partnerships;

(IV) the use of a committee of limited partners that is independent, as determined in accordance with rules prescribed by the exchange, of the general partner or sponsor, that has been approved by a majority of the outstanding units of each of the participating limited partnerships, and that has such authority as is necessary to

protect the interest of limited partners, including the authority to hire independent advisors, to negotiate with the general partner or sponsor on behalf of the limited partners, and to make a recommendation to the limited partners with respect to the proposed transaction; or

(V) other comparable rights that are prescribed by rule by the exchange and that are designed to protect dissenting limited partners;

(ii) the right not to have their voting power unfairly reduced or abridged;

(iii) the right not to bear an unfair portion of the costs of a proposed limited partnership rollup transaction that is rejected; and

(iv) restrictions on the conversion of contingent interests or fees into non-contingent interests or fees and restrictions on the receipt of a non-contingent equity interest in exchange for fees for services which have not yet been provided.

(B) As used in this paragraph, the term "dissenting limited partner" means a person who, on the date on which soliciting material is mailed to investors, is a holder of a beneficial interest in a limited partnership that is the subject of a limited partnership rollup transaction, and who casts a vote against the transaction and complies with procedures established by the exchange, except that for purposes of an exchange or tender offer, such person shall file an objection in writing under the rules of the exchange during the period during which the offer is outstanding.

(10)(A) The rules of the exchange prohibit any member that is not the beneficial owner of a security registered under section 78*l* of this title from granting a proxy to vote the security in connection with a shareholder vote described in subparagraph (B), unless the beneficial owner of the security has instructed the member to vote the proxy in accordance with the voting instructions of the beneficial owner.

(B) A shareholder vote described in this subparagraph is a shareholder vote with respect to the election of a member of the board of directors of an issuer, executive compensation, or any other significant matter, as determined by the Commission, by rule, and does not include a vote with respect to the uncontested election of a member of the board of directors of any investment company registered under the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.].

(C) Nothing in this paragraph shall be construed to prohibit a national securities exchange from prohibiting a member that is not the beneficial owner of a security registered under section 78*l* of this title from granting a proxy to vote the security in connection with a shareholder vote not described in subparagraph (A).

**(c) Denial of membership in national exchanges; denial of association with member; conditions; limitation of membership**

(1) A national securities exchange shall deny membership to (A) any person, other than a nat-

ural person, which is not a registered broker or dealer or (B) any natural person who is not, or is not associated with, a registered broker or dealer.

(2) A national securities exchange may, and in cases in which the Commission, by order, directs as necessary or appropriate in the public interest or for the protection of investors shall, deny membership to any registered broker or dealer or natural person associated with a registered broker or dealer, and bar from becoming associated with a member any person, who is subject to a statutory disqualification. A national securities exchange shall file notice with the Commission not less than thirty days prior to admitting any person to membership or permitting any person to become associated with a member, if the exchange knew, or in the exercise of reasonable care should have known, that such person was subject to a statutory disqualification. The notice shall be in such form and contain such information as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(3)(A) A national securities exchange may deny membership to, or condition the membership of, a registered broker or dealer if (i) such broker or dealer does not meet such standards of financial responsibility or operational capability or such broker or dealer or any natural person associated with such broker or dealer does not meet such standards of training, experience, and competence as are prescribed by the rules of the exchange or (ii) such broker or dealer or person associated with such broker or dealer has engaged and there is a reasonable likelihood he may again engage in acts or practices inconsistent with just and equitable principles of trade. A national securities exchange may examine and verify the qualifications of an applicant to become a member and the natural persons associated with such an applicant in accordance with procedures established by the rules of the exchange.

(B) A national securities exchange may bar a natural person from becoming a member or associated with a member, or condition the membership of a natural person or association of a natural person with a member, if such natural person (i) does not meet such standards of training, experience, and competence as are prescribed by the rules of the exchange or (ii) has engaged and there is a reasonable likelihood he may again engage in acts or practices inconsistent with just and equitable principles of trade. A national securities exchange may examine and verify the qualifications of an applicant to become a person associated with a member in accordance with procedures established by the rules of the exchange and require any person associated with a member, or any class of such persons, to be registered with the exchange in accordance with procedures so established.

(C) A national securities exchange may bar any person from becoming associated with a member if such person does not agree (i) to supply the exchange with such information with respect to its relationship and dealings with the member as may be specified in the rules of the exchange and (ii) to permit the examination of its books and records to verify the accuracy of any information so supplied.

(4) A national securities exchange may limit (A) the number of members of the exchange and (B) the number of members and designated representatives of members permitted to effect transactions on the floor of the exchange without the services of another person acting as broker: *Provided, however,* That no national securities exchange shall have the authority to decrease the number of memberships in such exchange, or the number of members and designated representatives of members permitted to effect transactions on the floor of such exchange without the services of another person acting as broker, below such number in effect on May 1, 1975, or the date such exchange was registered with the Commission, whichever is later: *And provided further,* That the Commission, in accordance with the provisions of section 78s(c) of this title, may amend the rules of any national securities exchange to increase (but not to decrease) or to remove any limitation on the number of memberships in such exchange or the number of members or designated representatives of members permitted to effect transactions on the floor of the exchange without the services of another person acting as broker, if the Commission finds that such limitation imposes a burden on competition not necessary or appropriate in furtherance of the purposes of this chapter.

**(d) Discipline of national securities exchange members and persons associated with members; summary proceedings**

(1) In any proceeding by a national securities exchange to determine whether a member or person associated with a member should be disciplined (other than a summary proceeding pursuant to paragraph (3) of this subsection), the exchange shall bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record. A determination by the exchange to impose a disciplinary sanction shall be supported by a statement setting forth—

(A) any act or practice in which such member or person associated with a member has been found to have engaged, or which such member or person has been found to have omitted;

(B) the specific provision of this chapter, the rules or regulations thereunder, or the rules of the exchange which any such act or practice, or omission to act, is deemed to violate; and

(C) the sanction imposed and the reasons therefor.

(2) In any proceeding by a national securities exchange to determine whether a person shall be denied membership, barred from becoming associated with a member, or prohibited or limited with respect to access to services offered by the exchange or a member thereof (other than a summary proceeding pursuant to paragraph (3) of this subsection), the exchange shall notify such person of, and give him an opportunity to be heard upon, the specific grounds for denial, bar, or prohibition or limitation under consideration and keep a record. A determination by the exchange to deny membership, bar a person from becoming associated with a member, or prohibit or limit a person with respect to access

to services offered by the exchange or a member thereof shall be supported by a statement setting forth the specific grounds on which the denial, bar, or prohibition or limitation is based.

(3) A national securities exchange may summarily (A) suspend a member or person associated with a member who has been and is expelled or suspended from any self-regulatory organization or barred or suspended from being associated with a member of any self-regulatory organization, (B) suspend a member who is in such financial or operating difficulty that the exchange determines and so notifies the Commission that the member cannot be permitted to continue to do business as a member with safety to investors, creditors, other members, or the exchange, or (C) limit or prohibit any person with respect to access to services offered by the exchange if subparagraph (A) or (B) of this paragraph is applicable to such person or, in the case of a person who is not a member, if the exchange determines that such person does not meet the qualification requirements or other prerequisites for such access and such person cannot be permitted to continue to have such access with safety to investors, creditors, members, or the exchange. Any person aggrieved by any such summary action shall be promptly afforded an opportunity for a hearing by the exchange in accordance with the provisions of paragraph (1) or (2) of this subsection. The Commission, by order, may stay any such summary action on its own motion or upon application by any person aggrieved thereby, if the Commission determines summarily or after notice and opportunity for hearing (which hearing may consist solely of the submission of affidavits or presentation of oral arguments) that such stay is consistent with the public interest and the protection of investors.

**(e) Commissions, allowances, discounts, and other fees**

(1) On and after June 4, 1975, no national securities exchange may impose any schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by its members: *Provided, however*, That until May 1, 1976, the preceding provisions of this paragraph shall not prohibit any such exchange from imposing or fixing any schedule of commissions, allowances, discounts, or other fees to be charged by its members for acting as broker on the floor of the exchange or as odd-lot dealer: *And provided further*, That the Commission, in accordance with the provisions of section 78s(b) of this title as modified by the provisions of paragraph (3) of this subsection, may—

(A) permit a national securities exchange, by rule, to impose a reasonable schedule or fix reasonable rates of commissions, allowances, discounts, or other fees to be charged by its members for effecting transactions on such exchange prior to November 1, 1976, if the Commission finds that such schedule or fixed rates of commissions, allowances, discounts, or other fees are in the public interest; and

(B) permit a national securities exchange, by rule, to impose a schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by its members for effecting

transactions on such exchange after November 1, 1976, if the Commission finds that such schedule or fixed rates of commissions, allowances, discounts, or other fees (i) are reasonable in relation to the costs of providing the service for which such fees are charged (and the Commission publishes the standards employed in adjudging reasonableness) and (ii) do not impose any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter, taking into consideration the competitive effects of permitting such schedule or fixed rates weighed against the competitive effects of other lawful actions which the Commission is authorized to take under this chapter.

(2) Notwithstanding the provisions of section 78s(c) of this title, the Commission, by rule, may abrogate any exchange rule which imposes a schedule or fixes rates of commissions, allowances, discounts, or other fees, if the Commission determines that such schedule or fixed rates are no longer reasonable, in the public interest, or necessary to accomplish the purposes of this chapter.

(3)(A) Before approving or disapproving any proposed rule change submitted by a national securities exchange which would impose a schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by its members for effecting transactions on such exchange, the Commission shall afford interested persons (i) an opportunity for oral presentation of data, views, and arguments and (ii) with respect to any such rule concerning transactions effected after November 1, 1976, if the Commission determines there are disputed issues of material fact, to present such rebuttal submissions and to conduct (or have conducted under subparagraph (B) of this paragraph) such cross-examination as the Commission determines to be appropriate and required for full disclosure and proper resolution of such disputed issues of material fact.

(B) The Commission shall prescribe rules and make rulings concerning any proceeding in accordance with subparagraph (A) of this paragraph designed to avoid unnecessary costs or delay. Such rules or rulings may (i) impose reasonable time limits on each interested person's oral presentations, and (ii) require any cross-examination to which a person may be entitled under subparagraph (A) of this paragraph to be conducted by the Commission on behalf of that person in such manner as the Commission determines to be appropriate and required for full disclosure and proper resolution of disputed issues of material fact.

(C)(i) If any class of persons, the members of which are entitled to conduct (or have conducted) cross-examination under subparagraphs (A) and (B) of this paragraph and which have, in the view of the Commission, the same or similar interests in the proceeding, cannot agree upon a single representative of such interests for purposes of cross-examination, the Commission may make rules and rulings specifying the manner in which such interests shall be represented and such cross-examination conducted.

(ii) No member of any class of persons with respect to which the Commission has specified the manner in which its interests shall be rep-

resented pursuant to clause (i) of this subparagraph shall be denied, pursuant to such clause (i), the opportunity to conduct (or have conducted) cross-examination as to issues affecting his particular interests if he satisfies the Commission that he has made a reasonable and good faith effort to reach agreement upon group representation and there are substantial and relevant issues which would not be presented adequately by group representation.

(D) A transcript shall be kept of any oral presentation and cross-examination.

(E) In addition to the bases specified in section 78y(a) of this title, a reviewing Court may set aside an order of the Commission under section 78s(b) of this title approving an exchange rule imposing a schedule or fixing rates of commissions, allowances, discounts, or other fees, if the Court finds—

(1) a Commission determination under subparagraph (A) of this paragraph that an interested person is not entitled to conduct cross-examination or make rebuttal submissions, or

(2) a Commission rule or ruling under subparagraph (B) of this paragraph limiting the petitioner's cross-examination or rebuttal submissions,

has precluded full disclosure and proper resolution of disputed issues of material fact which were necessary for fair determination by the Commission.

**(f) Compliance of non-members with exchange rules**

The Commission, by rule or order, as it deems necessary or appropriate in the public interest and for the protection of investors, to maintain fair and orderly markets, or to assure equal regulation, may require—

(1) any person not a member or a designated representative of a member of a national securities exchange effecting transactions on such exchange without the services of another person acting as a broker, or

(2) any broker or dealer not a member of a national securities exchange effecting transactions on such exchange on a regular basis,

to comply with such rules of such exchange as the Commission may specify.

**(g) Notice registration of security futures product exchanges**

**(1) Registration required**

An exchange that lists or trades security futures products may register as a national securities exchange solely for the purposes of trading security futures products if—

(A) the exchange is a board of trade, as that term is defined by the Commodity Exchange Act (7 U.S.C. 1a(2)) [7 U.S.C. 1 et seq.], that has been designated a contract market by the Commodity Futures Trading Commission and such designation is not suspended by order of the Commodity Futures Trading Commission; and

(B) such exchange does not serve as a market place for transactions in securities other than—

(i) security futures products; or

(ii) futures on exempted securities or groups or indexes of securities or options

thereon that have been authorized under section 2(a)(1)(C) of the Commodity Exchange Act [7 U.S.C. 2(a)(1)(C)].

**(2) Registration by notice filing**

**(A) Form and content**

An exchange required to register only because such exchange lists or trades security futures products may register for purposes of this section by filing with the Commission a written notice in such form as the Commission, by rule, may prescribe containing the rules of the exchange and such other information and documents concerning such exchange, comparable to the information and documents required for national securities exchanges under subsection (a), as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors. If such exchange has filed documents with the Commodity Futures Trading Commission, to the extent that such documents contain information satisfying the Commission's informational requirements, copies of such documents may be filed with the Commission in lieu of the required written notice.

**(B) Immediate effectiveness**

Such registration shall be effective contemporaneously with the submission of notice, in written or electronic form, to the Commission, except that such registration shall not be effective if such registration would be subject to suspension or revocation.

**(C) Termination**

Such registration shall be terminated immediately if any of the conditions for registration set forth in this subsection are no longer satisfied.

**(3) Public availability**

The Commission shall promptly publish in the Federal Register an acknowledgment of receipt of all notices the Commission receives under this subsection and shall make all such notices available to the public.

**(4) Exemption of exchanges from specified provisions**

**(A) Transaction exemptions**

An exchange that is registered under paragraph (1) of this subsection shall be exempt from, and shall not be required to enforce compliance by its members with, and its members shall not, solely with respect to those transactions effected on such exchange in security futures products, be required to comply with, the following provisions of this chapter and the rules thereunder:

(i) Subsections (b)(2), (b)(3), (b)(4), (b)(7), (b)(9), (c), (d), and (e) of this section.

(ii) Section 78h of this title.

(iii) Section 78k of this title.

(iv) Subsections (d), (f), and (k)[1] of section 78q of this title.

(v) Subsections (a), (f), and (h) of section 78s of this title.

───────────

[1] See References in Text note below.

**(B) Rule change exemptions**

An exchange that registered under paragraph (1) of this subsection shall also be exempt from submitting proposed rule changes pursuant to section 78s(b) of this title, except that—

(i) such exchange shall file proposed rule changes related to higher margin levels, fraud or manipulation, recordkeeping, reporting, listing standards, or decimal pricing for security futures products, sales practices for security futures products for persons who effect transactions in security futures products, or rules effectuating such exchange's obligation to enforce the securities laws pursuant to section 78s(b)(7) of this title;

(ii) such exchange shall file pursuant to sections 78s(b)(1) and 78s(b)(2) of this title proposed rule changes related to margin, except for changes resulting in higher margin levels; and

(iii) such exchange shall file pursuant to section 78s(b)(1) of this title proposed rule changes that have been abrogated by the Commission pursuant to section 78s(b)(7)(C) of this title.

**(5) Trading in security futures products**

**(A) In general**

Subject to subparagraph (B), it shall be unlawful for any person to execute or trade a security futures product until the later of—

(i) 1 year after December 21, 2000; or

(ii) such date that a futures association registered under section 17 of the Commodity Exchange Act [7 U.S.C. 21] has met the requirements set forth in section 78o–3(k)(2) of this title.

**(B) Principal-to-principal transactions**

Notwithstanding subparagraph (A), a person may execute or trade a security futures product transaction if—

(i) the transaction is entered into—

(I) on a principal-to-principal basis between parties trading for their own accounts or as described in section 1a(18)(B)(ii) of the Commodity Exchange Act [7 U.S.C. 1a(18)(B)(ii)]; and

(II) only between eligible contract participants (as defined in subparagraphs (A), (B)(ii), and (C) of such section 1a(18) [7 U.S.C. 1a(18)(A), (B)(ii), (C)]) at the time at which the persons enter into the agreement, contract, or transaction; and

(ii) the transaction is entered into on or after the later of—

(I) 8 months after December 21, 2000; or

(II) such date that a futures association registered under section 17 of the Commodity Exchange Act [7 U.S.C. 21] has met the requirements set forth in section 78o–3(k)(2) of this title.

**(h) Trading in security futures products**

**(1) Trading on exchange or association required**

It shall be unlawful for any person to effect transactions in security futures products that are not listed on a national securities exchange or a national securities association registered pursuant to section 78o–3(a) of this title.

**(2) Listing standards required**

Except as otherwise provided in paragraph (7), a national securities exchange or a national securities association registered pursuant to section 78o–3(a) of this title may trade only security futures products that (A) conform with listing standards that such exchange or association files with the Commission under section 78s(b) of this title and (B) meet the criteria specified in section 2(a)(1)(D)(i) of the Commodity Exchange Act [7 U.S.C. 2(a)(1)(D)(i)].

**(3) Requirements for listing standards and conditions for trading**

Such listing standards shall—

(A) except as otherwise provided in a rule, regulation, or order issued pursuant to paragraph (4), require that any security underlying the security future, including each component security of a narrow-based security index, be registered pursuant to section 78l of this title;

(B) require that if the security futures product is not cash settled, the market on which the security futures product is traded have arrangements in place with a registered clearing agency for the payment and delivery of the securities underlying the security futures product;

(C) be no less restrictive than comparable listing standards for options traded on a national securities exchange or national securities association registered pursuant to section 78o–3(a) of this title;

(D) except as otherwise provided in a rule, regulation, or order issued pursuant to paragraph (4), require that the security future be based upon common stock and such other equity securities as the Commission and the Commodity Futures Trading Commission jointly determine appropriate;

(E) require that the security futures product is cleared by a clearing agency that has in place provisions for linked and coordinated clearing with other clearing agencies that clear security futures products, which permits the security futures product to be purchased on one market and offset on another market that trades such product;

(F) require that only a broker or dealer subject to suitability rules comparable to those of a national securities association registered pursuant to section 78o–3(a) of this title effect transactions in the security futures product;

(G) require that the security futures product be subject to the prohibition against dual trading in section 4j of the Commodity Exchange Act (7 U.S.C. 6j) and the rules and regulations thereunder or the provisions of section 78k(a) of this title and the rules and regulations thereunder, except to the extent otherwise permitted under this chapter and the rules and regulations thereunder;

(H) require that trading in the security futures product not be readily susceptible to manipulation of the price of such security

futures product, nor to causing or being used in the manipulation of the price of any underlying security, option on such security, or option on a group or index including such securities;

(I) require that procedures be in place for coordinated surveillance among the market on which the security futures product is traded, any market on which any security underlying the security futures product is traded, and other markets on which any related security is traded to detect manipulation and insider trading;

(J) require that the market on which the security futures product is traded has in place audit trails necessary or appropriate to facilitate the coordinated surveillance required in subparagraph (I);

(K) require that the market on which the security futures product is traded has in place procedures to coordinate trading halts between such market and any market on which any security underlying the security futures product is traded and other markets on which any related security is traded; and

(L) require that the margin requirements for a security futures product comply with the regulations prescribed pursuant to section 78g(c)(2)(B) of this title, except that nothing in this subparagraph shall be construed to prevent a national securities exchange or national securities association from requiring higher margin levels for a security futures product when it deems such action to be necessary or appropriate.

**(4) Authority to modify certain listing standard requirements**

**(A) Authority to modify**

The Commission and the Commodity Futures Trading Commission, by rule, regulation, or order, may jointly modify the listing standard requirements specified in subparagraph (A) or (D) of paragraph (3) to the extent such modification fosters the development of fair and orderly markets in security futures products, is necessary or appropriate in the public interest, and is consistent with the protection of investors.

**(B) Authority to grant exemptions**

The Commission and the Commodity Futures Trading Commission, by order, may jointly exempt any person from compliance with the listing standard requirement specified in subparagraph (E) of paragraph (3) to the extent such exemption fosters the development of fair and orderly markets in security futures products, is necessary or appropriate in the public interest, and is consistent with the protection of investors.

**(5) Requirements for other persons trading security future products**

It shall be unlawful for any person (other than a national securities exchange or a national securities association registered pursuant to section 78o–3(a) of this title) to constitute, maintain, or provide a marketplace or facilities for bringing together purchasers and sellers of security future products or to otherwise perform with respect to security future products the functions commonly performed by a stock exchange as that term is generally understood, unless a national securities association registered pursuant to section 78o–3(a) of this title or a national securities exchange of which such person is a member—

(A) has in place procedures for coordinated surveillance among such person, the market trading the securities underlying the security future products, and other markets trading related securities to detect manipulation and insider trading;

(B) has rules to require audit trails necessary or appropriate to facilitate the coordinated surveillance required in subparagraph (A); and

(C) has rules to require such person to coordinate trading halts with markets trading the securities underlying the security future products and other markets trading related securities.

**(6) Deferral of options on security futures trading**

No person shall offer to enter into, enter into, or confirm the execution of any put, call, straddle, option, or privilege on a security future, except that, after 3 years after December 21, 2000, the Commission and the Commodity Futures Trading Commission may by order jointly determine to permit trading of puts, calls, straddles, options, or privileges on any security future authorized to be traded under the provisions of this chapter and the Commodity Exchange Act [7 U.S.C. 1 et seq.].

**(7) Deferral of linked and coordinated clearing**

(A) Notwithstanding paragraph (2), until the compliance date, a national securities exchange or national securities association registered pursuant to section 78o–3(a) of this title may trade a security futures product that does not—

(i) conform with any listing standard promulgated to meet the requirement specified in subparagraph (E) of paragraph (3); or

(ii) meet the criterion specified in section 2(a)(1)(D)(i)(IV) of the Commodity Exchange Act [7 U.S.C. 2(a)(1)(D)(i)(IV)].

(B) The Commission and the Commodity Futures Trading Commission shall jointly publish in the Federal Register a notice of the compliance date no later than 165 days before the compliance date.

(C) For purposes of this paragraph, the term ''compliance date'' means the later of—

(i) 180 days after the end of the first full calendar month period in which the average aggregate comparable share volume for all security futures products based on single equity securities traded on all national securities exchanges, any national securities associations registered pursuant to section 78o–3(a) of this title, and all other persons equals or exceeds 10 percent of the average aggregate comparable share volume of options on single equity securities traded on all national securities exchanges and any national securities associations registered pursuant to section 78o–3(a) of this title; or

(ii) 2 years after the date on which trading in any security futures product commences under this chapter.

### (i) Rules to avoid duplicative regulation of dual registrants

Consistent with this chapter, each national securities exchange registered pursuant to subsection (a) of this section shall issue such rules as are necessary to avoid duplicative or conflicting rules applicable to any broker or dealer registered with the Commission pursuant to section 78o(b) of this title (except paragraph (11) thereof), that is also registered with the Commodity Futures Trading Commission pursuant to section 4f(a) of the Commodity Exchange Act [7 U.S.C. 6f(a)] (except paragraph (2) thereof), with respect to the application of—

(1) rules of such national securities exchange of the type specified in section 78o(c)(3)(B) of this title involving security futures products; and

(2) similar rules of national securities exchanges registered pursuant to subsection (g) and national securities associations registered pursuant to section 78o–3(k) of this title involving security futures products.

### (j) Procedures and rules for security future products

A national securities exchange registered pursuant to subsection (a) shall implement the procedures specified in subsection (h)(5)(A) and adopt the rules specified in subparagraphs (B) and (C) of subsection (h)(5) not later than 8 months after the date of receipt of a request from an alternative trading system for such implementation and rules.

### (k) Rules relating to security futures products traded on foreign boards of trade

(1) To the extent necessary or appropriate in the public interest, to promote fair competition, and consistent with the promotion of market efficiency, innovation, and expansion of investment opportunities, the protection of investors, and the maintenance of fair and orderly markets, the Commission and the Commodity Futures Trading Commission shall jointly issue such rules, regulations, or orders as are necessary and appropriate to permit the offer and sale of a security futures product traded on or subject to the rules of a foreign board of trade to United States persons.

(2) The rules, regulations, or orders adopted under paragraph (1) shall take into account, as appropriate, the nature and size of the markets that the securities underlying the security futures product reflect.

### (l) Security-based swaps

It shall be unlawful for any person to effect a transaction in a security-based swap with or for a person that is not an eligible contract participant, unless such transaction is effected on a national securities exchange registered pursuant to subsection (b).

(June 6, 1934, ch. 404, title I, §6, 48 Stat. 885; Pub. L. 94–29, §4, June 4, 1975, 89 Stat. 104; Pub. L. 100–181, title III, §§309–312, Dec. 4, 1987, 101 Stat. 1255; Pub. L. 103–202, title III, §303(b), Dec. 17, 1993, 107 Stat. 2365; Pub. L. 106–554, §1(a)(5) [title II, §§202(a), 206(a), (i), (k)(2), (l)], Dec. 21, 2000, 114 Stat. 2763, 2763A–416, 2763A–426, 2763A–433, 2763A–434; Pub. L. 111–203, title VII, §§721(e)(8),

734(b)(2), 763(e), title IX, §957, July 21, 2010, 124 Stat. 1671, 1718, 1777, 1906.)

#### References in Text

This chapter, referred to in subsecs. (b) to (e), (g)(4)(A), (h)(3)(G), (7)(C)(ii), and (i), was in the original "this title". This chapter, referred to in subsec. (h)(6), was in the original "this Act". See References in Text note set out under section 78a of this title.

The Investment Company Act of 1940, referred to in subsec. (b)(10)(B), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, which is classified generally to subchapter I (§80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

The Commodity Exchange Act, referred to in subsecs. (g)(1)(A) and (h)(6), is act Sept. 21, 1922, ch. 369, 42 Stat. 998, which is classified generally to chapter 1 (§1 et seq.) of Title 7, Agriculture. Section 1a(2) of Title 7 was redesignated section 1a(6) by Pub. L. 111–203, title VII, §721(a)(1), July 21, 2010, 124 Stat. 1658. For complete classification of this Act to the Code, see section 1 of Title 7 and Tables.

Subsection (k) of section 78q of this title, referred to in subsec. (g)(4)(A)(iv), was redesignated subsec. (j) by Pub. L. 111–203, title VI, §617(a)(2), July 21, 2010, 124 Stat. 1616.

#### Amendments

2010—Subsec. (b)(9). Pub. L. 111–203, §957(1), designated introductory provisions and subpars. (A) to (D) as subpar. (A), redesignated former subpars. (A) to (D) as cls. (i) to (iv), respectively, of subpar. (A) and realigned margins, redesignated former cls. (i) to (v) of subpar. (A) as subcls. (I) to (V), respectively, of cl. (i) and realigned margins, and designated concluding provisions as subpar. (B).

Subsec. (b)(10). Pub. L. 111–203, §957(2), added par. (10).

Subsec. (g)(1)(A). Pub. L. 111–203, §734(b)(2), substituted "that has been designated" for "that—(i) has been designated" and "and" for "or" at end and struck out cl. (ii) which read as follows: "is registered as a derivative transaction execution facility under section 5a of the Commodity Exchange Act and such registration is not suspended by the Commodity Futures Trading Commission; and".

Subsec. (g)(5)(B)(i)(I). Pub. L. 111–203, §721(e)(8)(A), substituted "section 1a(18)(B)(ii)" for "section 1a(12)(B)(ii)".

Subsec. (g)(5)(B)(i)(II). Pub. L. 111–203, §721(e)(8)(B), substituted "section 1a(18)" for "section 1a(12)".

Subsec. (l). Pub. L. 111–203, §763(e), added subsec. (l).

2000—Subsec. (g). Pub. L. 106–554, §1(a)(5) [title II, §202(a)], added subsec. (g).

Subsec. (h). Pub. L. 106–554, §1(a)(5) [title II, §206(a)], added subsec. (h).

Subsec. (i). Pub. L. 106–554, §1(a)(5) [title II, §206(i)], added subsec. (i).

Subsec. (j). Pub. L. 106–554, §1(a)(5) [title II, §206(k)(2)], added subsec. (j).

Subsec. (k). Pub. L. 106–554, §1(a)(5) [title II, §206(l)], added subsec. (k).

1993—Subsec. (b)(9). Pub. L. 103–202 added par. (9).

1987—Subsec. (c)(2). Pub. L. 100–181, §309, substituted "protection of investors shall" for "protection shall".

Subsec. (c)(3)(A). Pub. L. 100–181, §310, substituted "associated" for "association".

Subsec. (c)(4). Pub. L. 100–181, §311, substituted "may limit (A)" for "may (A) limit".

Subsec. (e)(1). Pub. L. 100–181, §312(1), substituted "paragraph (3) of this subsection" for "paragraph (4) of this section".

Subsec. (e)(3), (4). Pub. L. 100–181, §312(2), redesignated par. (4) as (3) and, in subpar. (E), substituted "fixing" for "fixes" in introductory provisions, "subparagraph (A) of this paragraph" for "paragraph (4)(A) of this subsection" in cl. (1), and "subparagraph (B) of this paragraph" for "paragraph (4)(B) of this subsection" in cl. (2), and struck out former par. (3) which

read as follows: "Until December 31, 1976, the Commission, on a regular basis, shall file with the Speaker of the House and the President of the Senate information concerning the effect on the public interest, protection of investors, and maintenance of fair and orderly markets of the absence of any schedule or fixed rates of commissions, allowances, discounts, or other fees to be charged by members of any national securities exchange for effecting transactions on such exchange."

1975—Pub. L. 94–29 restructured the entire section and, in addition, authorized the Commission to require an exchange to file such documents and information as it deems necessary or appropriate in the public interest or for the protection of investors and to prescribe the form and substance of an exchange's application for registration, expanded to eight the number of explicit statutory requirements that must be satisfied before an exchange may be registered as a national securities exchange, set forth the authority of a national securities exchange to admit or deny persons membership or association with members, prescribed exchange procedures for instituting disciplinary actions, denying membership, and summarily suspending members or persons associated with members, specified the authority of national securities exchanges to impose schedules or fix rates of commissions, allowances, discounts, or other fees to be charged by its members for transacting business on the exchange, and empowered the Commission to regulate any broker or dealer who effects transactions on an exchange on a regular basis but who is not a member of that exchange and any person who effects transactions on an exchange without the services of another person acting as broker.

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by section 957 of Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

Amendment by sections 721(e)(8) and 734(b)(2) of Pub. L. 111–203 effective on the later of 360 days after July 21, 2010, or, to the extent a provision of subtitle A (§§711–754) of title VII of Pub. L. 111–203 requires a rulemaking, not less than 60 days after publication of the final rule or regulation implementing such provision of subtitle A, see section 754 of Pub. L. 111–203, set out as a note under section 1a of Title 7, Agriculture.

Amendment by section 763(e) of Pub. L. 111–203 effective on the later of 360 days after July 21, 2010, or, to the extent a provision of subtitle B (§§761–774) of title VII of Pub. L. 111–203 requires a rulemaking, not less than 60 days after publication of the final rule or regulation implementing such provision of subtitle B, see section 774 of Pub. L. 111–203, set out as a note under section 77b of this title.

EFFECTIVE DATE OF 1993 AMENDMENT

Pub. L. 103–202, title III, §304, Dec. 17, 1993, 107 Stat. 2367, provided that:

"(a) EFFECTIVE DATE.—

"(1) IN GENERAL.—The amendments made by section 303 [amending this section and section 78o–3 of this title] shall become effective 12 months after the date of enactment of this Act [Dec. 17, 1993].

"(2) RULEMAKING AUTHORITY.—Notwithstanding paragraph (1), the authority of the Securities and Exchange Commission, a registered securities association, and a national securities exchange to commence rulemaking proceedings for the purpose of issuing rules pursuant to the amendments made by section 303 is effective on the date of enactment of this Act.

"(3) REVIEW OF FILINGS PRIOR TO EFFECTIVE DATE.—Prior to the effective date of regulations promulgated pursuant to this title [amending this section and sections 78n and 78o–3 of this title and enacting provisions set out as notes under sections 78a and 78n of this title], the Securities and Exchange Commission shall continue to review and declare effective reg-

istration statements and amendments thereto relating to limited partnership rollup transactions in accordance with applicable regulations then in effect.

"(b) EFFECT ON EXISTING AUTHORITY.—The amendments made by this title [amending this section and sections 78n and 78o–3 of this title] shall not limit the authority of the Securities and Exchange Commission, a registered securities association, or a national securities exchange under any provision of the Securities Exchange Act of 1934 [15 U.S.C. 78a et seq.], or preclude the Commission or such association or exchange from imposing, under any other such provision, a remedy or procedure required to be imposed under such amendments."

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, except for amendment of subsecs. (a) through (d) by Pub. L. 94–29 to be effective 180 days after June 4, 1975, with provisions of subsecs. (b)(2) and (c)(6), as amended by Pub. L. 94–29, or rules or regulations thereunder, not to apply in a way so as to deprive any person of membership in any national securities exchange (or its successor) of which such person was, on June 4, 1975, a member or a member firm as defined in the constitution of such exchange, or so as to deny membership in any such exchange (or its successor) to a natural person who is or becomes associated with such member or member firm, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

CHANGES IN ORGANIZATION AND RULES OF NATIONAL SECURITIES EXCHANGES AND REGISTERED SECURITIES ASSOCIATIONS

Pub. L. 94–29, §31(b), June 4, 1975, 89 Stat. 170, provided that: "If it appears to the Commission at any time within one year of the effective date of any amendment made by this Act [see Short Title of 1975 Amendment note under section 78a of this title] to the Securities Exchange Act of 1934 that the organization or rules of any national securities exchange or registered securities association registered with the Commission on the date of enactment of this Act [June 4, 1975] do not comply with such Act as amended, the Commission shall so notify such exchange or association in writing, specifying the respects in which the exchange or association is not in compliance with such Act. On and after the one hundred eightieth day following the date of receipt of such notice by a national securities exchange or registered securities association, the Commission, without regard to the provisions of section 19(h) of the Securities Exchange Act of 1934 [section 78s(h) of this title], as amended by this Act, is authorized by order, to suspend the registration of any such exchange or association or impose limitations on the activities, functions, and operations of any such exchange or association, if the Commission finds, after notice and opportunity for hearing, that the organization or rules of such exchange or association do not comply with such Act. Any such suspension or limitation shall continue in effect until the Commission, by order, declares that such exchange or association is in compliance with such requirements."

## § 78g. Margin requirements

## (a) Rules and regulations for extension of credit; standard for initial extension; undermargined accounts

For the purpose of preventing the excessive use of credit for the purchase or carrying of se-

# TAB C

findings[,] conclusions, and recommendations of the study required under subsection (b).''

[For definitions of terms used in section 913(a)–(f) of Pub. L. 111–203, set out above, see section 5301 of Title 12, Banks and Banking.]

STUDY AND REPORT ON BROKER-DEALER UNIFORMITY

Pub. L. 104–290, title V, §510(d), Oct. 11, 1996, 110 Stat. 3451, provided that:

''(1) STUDY.—The Commission, after consultation with registered securities associations, national securities exchanges, and States, shall conduct a study of the impact of disparate State licensing requirements on associated persons of registered brokers or dealers and methods for States to attain uniform licensing requirements for such persons.

''(2) REPORT.—Not later than 1 year after the date of enactment of this Act [Oct. 11, 1996], the Commission shall submit to the Congress a report on the study conducted under paragraph (1). Such report shall include recommendations concerning appropriate methods described in paragraph (1)(B), including any necessary legislative changes to implement such recommendations.''

PENNY STOCK REFORM; CONGRESSIONAL STATEMENT OF FINDINGS

Pub. L. 101–429, title V, §502, Oct. 15, 1990, 104 Stat. 951, provided that: ''The Congress finds the following:

''(1) The maintenance of an honest and healthy primary and secondary market for securities offerings is essential to enhancing long-term capital formation and economic growth and providing legitimate investment opportunities for individuals and institutions.

''(2) Protecting investors in new securities is a critical component in the maintenance of an honest and healthy market for such securities.

''(3) Protecting issuers of new securities and promoting the capital formation process on behalf of small companies are fundamental concerns in maintaining a strong economy and viable trading markets.

''(4) Unscrupulous market practices and market participants have pervaded the 'penny stock' market with an overwhelming amount of fraud and abuse.

''(5) Although the Securities and Exchange Commission, State securities regulators, and securities self-regulators have made efforts to curb these abusive and harmful practices, the penny stock market still lacks an adequate and sufficient regulatory structure, particularly in comparison to the structure for overseeing trading in National Market System securities.

''(6) Investors in the penny stock market suffer from a serious lack of adequate information concerning price and volume of penny stock transactions, the nature of this market, and the specific securities in which they are investing.

''(7) Current practices do not adequately regulate the role of 'promoters' and 'consultants' in the penny stock market, and many professionals who have been banned from the securities markets have ended up in promoter and consultant roles, contributing substantially to fraudulent and abusive schemes.

''(8) The present regulatory environment has permitted the ascendancy of the use of particular market practices, such as 'reverse mergers' with shell corporations and 'blank check' offerings, which are used to facilitate manipulation schemes and harm investors.

''(9) In light of the substantial and continuing problems in the penny stock markets, additional legislative measures are necessary and appropriate.''

REVISION OF SANCTION AUTHORITY WITH RESPECT TO PENNY STOCKS; RECOMMENDATIONS TO CONGRESS

Pub. L. 101–429, title V, §504(b), Oct. 15, 1990, 104 Stat. 953, provided that within 6 months after Oct. 15, 1990, the Securities and Exchange Commission was to submit to each House of Congress any recommendations the Commission considered appropriate with respect to further revision of subsection (b)(6) of this section.

## § 78*o*–1. Brokers deemed to be registered

All brokers and dealers for whom registration was in effect on May 27, 1936, in accordance with rules and regulations of the Commission prescribed pursuant to section 78*o* of this title shall be deemed to be registered pursuant to said section.

(May 27, 1936, ch. 462, §10, 49 Stat. 1380.)

CODIFICATION

Section was not enacted as a part of the Securities Exchange Act of 1934 which comprises this chapter.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78*o*–2. Liabilities arising prior to amendment unaffected

Nothing in this Act shall be deemed to extinguish any liability which may have arisen prior to the effective date of this Act by reason of any violation of section 78*o* of this title or of any rule or regulation thereunder.

(May 27, 1936, ch. 462, §11, 49 Stat. 1380.)

REFERENCES IN TEXT

This Act, referred to in text, is act May 27, 1936, ch. 462, 49 Stat. 1375, popularly known as the Unlisted Securities Trading Act, which enacted sections 78*l*–1, 78*o*–1, 78*o*–2, and 78hh–1 of this title, and amended sections 78*l*, 78*o*, 78q, 78r, 78t, 78u, 78w, and 78ff of this title.

Effective date of this Act, referred to in text, is July 1, 1934. See section 78hh–1 of this title.

CODIFICATION

Section was not enacted as a part of the Securities Exchange Act of 1934 which comprises this chapter.

## § 78*o*–3. Registered securities associations

### (a) Registration; application

An association of brokers and dealers may be registered as a national securities association pursuant to subsection (b), or as an affiliated securities association pursuant to subsection (d), under the terms and conditions hereinafter provided in this section and in accordance with the provisions of section 78s(a) of this title, by filing with the Commission an application for registration in such form as the Commission, by rule, may prescribe containing the rules of the association and such other information and documents as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

### (b) Determinations by Commission requisite to registration of applicant as national securities association

An association of brokers and dealers shall not be registered as a national securities association unless the Commission determines that—

(1) By reason of the number and geographical distribution of its members and the

scope of their transactions, such association will be able to carry out the purposes of this section.

(2) Such association is so organized and has the capacity to be able to carry out the purposes of this chapter and to comply, and (subject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) to enforce compliance by its members and persons associated with its members, with the provisions of this chapter, the rules and regulations thereunder, the rules of the Municipal Securities Rulemaking Board, and the rules of the association.

(3) Subject to the provisions of subsection (g) of this section, the rules of the association provide that any registered broker or dealer may become a member of such association and any person may become associated with a member thereof.

(4) The rules of the association assure a fair representation of its members in the selection of its directors and administration of its affairs and provide that one or more directors shall be representative of issuers and investors and not be associated with a member of the association, broker, or dealer.

(5) The rules of the association provide for the equitable allocation of reasonable dues, fees, and other charges among members and issuers and other persons using any facility or system which the association operates or controls.

(6) The rules of the association are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest; and are not designed to permit unfair discrimination between customers, issuers, brokers, or dealers, to fix minimum profits, to impose any schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by its members, or to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter or the administration of the association.

(7) The rules of the association provide that (subject to any rule or order of the Commission pursuant to section 78q(d) or 78s(g)(2) of this title) its members and persons associated with its members shall be appropriately disciplined for violation of any provision of this chapter, the rules or regulations thereunder, the rules of the Municipal Securities Rulemaking Board, or the rules of the association, by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction.

(8) The rules of the association are in accordance with the provisions of subsection (h) of this section, and, in general, provide a fair procedure for the disciplining of members and persons associated with members, the denial of membership to any person seeking membership therein, the barring of any person from becoming associated with a member thereof, and the prohibition or limitation by the association of any person with respect to access to services offered by the association or a member thereof.

(9) The rules of the association do not impose any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter.

(10) The requirements of subsection (c), insofar as these may be applicable, are satisfied.

(11) The rules of the association include provisions governing the form and content of quotations relating to securities sold otherwise than on a national securities exchange which may be distributed or published by any member or person associated with a member, and the persons to whom such quotations may be supplied. Such rules relating to quotations shall be designed to produce fair and informative quotations, to prevent fictitious or misleading quotations, and to promote orderly procedures for collecting, distributing, and publishing quotations.

(12) The rules of the association to promote just and equitable principles of trade, as required by paragraph (6), include rules to prevent members of the association from participating in any limited partnership rollup transaction (as such term is defined in paragraphs (4) and (5) of section 78n(h) of this title) unless such transaction was conducted in accordance with procedures designed to protect the rights of limited partners, including—

(A) the right of dissenting limited partners to one of the following:

(i) an appraisal and compensation;

(ii) retention of a security under substantially the same terms and conditions as the original issue;

(iii) approval of the limited partnership rollup transaction by not less than 75 percent of the outstanding securities of each of the participating limited partnerships;

(iv) the use of a committee that is independent, as determined in accordance with rules prescribed by the association, of the general partner or sponsor, that has been approved by a majority of the outstanding securities of each of the participating partnerships, and that has such authority as is necessary to protect the interest of limited partners, including the authority to hire independent advisors, to negotiate with the general partner or sponsor on behalf of the limited partners, and to make a recommendation to the limited partners with respect to the proposed transaction; or

(v) other comparable rights that are prescribed by rule by the association and that are designed to protect dissenting limited partners;

(B) the right not to have their voting power unfairly reduced or abridged;

(C) the right not to bear an unfair portion of the costs of a proposed limited partnership rollup transaction that is rejected; and

(D) restrictions on the conversion of contingent interests or fees into non-contingent interests or fees and restrictions on the receipt of a non-contingent equity interest in exchange for fees for services which have not yet been provided.

As used in this paragraph, the term "dissenting limited partner" means a person who, on the date on which soliciting material is mailed to investors, is a holder of a beneficial interest in a limited partnership that is the subject of a limited partnership rollup transaction, and who casts a vote against the transaction and complies with procedures established by the association, except that for purposes of an exchange or tender offer, such person shall file an objection in writing under the rules of the association during the period in which the offer is outstanding.

(13) The rules of the association prohibit the authorization for quotation on an automated interdealer quotation system sponsored by the association of any security designated by the Commission as a national market system security resulting from a limited partnership rollup transaction (as such term is defined in paragraphs (4) and (5) of section 78n(h) of this title), unless such transaction was conducted in accordance with procedures designed to protect the rights of limited partners, including—

(A) the right of dissenting limited partners to one of the following:

(i) an appraisal and compensation;

(ii) retention of a security under substantially the same terms and conditions as the original issue;

(iii) approval of the limited partnership rollup transaction by not less than 75 percent of the outstanding securities of each of the participating limited partnerships;

(iv) the use of a committee that is independent, as determined in accordance with rules prescribed by the association, of the general partner or sponsor, that has been approved by a majority of the outstanding securities of each of the participating partnerships, and that has such authority as is necessary to protect the interest of limited partners, including the authority to hire independent advisors, to negotiate with the general partner or sponsor on behalf of the limited partners, and to make a recommendation to the limited partners with respect to the proposed transaction; or

(v) other comparable rights that are prescribed by rule by the association and that are designed to protect dissenting limited partners;

(B) the right not to have their voting power unfairly reduced or abridged;

(C) the right not to bear an unfair portion of the costs of a proposed limited partnership rollup transaction that is rejected; and

(D) restrictions on the conversion of contingent interests or fees into non-contingent interests or fees and restrictions on the receipt of a non-contingent equity interest in exchange for fees for services which have not yet been provided.

As used in this paragraph, the term "dissenting limited partner" means a person who, on the date on which soliciting material is mailed to investors, is a holder of a beneficial interest in a limited partnership that is the subject of a limited partnership rollup transaction, and who casts a vote against the transaction and complies with procedures established by the association, except that for purposes of an exchange or tender offer, such person shall file an objection in writing under the rules of the association during the period during which the offer is outstanding.

(14) The rules of the association include provisions governing the sales, or offers of sales, of securities on the premises of any military installation to any member of the Armed Forces or a dependent thereof, which rules require—

(A) the broker or dealer performing brokerage services to clearly and conspicuously disclose to potential investors—

(i) that the securities offered are not being offered or provided by the broker or dealer on behalf of the Federal Government, and that its offer is not sanctioned, recommended, or encouraged by the Federal Government; and

(ii) the identity of the registered broker-dealer offering the securities;

(B) such broker or dealer to perform an appropriate suitability determination, including consideration of costs and knowledge about securities, prior to making a recommendation of a security to a member of the Armed Forces or a dependent thereof; and

(C) that no person receive any referral fee or incentive compensation in connection with a sale or offer of sale of securities, unless such person is an associated person of a registered broker or dealer and is qualified pursuant to the rules of a self-regulatory organization.

(15) The rules of the association provide that the association shall—

(A) request guidance from the Municipal Securities Rulemaking Board in interpretation of the rules of the Municipal Securities Rulemaking Board; and

(B) provide information to the Municipal Securities Rulemaking Board about the enforcement actions and examinations of the association under section 78o–4(b)(2)(E) of this title, so that the Municipal Securities Rulemaking Board may—

(i) assist in such enforcement actions and examinations; and

(ii) evaluate the ongoing effectiveness of the rules of the Board.

**(c) National association rules; provision for registration of affiliated securities association**

The Commission may permit or require the rules of an association applying for registration pursuant to subsection (b), to provide for the admission of an association registered as an affiliated securities association pursuant to subsection (d), to participation in said applicant association as an affiliate thereof, under terms

permitting such powers and responsibilities to such affiliate, and under such other appropriate terms and conditions, as may be provided by the rules of said applicant association, if such rules appear to the Commission to be necessary or appropriate in the public interest or for the protection of investors and to carry out the purposes of this section. The duties and powers of the Commission with respect to any national securities association or any affiliated securities association shall in no way be limited by reason of any such affiliation.

**(d)  Registration as affiliated association; prerequisites; association rules**

An applicant association shall not be registered as an affiliated securities association unless it appears to the Commission that—

(1) such association, notwithstanding that it does not satisfy the requirements set forth in paragraph (1) of subsection (b), will, forthwith upon the registration thereof, be admitted to affiliation with an association registered as a national securities association pursuant to subsection (b), in the manner and under the terms and conditions provided by the rules of said national securities association in accordance with subsection (c); and

(2) such association and its rules satisfy the requirements set forth in paragraphs (2) to (10), inclusive, and paragraph (12),[1] of subsection (b); except that in the case of any such association any restrictions upon membership therein of the type authorized by paragraph (3) of subsection (b) shall not be less stringent than in the case of the national securities association with which such association is to be affiliated.

**(e)  Dealings with nonmember professionals**

(1) The rules of a registered securities association may provide that no member thereof shall deal with any nonmember professional (as defined in paragraph (2) of this subsection) except at the same prices, for the same commissions or fees, and on the same terms and conditions as are by such member accorded to the general public.

(2) For the purposes of this subsection, the term ''nonmember professional'' shall include (A) with respect to transactions in securities other than municipal securities, any registered broker or dealer who is not a member of any registered securities association, except such a broker or dealer who deals exclusively in commercial paper, bankers' acceptances, and commercial bills, and (B) with respect to transactions in municipal securities, any municipal securities dealer (other than a bank or division or department of a bank) who is not a member of any registered securities association and any municipal securities broker who is not a member of any such association.

(3) Nothing in this subsection shall be so construed or applied as to prevent (A) any member of a registered securities association from granting to any other member of any registered securities association any dealer's discount, allowance, commission, or special terms, in connection with the purchase or sale of securities, or (B) any member of a registered securities association or any municipal securities dealer which is a bank or a division or department of a bank from granting to any member of any registered securities association or any such municipal securities dealer any dealer's discount, allowance, commission, or special terms in connection with the purchase or sale of municipal securities: *Provided, however,* That the granting of any such discount, allowance, commission, or special terms in connection with the purchase or sale of municipal securities shall be subject to rules of the Municipal Securities Rulemaking Board adopted pursuant to section 78o–4(b)(2)(K) of this title.

**(f)  Transactions in municipal securities**

Nothing in subsection (b)(6) or (b)(11) of this section shall be construed to permit a registered securities association to make rules concerning any transaction by a registered broker or dealer in a municipal security.

**(g)  Denial of membership**

(1) A registered securities association shall deny membership to any person who is not a registered broker or dealer.

(2) A registered securities association may, and in cases in which the Commission, by order, directs as necessary or appropriate in the public interest or for the protection of investors shall, deny membership to any registered broker or dealer, and bar from becoming associated with a member any person, who is subject to a statutory disqualification. A registered securities association shall file notice with the Commission not less than thirty days prior to admitting any registered broker or dealer to membership or permitting any person to become associated with a member, if the association knew, or in the exercise of reasonable care should have known, that such broker or dealer or person was subject to a statutory disqualification. The notice shall be in such form and contain such information as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors.

(3)(A) A registered securities association may deny membership to, or condition the membership of, a registered broker or dealer if (i) such broker or dealer does not meet such standards of financial responsibility or operational capability or such broker or dealer or any natural person associated with such broker or dealer does not meet such standards of training, experience, and competence as are prescribed by the rules of the association or (ii) such broker or dealer or person associated with such broker or dealer has engaged and there is a reasonable likelihood he will again engage in acts or practices inconsistent with just and equitable principles of trade. A registered securities association may examine and verify the qualifications of an applicant to become a member and the natural persons associated with such an applicant in accordance with procedures established by the rules of the association.

(B) A registered securities association may bar a natural person from becoming associated with a member or condition the association of a natural person with a member if such natural person (i) does not meet such standards of training,

---

[1] See References in Text note below.

experience, and competence as are prescribed by the rules of the association or (ii) has engaged and there is a reasonable likelihood he will again engage in acts or practices inconsistent with just and equitable principles of trade. A registered securities association may examine and verify the qualifications of an applicant to become a person associated with a member in accordance with procedures established by the rules of the association and require a natural person associated with a member, or any class of such natural persons, to be registered with the association in accordance with procedures so established.

(C) A registered securities association may bar any person from becoming associated with a member if such person does not agree (i) to supply the association with such information with respect to its relationship and dealings with the member as may be specified in the rules of the association and (ii) to permit examination of its books and records to verify the accuracy of any information so supplied.

(D) Nothing in subparagraph (A), (B), or (C) of this paragraph shall be construed to permit a registered securities association to deny membership to or condition the membership of, or bar any person from becoming associated with or condition the association of any person with, a broker or dealer that engages exclusively in transactions in municipal securities.

(4) A registered securities association may deny membership to a registered broker or dealer not engaged in a type of business in which the rules of the association require members to be engaged: *Provided, however,* That no registered securities association may deny membership to a registered broker or dealer by reason of the amount of such type of business done by such broker or dealer or the other types of business in which he is engaged.

**(h) Discipline of registered securities association members and persons associated with members; summary proceedings**

(1) In any proceeding by a registered securities association to determine whether a member or person associated with a member should be disciplined (other than a summary proceeding pursuant to paragraph (3) of this subsection) the association shall bring specific charges, notify such member or person of, and give him an opportunity to defend against, such charges, and keep a record. A determination by the association to impose a disciplinary sanction shall be supported by a statement setting forth—

(A) any act or practice in which such member or person associated with a member has been found to have engaged, or which such member or person has been found to have omitted;

(B) the specific provision of this chapter, the rules or regulations thereunder, the rules of the Municipal Securities Rulemaking Board, or the rules of the association which any such act or practice, or omission to act, is deemed to violate; and

(C) the sanction imposed and the reason therefor.

(2) In any proceeding by a registered securities association to determine whether a person shall be denied membership, barred from becoming associated with a member, or prohibited or limited with respect to access to services offered by the association or a member thereof (other than a summary proceeding pursuant to paragraph (3) of this subsection), the association shall notify such person of and give him an opportunity to be heard upon, the specific grounds for denial, bar, or prohibition or limitation under consideration and keep a record. A determination by the association to deny membership, bar a person from becoming associated with a member, or prohibit or limit a person with respect to access to services offered by the association or a member thereof shall be supported by a statement setting forth the specific grounds on which the denial, bar, or prohibition or limitation is based.

(3) A registered securities association may summarily (A) suspend a member or person associated with a member who has been and is expelled or suspended from any self-regulatory organization or barred or suspended from being associated with a member of any self-regulatory organization, (B) suspend a member who is in such financial or operating difficulty that the association determines and so notifies the Commission that the member cannot be permitted to continue to do business as a member with safety to investors, creditors, other members, or the association, or (C) limit or prohibit any person with respect to access to services offered by the association if subparagraph (A) or (B) of this paragraph is applicable to such person or, in the case of a person who is not a member, if the association determines that such person does not meet the qualification requirements or other prerequisites for such access and such person cannot be permitted to continue to have such access with safety to investors, creditors, members, or the association. Any person aggrieved by any such summary action shall be promptly afforded an opportunity for a hearing by the association in accordance with the provisions of paragraph (1) or (2) of this subsection. The Commission, by order, may stay any such summary action on its own motion or upon application by any person aggrieved thereby, if the Commission determines summarily or after notice and opportunity for hearing (which hearing may consist solely of the submission of affidavits or presentation of oral arguments) that such stay is consistent with the public interest and the protection of investors.

**(i) Obligation to maintain registration, disciplinary, and other data**

**(1) Maintenance of system to respond to inquiries**

A registered securities association shall—

(A) establish and maintain a system for collecting and retaining registration information;

(B) establish and maintain a toll-free telephone listing, and a readily accessible electronic or other process, to receive and promptly respond to inquiries regarding—

(i) registration information on its members and their associated persons; and

(ii) registration information on the members and their associated persons of any registered national securities ex-

change that uses the system described in subparagraph (A) for the registration of its members and their associated persons; and

(C) adopt rules governing the process for making inquiries and the type, scope, and presentation of information to be provided in response to such inquiries in consultation with any registered national securities exchange providing information pursuant to subparagraph (B)(ii).

**(2) Recovery of costs**

A registered securities association may charge persons making inquiries described in paragraph (1)(B), other than individual investors, reasonable fees for responses to such inquiries.

**(3) Process for disputed information**

Each registered securities association shall adopt rules establishing an administrative process for disputing the accuracy of information provided in response to inquiries under this subsection in consultation with any registered national securities exchange providing information pursuant to paragraph (1)(B)(ii).

**(4) Limitation on liability**

A registered securities association, or an exchange reporting information to such an association, shall not have any liability to any person for any actions taken or omitted in good faith under this subsection.

**(5) Definition**

For purposes of this subsection, the term ''registration information'' means the information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or association rule, and the source and status of such information.

**(j) Registration for sales of private securities offerings**

A registered securities association shall create a limited qualification category for any associated person of a member who effects sales as part of a primary offering of securities not involving a public offering, pursuant to section 77c(b), 77d(2),[1] or 77d(6)[1] of this title and the rules and regulations thereunder, and shall deem qualified in such limited qualification category, without testing, any bank employee who, in the six month period preceding November 12, 1999, engaged in effecting such sales.

**(k) Limited purpose national securities association**

**(1) Regulation of members with respect to security futures products**

A futures association registered under section 21 of title 7 shall be a registered national securities association for the limited purpose of regulating the activities of members who are registered as brokers or dealers in security futures products pursuant to section 78o(b)(11) of this title.

**(2) Requirements for registration**

Such a securities association shall—

(A) be so organized and have the capacity to carry out the purposes of the securities laws applicable to security futures products and to comply, and (subject to any rule or order of the Commission pursuant to section 78s(g)(2) of this title) to enforce compliance by its members and persons associated with its members, with the provisions of the securities laws applicable to security futures products, the rules and regulations thereunder, and its rules;

(B) have rules that—

(i) are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, to protect investors and the public interest, including rules governing sales practices and the advertising of security futures products reasonably comparable to those of other national securities associations registered pursuant to subsection (a) that are applicable to security futures products; and

(ii) are not designed to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter or the administration of the association;

(C) have rules that provide that (subject to any rule or order of the Commission pursuant to section 78s(g)(2) of this title) its members and persons associated with its members shall be appropriately disciplined for violation of any provision of the securities laws applicable to security futures products, the rules or regulations thereunder, or the rules of the association, by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction; and

(D) have rules that ensure that members and natural persons associated with members meet such standards of training, experience, and competence necessary to effect transactions in security futures products and are tested for their knowledge of securities and security futures products.

**(3) Exemption from rule change submission**

Such a securities association shall be exempt from submitting proposed rule changes pursuant to section 78s(b) of this title, except that—

(A) the association shall file proposed rule changes related to higher margin levels, fraud or manipulation, recordkeeping, reporting, listing standards, or decimal pricing for security futures products, sales practices for, advertising of, or standards of training, experience, competence, or other qualifications for security futures products for persons who effect transactions in security futures products, or rules effectuating the association's obligation to enforce the securities laws pursuant to section 78s(b)(7) of this title;

(B) the association shall file pursuant to sections 78s(b)(1) and 78s(b)(2) of this title proposed rule changes related to margin, except for changes resulting in higher margin levels; and

(C) the association shall file pursuant to section 78s(b)(1) of this title proposed rule changes that have been abrogated by the Commission pursuant to section 78s(b)(7)(C) of this title.

**(4) Other exemptions**

Such a securities association shall be exempt from and shall not be required to enforce compliance by its members, and its members shall not, solely with respect to their transactions effected in security futures products, be required to comply, with the following provisions of this chapter and the rules thereunder:

(A) Section 78h of this title.

(B) Subsections (b)(1), (b)(3), (b)(4), (b)(5), (b)(8), (b)(10), (b)(11), (b)(12), (b)(13), (c), (d), (e), (f), (g), (h), and (i) of this section.

(C) Subsections (d), (f), and (k)[1] of section 78q of this title.

(D) Subsections (a), (f), and (h) of section 78s of this title.

**(l) Rules to avoid duplicative regulation of dual registrants**

Consistent with this chapter, each national securities association registered pursuant to subsection (a) of this section shall issue such rules as are necessary to avoid duplicative or conflicting rules applicable to any broker or dealer registered with the Commission pursuant to section 78o(b) of this title (except paragraph (11) thereof), that is also registered with the Commodity Futures Trading Commission pursuant to section 6f(a) of title 7 (except paragraph (2) thereof), with respect to the application of—

(1) rules of such national securities association of the type specified in section 78o(c)(3)(B) of this title involving security futures products; and

(2) similar rules of national securities associations registered pursuant to subsection (k) of this section and national securities exchanges registered pursuant to section 78f(g) of this title involving security futures products.

**(m) Procedures and rules for security future products**

A national securities association registered pursuant to subsection (a) shall, not later than 8 months after December 21, 2000, implement the procedures specified in section 78f(h)(5)(A) of this title and adopt the rules specified in subparagraphs (B) and (C) of section 78f(h)(5) of this title.

(June 6, 1934, ch. 404, title I, §15A, as added June 25, 1938, ch. 677, §1, 52 Stat. 1070; amended Pub. L. 88–467, §7, Aug. 20, 1964, 78 Stat. 574; Pub. L. 94–29, §12, June 4, 1975, 89 Stat. 127; Pub. L. 99–571, title I, §102(g), Oct. 28, 1986, 100 Stat. 3218; Pub. L. 101–429, title V, §509, Oct. 15, 1990, 104 Stat. 957; Pub. L. 103–202, title I, §106(b)(1), title III, §303(a), (c), Dec. 17, 1993, 107 Stat. 2350, 2364, 2366; Pub. L. 106–102, title II, §203, Nov. 12, 1999, 113 Stat. 1391; Pub. L. 106–554, §1(a)(5) [title II, §§203(c), 206(j), (k)(1)], Dec. 21, 2000, 114 Stat. 2763, 2763A–422, 2763A–433; Pub. L. 109–290, §§5, 6, Sept. 29, 2006, 120 Stat. 1319, 1320; Pub. L. 111–203, title IX, §975(f), July 21, 2010, 124 Stat. 1923.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (b)(2), (6), (7), (9), (h)(1)(B), (k)(2)(B)(ii), (4), and (l), was in the original "this title". See References in Text note set out under section 78a of this title.

Paragraph (12), of subsection (b) of this section, referred to in subsec. (d)(2), was omitted in the general amendment of subsec. (b) by Pub. L. 94–29, see par. (11) of subsec. (b). A new par. (12) was added by Pub. L. 103–302, §303(a).

Sections 77d(2) and 77d(6) of this title, referred to in subsec. (j), were redesignated sections 77d(a)(2) and 77d(a)(6), respectively, of this title by Pub. L. 112–106, title II, §201(b)(1), (c)(1), Apr. 5, 2012, 126 Stat. 314.

Subsection (k) of section 78q of this title, referred to in subsec. (k)(4)(C), was redesignated subsec. (j) by Pub. L. 111–203, title VI, §617(a)(2), July 21, 2010, 124 Stat. 1616.

AMENDMENTS

2010—Subsec. (b)(15). Pub. L. 111–203 added par. (15).

2006—Subsec. (b)(14). Pub. L. 109–290, §5, added par. (14).

Subsec. (i). Pub. L. 109–290, §6, inserted heading and amended text of subsec. (i) generally. Prior to amendment, text read as follows: "A registered securities association shall, within one year from October 15, 1990, (1) establish and maintain a toll-free telephone listing to receive inquiries regarding disciplinary actions involving its members and their associated persons, and (2) promptly respond to such inquiries in writing. Such association may charge persons, other than individual investors, reasonable fees for written responses to such inquiries. Such an association shall not have any liability to any person for any actions taken or omitted in good faith under this paragraph."

2000—Subsec. (k). Pub. L. 106–554, §1(a)(5) [title II, §203(c)], added subsec. (k).

Subsec. (l). Pub. L. 106–554, §1(a)(5) [title II, §206(j)], added subsec. (l).

Subsec. (m). Pub. L. 106–554, §1(a)(5) [title II, §206(k)(1)], added subsec. (m).

1999—Subsec. (j). Pub. L. 106–102 added subsec. (j).

1993—Subsec. (b)(12). Pub. L. 103–202, §303(a), added par. (12).

Subsec. (b)(13). Pub. L. 103–202, §303(c), added par. (13).

Subsec. (f). Pub. L. 103–202, §106(b)(1)(A), redesignated par. (3) as entire subsec. (f) and struck out pars. (1) and (2) which read as follows:

"(1) Except as provided in paragraph (2) of this subsection, nothing in this section shall be construed to apply with respect to any transaction by a registered broker or dealer in any exempted security.

"(2) A registered securities association may adopt and implement rules applicable to members of such association (A) to enforce compliance by registered brokers and dealers with applicable provisions of this chapter and the rules and regulations thereunder, (B) to provide that its members and persons associated with its members shall be appropriately disciplined, in accordance with subsections (b)(7), (b)(8), and (h) of this section, for violation of applicable provisions of this chapter and the rules and regulations thereunder, (C) to provide for reasonable inspection and examination of the books and records of registered brokers and dealers, (D) to provide for the matters described in paragraphs (b)(3), (b)(4), and (b)(5) of this section, (E) to implement the provisions of subsection (g) of this section, and (F) to prohibit fraudulent, misleading, deceptive, and false advertising."

Subsec. (g)(3)(D). Pub. L. 103–202, §106(b)(1)(B)(i), substituted "transactions in municipal securities" for "transactions in exempted securities".

Subsec. (g)(4), (5). Pub. L. 103–202, §106(b)(1)(B)(ii), (iii), redesignated par. (5) as (4) and struck out former par. (4) which allowed a registered securities association to deny membership to, condition the membership of, or to otherwise bar association with, the association, under circumstances where a government securi-

---

[1] So in original. Probably should be "(k)".

ties broker or dealer or other person violated financial responsibility rules adopted under section 78o–5(b)(1)(A) of this title, or where it appeared likely that such person or entity had or would engage in conduct which would subject such person or entity to sanctions under section 78o–5(c) of this title.

1990—Subsec. (i). Pub. L. 101–429 added subsec. (i).

1986—Subsec. (f). Pub. L. 99–571, §102(g)(1), amended subsec. (f) generally. Prior to amendment, subsec. (f) read as follows: "Nothing in this section shall be construed to apply with respect to any transaction by a broker or dealer in any exempted security."

Subsec. (g)(3)(D). Pub. L. 99–571, §102(g)(2)(A), added subpar. (D).

Subsec. (g)(4), (5). Pub. L. 99–571, §102(g)(2)(B), (C), added par. (4) and redesignated former par. (4) as (5).

1975—Subsec. (a). Pub. L. 94–29, §12(2), struck out "with the Commission" after "registered", inserted reference to section 78s(a) of this title, substituted provisions covering an application for registration in the form prescribed by Commission rule containing the rules of the association and such other information and documents as the Commission prescribes as necessary or appropriate in the public interest or for the protection of investors for provisions covering a statement in the form prescribed by the Commission setting forth specified information and accompanied by specified documents, and struck out provision that registration not be construed as a waiver of constitutional rights or as a waiver of the right to contest the validity of Commission rules or regulations.

Subsec. (b). Pub. L. 94–29, §12(2), amended subsec. (b) generally, to conform its provisions concerning the registration and regulation of national and affiliated securities associations to those covering the registration and regulation of national securities exchanges contained in section 78f of this title and inserted provisions necessary to accommodate the creation of the Municipal Securities Rulemaking Board and to implement its purposes.

Subsec. (e). Pub. L. 94–29, §12(3), redesignated subsec. (i) as (e) and in subsec. (e) as so redesignated substituted "nonmember professional" for "nonmember broker or dealer" in par. (1), substituted "term 'nonmember professional' shall include (A) with respect to transactions in securities other than municipal securities, any registered broker or dealer who is not a member of any registered securities association, except such a broker or dealer who deals exclusively in commercial paper, bankers' acceptances, and commercial bills" for "term 'nonmember broker or dealer' shall include any broker or dealer who makes use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security otherwise than on a national securities exchange, who is not a member of any registered securities association, except a broker or dealer who deals exclusively in commercial paper, bankers' acceptances, or commercial bills" and added cl. (B) in par. (2), and, in par. (3), designated existing provisions as cl. (A) and added cl. (B). Former subsec. (e), covering the grant and denial of registration and the revocation of affiliated association registration, was struck out. See section 78s of this title.

Subsec. (f). Pub. L. 94–29, §12(3), redesignated subsec. (m) as (f). Former subsec. (f), covering withdrawal from registration, was struck out. See section 78s of this title.

Subsec. (g). Pub. L. 94–29, §12(3), (4), added subsec. (g). Former subsec. (g), covering review by the Commission of adverse actions against association members and stays of such actions, was struck out. See section 78s of this title.

Subsec. (h). Pub. L. 94–29, §12(3), (4), added subsec. (h). Former subsec. (h), covering the Commission's action upon findings, was struck out. See section 78s of this title.

Subsec. (i). Pub. L. 94–29, §12(3), redesignated subsec. (i) as (e) and amended subsec. (e) as so redesignated.

Subsecs. (j) to (l). Pub. L. 94–29, §12(3), struck out subsecs. (j) to (l) which covered the filing of changes or ad-

ditions to association rules and current information, the abrogation and alteration of association rules and supplements to association rules, the suspension of an association or its members, the revocation of registration, the expulsion of members, and the removal of officers or directors. See section 78s of this title.

Subsec. (m). Pub. L. 94–29, §12(3), redesignated subsec. (m) as (f).

Subsec. (n). Pub. L. 94–29, §12(3), struck out subsec. (n) which directed that provisions of this section prevail in the event of any conflict between this section and any other law of the United States in force on June 25, 1938.

1964—Subsec. (b)(1), (2). Pub. L. 88–467, §7(a)(1), substituted a period for the semicolon at end of pars. (1) and (2).

Subsec. (b)(3). Pub. L. 88–467, §7(a)(1), (2), substituted a period for the semicolon at end of par. (3), struck out "of" before "any means", substituted "paragraph (4) or (5) of this subsection, or a rule of the association permitted under this paragraph. The rules" for "paragraph (4) of this subsection: *Provided*, That the rules", and inserted provision authorizing a registered securities association to adopt rules under which it might exclude from membership persons who had been suspended or expelled from a national securities exchange or who were barred or suspended from being associated with all brokers or dealers who are members of such an exchange for violation of exchange rules.

Subsec. (b)(4). Pub. L. 88–467, §7(a)(1), (3), substituted a period for the semicolon at end of par. (4), deleted from text preceding cl. (A) the language "or (2) any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), or any person directly or indirectly controlling or controlled by such broker or dealer, whether prior or subsequent to becoming such", inserted in cl. (A) "or has been and is barred or suspended from being associated with all brokers or dealers which are members of such exchange", inserted in cl. (B) provision for suspension for period not exceeding twelve months or barring or suspending the broker or dealer from being associated with a broker or dealer, inserted at the beginning of cl. (C) "whether prior or subsequent to becoming a broker or dealer," (derived from former cl. (1) of this paragraph) and added to cl. (C) provision conferring jurisdiction upon the Commission, an exchange, or a registered securities association to determine whether an individual is the cause of disciplinary action taken by them against a broker or a dealer, and added cl. (D).

Subsec. (b)(5). Pub. L. 88–467, §7(a)(4), added par. (5). Former par. (5) redesignated (6).

Subsec. (b)(6) to (8). Pub. L. 88–467, §7(a)(1), (4), substituted periods for semicolons at end of paragraphs, and redesignated former pars. (5) to (7) as (6) to (8), respectively. Former pars. (6) to (8) redesignated (7) to (9), respectively.

Subsec. (b)(9). Pub. L. 88–467, §7(a)(1), (4), (5), substituted a period for the semicolon at the end, redesignated former par. (8) as (9), and inserted "and persons associated with its members" and "or being suspended or barred from being associated with all members,", respectively. Former par. (9) redesignated (10).

Subsec. (b)(10). Pub. L. 88–467, §7(a)(4), (6), redesignated former par. (9) as (10), and inserted in paragraph preceding cl. (A) "and persons associated with members", "or the barring of any person from being associated with a member", "or other persons", and "or person", substituted a period for a comma at end of cls. (A) and (B) and a period for ", and" at end of cl. (C), inserted in cl. (A) "or other person" in two places and in concluding sentence "or whether any person shall be barred from being associated with a member", "or person", "or bar" in two places, and substituted a period for "; and", respectively. Former par. (10) redesignated (11).

Subsec. (b)(11). Pub. L. 88–467, §7(a)(4), redesignated former par. (10) as (11).

Subsec. (b)(12). Pub. L. 88–467, §7(a)(7), added par. (12).

Pub. L. 88–467, §7(a)(7), inserted effective date provisions for application of subsec. (b) prior to its amendment and since its amendment with July 1, 1964 as the guiding date.

Subsec. (d)(2). Pub. L. 88–467, §7(b), substituted "(10)" for "(9)" and inserted "and paragraph (12)," after ", inclusive,".

Subsec. (g). Pub. L. 88–467, §7(c), provided that disciplinary action taken by a registered securities association against a person associated with a member will be reviewable by the Commission, shortened the period for review by an aggrieved person from sixty days or within such longer period as the Commission may determine to thirty days or within such longer period as the Commission may determine, authorized the Commission, after notice and opportunity for hearing, on the question of stay to order no stay of action of a registered securities association pending the Commission's decision on review, and authorized the Commission to limit the hearing on the question of stay to affidavits and oral arguments.

Subsec. (h). Pub. L. 88–467, §7(d), made the procedures and the Commission's authority in reviewing disciplinary action by a registered securities association against members and in reviewing association action in denying membership also applicable to Commission review of disciplinary action against persons associated with members and to the barring by an association of any person from being associated with a member.

Subsec. (k)(2). Pub. L. 88–467, §7(e), inserted ", or with such modifications of such alteration or supplement as it deems necessary" after "in the manner theretofore requested", redesignated cls. (1) to (4) as (A) to (D), respectively, and inserted in cl. (A) "or the barring from being associated with a member" and "or persons associated with members, or the qualifications required for members or natural persons associated with members or any class thereof".

Subsec. (*l*). Pub. L. 88–467, §7(f), substituted a period for a semicolon at end of par. (1) and inserted in par. (2) preceding cl. (A) ", or to suspend for a period not exceeding twelve months or to bar any person from being associated with a member thereof,".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective Oct. 1, 2010, see section 975(i) of Pub. L. 111–203, set out as a note under section 78*o* of this title.

EFFECTIVE DATE OF 1999 AMENDMENT

Amendment by Pub. L. 106–102 effective at the end of the 18-month period beginning on Nov. 12, 1999, see section 209 of Pub. L. 106–102, set out as a note under section 1828 of Title 12, Banks and Banking.

EFFECTIVE DATE OF 1993 AMENDMENT

Amendment by section 303(a), (c) of Pub. L. 103–202 effective 12 months after Dec. 17, 1993, with provisions for rulemaking authority and review of filings prior to effective date, see section 304(a) of Pub. L. 103–202, set out as a note under section 78f of this title.

EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–429 effective Oct. 15, 1990, with provisions relating to civil penalties and accounting and disgorgement, see section I(c)(1), (2) of Pub. L. 101–429, set out in a note under section 77g of this title.

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–571 effective 270 days after Oct. 28, 1986, see section 401 of Pub. L. 99–571, set out as an Effective Date note under section 78*o*–5 of this title.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective 180 days after June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–467 effective Aug. 20, 1964, see section 13 of Pub. L. 88–467, set out as a note under section 78c of this title.

CONSTRUCTION OF 1993 AMENDMENT

Amendment by section 106(b)(1) of Pub. L. 103–202 not to be construed to govern initial issuance of any public debt obligation or to grant any authority to (or extend any authority of) the Securities and Exchange Commission, any appropriate regulatory agency, or a self-regulatory organization to prescribe any procedure, term, or condition of such initial issuance, to promulgate any rule or regulation governing such initial issuance, or to otherwise regulate in any manner such initial issuance, see section 111 of Pub. L. 103–202, set out as a note under section 78*o*–5 of this title.

Amendment by section 303(a), (c) of Pub. L. 103–202 not to limit authority of Securities and Exchange Commission, a registered securities association or a national securities exchange under any provision of this chapter, or preclude the Commission or such association or exchange from imposing a remedy or procedure required to be imposed under such amendment, see section 304(b) of Pub. L. 103–202, set out in an Effective Date of 1993 Amendment note under section 78f of this title.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78*o*–4. Municipal securities

### (a) Registration of municipal securities dealers

(1)(A) It shall be unlawful for any municipal securities dealer (other than one registered as a broker or dealer under section 78*o* of this title) to make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security unless such municipal securities dealer is registered in accordance with this subsection.

(B) It shall be unlawful for a municipal advisor to provide advice to or on behalf of a municipal entity or obligated person with respect to municipal financial products or the issuance of municipal securities, or to undertake a solicitation of a municipal entity or obligated person, unless the municipal advisor is registered in accordance with this subsection.

(2) A municipal securities dealer or municipal advisor may be registered by filing with the Commission an application for registration in such form and containing such information and documents concerning such municipal securities dealer or municipal advisor and any persons associated with such municipal securities dealer or municipal advisor as the Commission, by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors. Within forty-five days of the date of the filing of such application (or within such longer period as to which the applicant consents), the Commission shall—

(A) by order grant registration, or

(B) institute proceedings to determine whether registration should be denied. Such proceedings shall include notice of the grounds for denial under consideration and oppor-

# TAB D

#### (c) Exemptive authority

The Commission may, by rule or order, grant such exemptions, in whole or in part, conditionally or unconditionally, to any penny stock or class of penny stocks from the requirements of subsection (b) as the Commission determines to be consistent with the public interest, the protection of investors, and the maintenance of fair and orderly markets.

#### (d) Commission reporting requirements

The Commission shall, in each of the first 5 annual reports (under section 78w(b)(1) of this title) submitted more than 12 months after October 15, 1990, include a description of the status of the penny stock automated quotation system or systems required by subsection (b). Such description shall include—

(1) a review of the development, implementation, and progress of the project, including achievement of significant milestones and current project schedule; and

(2) a review of the activities of registered securities associations and national securities exchanges in the development of the system.

(June 6, 1934, ch. 404, title I, §17B, as added Pub. L. 101–429, title V, §506, Oct. 15, 1990, 104 Stat. 955.)

References in Text

Section 78w(b)(1) of this title, referred to in subsec. (d), was omitted from the Code. For further details related to reports referred to in subsec. (d), see Codification note set out under section 78w of this title.

Effective Date

Section effective Oct. 15, 1990, with provisions relating to civil penalties and accounting and disgorgement, see section 1(c)(1), (2) of Pub. L. 101–429, set out in an Effective Date of 1990 Amendment note under section 77g of this title.

#### § 78r. Liability for misleading statements

#### (a) Persons liable; persons entitled to recover; defense of good faith; suit at law or in equity; costs, etc.

Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of the costs of such suit, and assess reasonable costs, including reasonable attorneys' fees, against either party litigant.

#### (b) Contribution

Every person who becomes liable to make payment under this section may recover contribution as in cases of contract from any person who, if joined in the original suit, would have been liable to make the same payment.

#### (c) Period of limitations

No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued.

(June 6, 1934, ch. 404, title I, §18, 48 Stat. 897; May 27, 1936, ch. 462, §5, 49 Stat. 1379.)

References in Text

This chapter, referred to in subsec. (a), was in the original "this title". See References in Text note set out under section 78a of this title.

Amendments

1936—Subsec. (a). Act May 27, 1936, inserted "or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title".

#### § 78s. Registration, responsibilities, and oversight of self-regulatory organizations

#### (a) Registration procedures; notice of filing; other regulatory agencies

(1) The Commission shall, upon the filing of an application for registration as a national securities exchange, registered securities association, or registered clearing agency, pursuant to section 78f, 78o–3, or 78q–1 of this title, respectively, publish notice of such filing and afford interested persons an opportunity to submit written data, views, and arguments concerning such application. Within ninety days of the date of publication of such notice (or within such longer period as to which the applicant consents), the Commission shall—

(A) by order grant such registration, or

(B) institute proceedings to determine whether registration should be denied. Such proceedings shall include notice of the grounds for denial under consideration and opportunity for hearing and shall be concluded within one hundred eighty days of the date of a publication of notice of the filing of the application for registration. At the conclusion of such proceedings the Commission, by order, shall grant or deny such registration. The Commission may extend the time for conclusion of such proceedings for up to ninety days if it finds good cause for such extension and publishes its reasons for so finding or for such longer period as to which the applicant consents.

The Commission shall grant such registration if it finds that the requirements of this chapter and the rules and regulations thereunder with respect to the applicant are satisfied. The Commission shall deny such registration if it does not make such finding.

(2) With respect to an application for registration filed by a clearing agency for which the Commission is not the appropriate regulatory agency—

(A) The Commission shall not grant registration prior to the sixtieth day after the date of publication of notice of the filing of such application unless the appropriate regulatory agency for such clearing agency has notified the Commission of such appropriate regulatory agency's determination that such clearing agency is so organized and has the capacity to be able to safeguard securities and funds in its custody or control or for which it is responsible and that the rules of such clearing agency are designed to assure the safeguarding of such securities and funds.

(B) The Commission shall institute proceedings in accordance with paragraph (1)(B) of this subsection to determine whether registration should be denied if the appropriate regulatory agency for such clearing agency notifies the Commission within sixty days of the date of publication of notice of the filing of such application of such appropriate regulatory agency's (i) determination that such clearing agency may not be so organized or have the capacity to be able to safeguard securities or funds in its custody or control or for which it is responsible or that the rules of such clearing agency may not be designed to assure the safeguarding of such securities and funds and (ii) reasons for such determination.

(C) The Commission shall deny registration if the appropriate regulatory agency for such clearing agency notifies the Commission prior to the conclusion of proceedings instituted in accordance with paragraph (1)(B) of this subsection of such appropriate regulatory agency's (i) determination that such clearing agency is not so organized or does not have the capacity to be able to safeguard securities or funds in its custody or control or for which it is responsible or that the rules of such clearing agency are not designed to assure the safeguarding of such securities or funds and (ii) reasons for such determination.

(3) A self-regulatory organization may, upon such terms and conditions as the Commission, by rule, deems necessary or appropriate in the public interest or for the protection of investors, withdraw from registration by filing a written notice of withdrawal with the Commission. If the Commission finds that any self-regulatory organization is no longer in existence or has ceased to do business in the capacity specified in its application for registration, the Commission, by order, shall cancel its registration. Upon the withdrawal of a national securities association from registration or the cancellation, suspension, or revocation of the registration of a national securities association, the registration of any association affiliated therewith shall automatically terminate.

**(b) Proposed rule changes; notice; proceedings**

(1) Each self-regulatory organization shall file with the Commission, in accordance with such rules as the Commission may prescribe, copies of any proposed rule or any proposed change in, addition to, or deletion from the rules of such self-regulatory organization (hereinafter in this subsection collectively referred to as a "proposed rule change") accompanied by a concise general statement of the basis and purpose of such proposed rule change. The Commission shall, as soon as practicable after the date of the filing of any proposed rule change, publish notice thereof together with the terms of substance of the proposed rule change or a description of the subjects and issues involved. The Commission shall give interested persons an opportunity to submit written data, views, and arguments concerning such proposed rule change. No proposed rule change shall take effect unless approved by the Commission or otherwise permitted in accordance with the provisions of this subsection.

(2) Approval process.—

(A) Approval process established.—

(i) In general.—Except as provided in clause (ii), not later than 45 days after the date of publication of a proposed rule change under paragraph (1), the Commission shall—

(I) by order, approve or disapprove the proposed rule change; or

(II) institute proceedings under subparagraph (B) to determine whether the proposed rule change should be disapproved.

(ii) Extension of time period.—The Commission may extend the period established under clause (i) by not more than an additional 45 days, if—

(I) the Commission determines that a longer period is appropriate and publishes the reasons for such determination; or

(II) the self-regulatory organization that filed the proposed rule change consents to the longer period.

(B) Proceedings.—

(i) Notice and hearing.—If the Commission does not approve or disapprove a proposed rule change under subparagraph (A), the Commission shall provide to the self-regulatory organization that filed the proposed rule change—

(I) notice of the grounds for disapproval under consideration; and

(II) opportunity for hearing, to be concluded not later than 180 days after the date of publication of notice of the filing of the proposed rule change.

(ii) Order of approval or disapproval.—

(I) In general.—Except as provided in subclause (II), not later than 180 days after the date of publication under paragraph (1), the Commission shall issue an order approving or disapproving the proposed rule change.

(II) Extension of time period.—The Commission may extend the period for issuance under clause (I) by not more than 60 days, if—

(aa) the Commission determines that a longer period is appropriate and publishes the reasons for such determination; or

(bb) the self-regulatory organization that filed the proposed rule change consents to the longer period.

(C) Standards for approval and disapproval.—

(i) Approval.—The Commission shall approve a proposed rule change of a self-regu-

latory organization if it finds that such proposed rule change is consistent with the requirements of this chapter and the rules and regulations issued under this chapter that are applicable to such organization.

(ii) DISAPPROVAL.—The Commission shall disapprove a proposed rule change of a self-regulatory organization if it does not make a finding described in clause (i).

(iii) TIME FOR APPROVAL.—The Commission may not approve a proposed rule change earlier than 30 days after the date of publication under paragraph (1), unless the Commission finds good cause for so doing and publishes the reason for the finding.

(D) RESULT OF FAILURE TO INSTITUTE OR CONCLUDE PROCEEDINGS.—A proposed rule change shall be deemed to have been approved by the Commission, if—

(i) the Commission does not approve or disapprove the proposed rule change or begin proceedings under subparagraph (B) within the period described in subparagraph (A); or

(ii) the Commission does not issue an order approving or disapproving the proposed rule change under subparagraph (B) within the period described in subparagraph (B)(ii).

(E) PUBLICATION DATE BASED ON FEDERAL REGISTER PUBLISHING.—For purposes of this paragraph, if, after filing a proposed rule change with the Commission pursuant to paragraph (1), a self-regulatory organization publishes a notice of the filing of such proposed rule change, together with the substantive terms of such proposed rule change, on a publicly accessible website, the Commission shall thereafter send the notice to the Federal Register for publication thereof under paragraph (1) within 15 days of the date on which such website publication is made. If the Commission fails to send the notice for publication thereof within such 15 day period, then the date of publication shall be deemed to be the date on which such website publication was made.

(F) RULEMAKING.—

(i) IN GENERAL.—Not later than 180 days after July 21, 2010, after consultation with other regulatory agencies, the Commission shall promulgate rules setting forth the procedural requirements of the proceedings required under this paragraph.

(ii) NOTICE AND COMMENT NOT REQUIRED.—The rules promulgated by the Commission under clause (i) are not required to include republication of proposed rule changes or solicitation of public comment.

(3)(A) Notwithstanding the provisions of paragraph (2) of this subsection, a proposed rule change shall take effect upon filing with the Commission if designated by the self-regulatory organization as (i) constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization, (ii) establishing or changing a due, fee, or other charge imposed by the self-regulatory organization on any person, whether or not the person is a member of the self-regulatory organization, or (iii) concerned solely with the administration of the self-regulatory organization or other matters which the Commission, by rule, consistent with the public interest and the purposes of this subsection, may specify as without the provisions of such paragraph (2).

(B) Notwithstanding any other provision of this subsection, a proposed rule change may be put into effect summarily if it appears to the Commission that such action is necessary for the protection of investors, the maintenance of fair and orderly markets, or the safeguarding of securities or funds. Any proposed rule change so put into effect shall be filed promptly thereafter in accordance with the provisions of paragraph (1) of this subsection.

(C) Any proposed rule change of a self-regulatory organization which has taken effect pursuant to subparagraph (A) or (B) of this paragraph may be enforced by such organization to the extent it is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law. At any time within the 60-day period beginning on the date of filing of such a proposed rule change in accordance with the provisions of paragraph (1), the Commission summarily may temporarily suspend the change in the rules of the self-regulatory organization made thereby, if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter. If the Commission takes such action, the Commission shall institute proceedings under paragraph (2)(B) to determine whether the proposed rule should be approved or disapproved. Commission action pursuant to this subparagraph shall not affect the validity or force of the rule change during the period it was in effect and shall not be reviewable under section 78y of this title nor deemed to be "final agency action" for purposes of section 704 of title 5.

(4) With respect to a proposed rule change filed by a registered clearing agency for which the Commission is not the appropriate regulatory agency—

(A) The Commission shall not approve any such proposed rule change prior to the thirtieth day after the date of publication of notice of the filing whereof unless the appropriate regulatory agency for such clearing agency has notified the Commission of such appropriate regulatory agency's determination that the proposed rule change is consistent with the safeguarding of securities and funds in the custody or control of such clearing agency or for which it is responsible.

(B) The Commission shall institute proceedings in accordance with paragraph (2)(B) of this subsection to determine whether any such proposed rule change should be disapproved, if the appropriate regulatory agency for such clearing agency notifies the Commission within thirty days of the date of publication of notice of the filing of the proposed rule change of such appropriate regulatory agency's (i) determination that the proposed rule change may be inconsistent with the safeguarding of securities or funds in the custody or control of such clearing agency or for which it is responsible and (ii) reasons for such determination.

(C) The Commission shall disapprove any such proposed rule change if the appropriate regulatory agency for such clearing agency notifies the Commission prior to the conclusion of proceedings instituted in accordance with paragraph (2)(B) of this subsection of such appropriate regulatory agency's (i) determination that the proposed rule change is inconsistent with the safeguarding of securities or funds in the custody or control of such clearing agency or for which it is responsible and (ii) reasons for such determination.

(D)(i) The Commission shall order the temporary suspension of any change in the rules of a clearing agency made by a proposed rule change that has taken effect under paragraph (3), if the appropriate regulatory agency for the clearing agency notifies the Commission not later than 30 days after the date on which the proposed rule change was filed of—

(I) the determination by the appropriate regulatory agency that the rules of such clearing agency, as so changed, may be inconsistent with the safeguarding of securities or funds in the custody or control of such clearing agency or for which it is responsible; and

(II) the reasons for the determination described in subclause (I).

(ii) If the Commission takes action under clause (i), the Commission shall institute proceedings under paragraph (2)(B) to determine if the proposed rule change should be approved or disapproved.

(5) The Commission shall consult with and consider the views of the Secretary of the Treasury prior to approving a proposed rule filed by a registered securities association that primarily concerns conduct related to transactions in government securities, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor. If the Secretary of the Treasury comments in writing to the Commission on a proposed rule that has been published for comment, the Commission shall respond in writing to such written comment before approving the proposed rule. If the Secretary of the Treasury determines, and notifies the Commission, that such rule, if implemented, would, or as applied does (i) adversely affect the liquidity or efficiency of the market for government securities; or (ii) impose any burden on competition not necessary or appropriate in furtherance of the purposes of this section, the Commission shall, prior to adopting the proposed rule, find that such rule is necessary and appropriate in furtherance of the purposes of this section notwithstanding the Secretary's determination.

(6) In approving rules described in paragraph (5), the Commission shall consider the sufficiency and appropriateness of then existing laws and rules applicable to government securities brokers, government securities dealers, and persons associated with government securities brokers and government securities dealers.

(7) SECURITY FUTURES PRODUCT RULE CHANGES.—

(A) FILING REQUIRED.—A self-regulatory organization that is an exchange registered with the Commission pursuant to section 78f(g) of this title or that is a national securities association registered pursuant to section 78o–3(k) of this title shall file with the Commission, in accordance with such rules as the Commission may prescribe, copies of any proposed rule change or any proposed change in, addition to, or deletion from the rules of such self-regulatory organization (hereinafter in this paragraph collectively referred to as a "proposed rule change") that relates to higher margin levels, fraud or manipulation, recordkeeping, reporting, listing standards, or decimal pricing for security futures products, sales practices for security futures products for persons who effect transactions in security futures products, or rules effectuating such self-regulatory organization's obligation to enforce the securities laws. Such proposed rule change shall be accompanied by a concise general statement of the basis and purpose of such proposed rule change. The Commission shall, upon the filing of any proposed rule change, promptly publish notice thereof together with the terms of substance of the proposed rule change or a description of the subjects and issues involved. The Commission shall give interested persons an opportunity to submit data, views, and arguments concerning such proposed rule change.

(B) FILING WITH CFTC.—A proposed rule change filed with the Commission pursuant to subparagraph (A) shall be filed concurrently with the Commodity Futures Trading Commission. Such proposed rule change may take effect upon filing of a written certification with the Commodity Futures Trading Commission under section 7a–2(c) of title 7, upon a determination by the Commodity Futures Trading Commission that review of the proposed rule change is not necessary, or upon approval of the proposed rule change by the Commodity Futures Trading Commission.

(C) ABROGATION OF RULE CHANGES.—Any proposed rule change of a self-regulatory organization that has taken effect pursuant to subparagraph (B) may be enforced by such self-regulatory organization to the extent such rule is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal law. At any time within 60 days of the date of the filing of a written certification with the Commodity Futures Trading Commission under section 7a–2(c) of title 7, the date the Commodity Futures Trading Commission determines that review of such proposed rule change is not necessary, or the date the Commodity Futures Trading Commission approves such proposed rule change, the Commission, after consultation with the Commodity Futures Trading Commission, may summarily abrogate the proposed rule change and require that the proposed rule change be refiled in accordance with the provisions of paragraph (1), if it appears to the Commission that such proposed rule change unduly burdens competition or efficiency, conflicts with the securities laws, or is inconsistent with the public interest and the protection of investors. Commission action pursuant to the preceding sentence shall

not affect the validity or force of the rule change during the period it was in effect and shall not be reviewable under section 78y of this title nor deemed to be a final agency action for purposes of section 704 of title 5.

(D) REVIEW OF RESUBMITTED ABROGATED RULES.—

(i) PROCEEDINGS.—Within 35 days of the date of publication of notice of the filing of a proposed rule change that is abrogated in accordance with subparagraph (C) and refiled in accordance with paragraph (1), or within such longer period as the Commission may designate up to 90 days after such date if the Commission finds such longer period to be appropriate and publishes its reasons for so finding or as to which the self-regulatory organization consents, the Commission shall—

(I) by order approve such proposed rule change; or

(II) after consultation with the Commodity Futures Trading Commission, institute proceedings to determine whether the proposed rule change should be disapproved. Proceedings under subclause (II) shall include notice of the grounds for disapproval under consideration and opportunity for hearing and be concluded within 180 days after the date of publication of notice of the filing of the proposed rule change. At the conclusion of such proceedings, the Commission, by order, shall approve or disapprove such proposed rule change. The Commission may extend the time for conclusion of such proceedings for up to 60 days if the Commission finds good cause for such extension and publishes its reasons for so finding or for such longer period as to which the self-regulatory organization consents.

(ii) GROUNDS FOR APPROVAL.—The Commission shall approve a proposed rule change of a self-regulatory organization under this subparagraph if the Commission finds that such proposed rule change does not unduly burden competition or efficiency, does not conflict with the securities laws, and is not inconsistent with the public interest or the protection of investors. The Commission shall disapprove such a proposed rule change of a self-regulatory organization if it does not make such finding. The Commission shall not approve any proposed rule change prior to the 30th day after the date of publication of notice of the filing thereof, unless the Commission finds good cause for so doing and publishes its reasons for so finding.

(8) DECIMAL PRICING.—Not later than 9 months after the date on which trading in any security futures product commences under this chapter, all self-regulatory organizations listing or trading security futures products shall file proposed rule changes necessary to implement decimal pricing of security futures products. The Commission may not require such rules to contain equal minimum increments in such decimal pricing.

(9) CONSULTATION WITH CFTC.—

(A) CONSULTATION REQUIRED.—The Commission shall consult with and consider the views of the Commodity Futures Trading Commission prior to approving or disapproving a proposed rule change filed by a national securities association registered pursuant to section 78o–3(a) of this title or a national securities exchange subject to the provisions of subsection (a) that primarily concerns conduct related to transactions in security futures products, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor.

(B) RESPONSES TO CFTC COMMENTS AND FINDINGS.—If the Commodity Futures Trading Commission comments in writing to the Commission on a proposed rule that has been published for comment, the Commission shall respond in writing to such written comment before approving or disapproving the proposed rule. If the Commodity Futures Trading Commission determines, and notifies the Commission, that such rule, if implemented or as applied, would—

(i) adversely affect the liquidity or efficiency of the market for security futures products; or

(ii) impose any burden on competition not necessary or appropriate in furtherance of the purposes of this section,

the Commission shall, prior to approving or disapproving the proposed rule, find that such rule is necessary and appropriate in furtherance of the purposes of this section notwithstanding the Commodity Futures Trading Commission's determination.

(10)[1] RULE OF CONSTRUCTION RELATING TO FILING DATE OF PROPOSED RULE CHANGES.—

(A) IN GENERAL.—For purposes of this subsection, the date of filing of a proposed rule change shall be deemed to be the date on which the Commission receives the proposed rule change.

(B) EXCEPTION.—A proposed rule change has not been received by the Commission for purposes of subparagraph (A) if, not later than 7 business days after the date of receipt by the Commission, the Commission notifies the self-regulatory organization that such proposed rule change does not comply with the rules of the Commission relating to the required form of a proposed rule change, except that if the Commission determines that the proposed rule change is unusually lengthy and is complex or raises novel regulatory issues, the Commission shall inform the self-regulatory organization of such determination not later than 7 business days after the date of receipt by the Commission and, for the purposes of subparagraph (A), a proposed rule change has not been received by the Commission, if, not later than 21 days after the date of receipt by the Commission, the Commission notifies the self-regulatory organization that such proposed rule change does not comply with the rules of the Commission relating to the required form of a proposed rule change.

---

[1] So in original. Two pars. (10) have been enacted.

(10)[1] Notwithstanding paragraph (2), the time period within which the Commission is required by order to approve a proposed rule change or institute proceedings to determine whether the proposed rule change should be disapproved is stayed pending a determination by the Commission upon the request of the Commodity Futures Trading Commission or its Chairman that the Commission issue a determination as to whether a product that is the subject of such proposed rule change is a security pursuant to section 8306 of this title.

**(c) Amendment by Commission of rules of self-regulatory organizations**

The Commission, by rule, may abrogate, add to, and delete from (hereinafter in this subsection collectively referred to as "amend") the rules of a self-regulatory organization (other than a registered clearing agency) as the Commission deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this chapter and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this chapter, in the following manner:

(1) The Commission shall notify the self-regulatory organization and publish notice of the proposed rulemaking in the Federal Register. The notice shall include the text of the proposed amendment to the rules of the self-regulatory organization and a statement of the Commission's reasons, including any pertinent facts, for commencing such proposed rulemaking.

(2) The Commission shall give interested persons an opportunity for the oral presentation of data, views, and arguments, in addition to an opportunity to make written submissions. A transcript shall be kept of any oral presentation.

(3) A rule adopted pursuant to this subsection shall incorporate the text of the amendment to the rules of the self-regulatory organization and a statement of the Commission's basis for and purpose in so amending such rules. This statement shall include an identification of any facts on which the Commission considers its determination so to amend the rules of the self-regulatory agency to be based, including the reasons for the Commission's conclusions as to any of such facts which were disputed in the rulemaking.

(4)(A) Except as provided in paragraphs (1) through (3) of this subsection, rulemaking under this subsection shall be in accordance with the procedures specified in section 553 of title 5 for rulemaking not on the record.

(B) Nothing in this subsection shall be construed to impair or limit the Commission's power to make, or to modify or alter the procedures the Commission may follow in making, rules and regulations pursuant to any other authority under this chapter.

(C) Any amendment to the rules of a self-regulatory organization made by the Commission pursuant to this subsection shall be considered for all purposes of this chapter to be part of the rules of such self-regulatory organization and shall not be considered to be a rule of the Commission.

(5) With respect to rules described in subsection (b)(5), the Commission shall consult with and consider the views of the Secretary of the Treasury before abrogating, adding to, and deleting from such rules, except where the Commission determines that an emergency exists requiring expeditious or summary action and publishes its reasons therefor.

**(d) Notice of disciplinary action taken by self-regulatory organization against a member or participant; review of action by appropriate regulatory agency; procedure**

(1) If any self-regulatory organization imposes any final disciplinary sanction on any member thereof or participant therein, denies membership or participation to any applicant, or prohibits or limits any person in respect to access to services offered by such organization or member thereof or if any self-regulatory organization (other than a registered clearing agency) imposes any final disciplinary sanction on any person associated with a member or bars any person from becoming associated with a member, the self-regulatory organization shall promptly file notice thereof with the appropriate regulatory agency for the self-regulatory organization and (if other than the appropriate regulatory agency for the self-regulatory organization) the appropriate regulatory agency for such member, participant, applicant, or other person. The notice shall be in such form and contain such information as the appropriate regulatory agency for the self-regulatory organization, by rule, may prescribe as necessary or appropriate in furtherance of the purposes of this chapter.

(2) Any action with respect to which a self-regulatory organization is required by paragraph (1) of this subsection to file notice shall be subject to review by the appropriate regulatory agency for such member, participant, applicant, or other person, on its own motion, or upon application by any person aggrieved thereby filed within thirty days after the date such notice was filed with such appropriate regulatory agency and received by such aggrieved person, or within such longer period as such appropriate regulatory agency may determine. Application to such appropriate regulatory agency for review, or the institution of review by such appropriate regulatory agency on its own motion, shall not operate as a stay of such action unless such appropriate regulatory agency otherwise orders, summarily or after notice and opportunity for hearing on the question of a stay (which hearing may consist solely of the submission of affidavits or presentation of oral arguments). Each appropriate regulatory agency shall establish for appropriate cases an expedited procedure for consideration and determination of the question of a stay.

(3) The provisions of this subsection shall apply to an exchange registered pursuant to section 78f(g) of this title or a national securities association registered pursuant to section 78o-3(k) of this title only to the extent that such exchange or association imposes any final disciplinary sanction for—

(A) a violation of the Federal securities laws or the rules and regulations thereunder; or

(B) a violation of a rule of such exchange or association, as to which a proposed change would be required to be filed under this section, except that, to the extent that the exchange or association rule violation relates to any account, agreement, contract, or transaction, this subsection shall apply only to the extent such violation involves a security futures product.

**(e) Disposition of review; cancellation, reduction, or remission of sanction**

(1) In any proceeding to review a final disciplinary sanction imposed by a self-regulatory organization on a member thereof or participant therein or a person associated with such a member, after notice and opportunity for hearing (which hearing may consist solely of consideration of the record before the self-regulatory organization and opportunity for the presentation of supporting reasons to affirm, modify, or set aside the sanction)—

(A) if the appropriate regulatory agency for such member, participant, or person associated with a member finds that such member, participant, or person associated with a member has engaged in such acts or practices, or has omitted such acts, as the self-regulatory organization has found him to have engaged in or omitted, that such acts or practices, or omissions to act, are in violation of such provisions of this chapter, the rules or regulations thereunder, the rules of the self-regulatory organization, or, in the case of a registered securities association, the rules of the Municipal Securities Rulemaking Board as have been specified in the determination of the self-regulatory organization, and that such provisions are, and were applied in a manner, consistent with the purposes of this chapter, such appropriate regulatory agency, by order, shall so declare and, as appropriate, affirm the sanction imposed by the self-regulatory organization, modify the sanction in accordance with paragraph (2) of this subsection, or remand to the self-regulatory organization for further proceedings; or

(B) if such appropriate regulatory agency does not make any such finding it shall, by order, set aside the sanction imposed by the self-regulatory organization and, if appropriate, remand to the self-regulatory organization for further proceedings.

(2) If the appropriate regulatory agency for a member, participant, or person associated with a member, having due regard for the public interest and the protection of investors, finds after a proceeding in accordance with paragraph (1) of this subsection that a sanction imposed by a self-regulatory organization upon such member, participant, or person associated with a member imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter or is excessive or oppressive, the appropriate regulatory agency may cancel, reduce, or require the remission of such sanction.

**(f) Dismissal of review proceeding**

In any proceeding to review the denial of membership or participation in a self-regulatory organization to any applicant, the barring of any person from becoming associated with a member of a self-regulatory organization, or the prohibition or limitation by a self-regulatory organization of any person with respect to access to services offered by the self-regulatory organization or any member thereof, if the appropriate regulatory agency for such applicant or person, after notice and opportunity for hearing (which hearing may consist solely of consideration of the record before the self-regulatory organization and opportunity for the presentation of supporting reasons to dismiss the proceeding or set aside the action of the self-regulatory organization) finds that the specific grounds on which such denial, bar, or prohibition or limitation is based exist in fact, that such denial, bar, or prohibition or limitation is in accordance with the rules of the self-regulatory organization, and that such rules are, and were applied in a manner, consistent with the purposes of this chapter, such appropriate regulatory agency, by order, shall dismiss the proceeding. If such appropriate regulatory agency does not make any such finding or if it finds that such denial, bar, or prohibition or limitation imposes any burden on competition not necessary or appropriate in furtherance of the purposes of this chapter, such appropriate regulatory agency, by order, shall set aside the action of the self-regulatory organization and require it to admit such applicant to membership or participation, permit such person to become associated with a member, or grant such person access to services offered by the self-regulatory organization or member thereof.

**(g) Compliance with rules and regulations**

(1) Every self-regulatory organization shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules, and (subject to the provisions of section 78q(d) of this title, paragraph (2) of this subsection, and the rules thereunder) absent reasonable justification or excuse enforce compliance—

(A) in the case of a national securities exchange, with such provisions by its members and persons associated with its members;

(B) in the case of a registered securities association, with such provisions and the provisions of the rules of the Municipal Securities Rulemaking Board by its members and persons associated with its members; and

(C) in the case of a registered clearing agency, with its own rules by its participants.

(2) The Commission, by rule, consistent with the public interest, the protection of investors, and the other purposes of this chapter, may relieve any self-regulatory organization of any responsibility under this chapter to enforce compliance with any specified provision of this chapter or the rules or regulations thereunder by any member of such organization or person associated with such a member, or any class of such members or persons associated with a member.

**(h) Suspension or revocation of self-regulatory organization's registration; censure; other sanctions**

(1) The appropriate regulatory agency for a self-regulatory organization is authorized, by

order, if in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter, to suspend for a period not exceeding twelve months or revoke the registration of such self-regulatory organization, or to censure or impose limitations upon the activities, functions, and operations of such self-regulatory organization, if such appropriate regulatory agency finds, on the record after notice and opportunity for hearing, that such self-regulatory organization has violated or is unable to comply with any provision of this chapter, the rules or regulations thereunder, or its own rules or without reasonable justification or excuse has failed to enforce compliance—

(A) in the case of a national securities exchange, with any such provision by a member thereof or a person associated with a member thereof;

(B) in the case of a registered securities association, with any such provision or any provision of the rules of the Municipal Securities Rulemaking Board by a member thereof or a person associated with a member thereof; or

(C) in the case of a registered clearing agency, with any provision of its own rules by a participant therein.

(2) The appropriate regulatory agency for a self-regulatory organization is authorized, by order, if in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter, to suspend for a period not exceeding twelve months or expel from such self-regulatory organization any member thereof or participant therein, if such member or participant is subject to an order of the Commission pursuant to section 78o(b)(4) of this title or if such appropriate regulatory agency finds, on the record after notice and opportunity for hearing, that such member or participant has willfully violated or has effected any transaction for any other person who, such member or participant had reason to believe, was violating with respect to such transaction—

(A) in the case of a national securities exchange, any provision of the Securities Act of 1933 [15 U.S.C. 77a et seq.], the Investment Advisers Act of 1940 [15 U.S.C. 80b–1 et seq.], the Investment Company Act of 1940 [15 U.S.C. 80a–1 et seq.], this chapter, or the rules or regulations under any of such statutes;

(B) in the case of a registered securities association, any provision of the Securities Act of 1933, the Investment Advisers Act of 1940, the Investment Company Act of 1940, this chapter, the rules or regulations under any of such statutes, or the rules of the Municipal Securities Rulemaking Board; or

(C) in the case of a registered clearing agency, any provision of the rules of the clearing agency.

(3) The appropriate regulatory agency for a national securities exchange or registered securities association is authorized, by order, if in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter, to suspend for a period not exceeding twelve months or to bar any person from being associated with a member of such national securities exchange or registered securities association, if such person is subject to an order of the Commission pursuant to section 78o(b)(6) of this title or if such appropriate regulatory agency finds, on the record after notice and opportunity for hearing, that such person has willfully violated or has effected any transaction for any other person who, such person associated with a member had reason to believe, was violating with respect to such transaction—

(A) in the case of a national securities exchange, any provision of the Securities Act of 1933, the Investment Advisers Act of 1940, the Investment Company Act of 1940, this chapter, or the rules or regulations under any of such statutes; or

(B) in the case of a registered securities association, any provision of the Securities Act of 1933, the Investment Advisers Act of 1940, the Investment Company Act of 1940, this chapter, the rules or regulations under any of the statutes, or the rules of the Municipal Securities Rulemaking Board.

(4) The appropriate regulatory agency for a self-regulatory organization is authorized, by order, if in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter, to remove from office or censure any person who is, or at the time of the alleged misconduct was, an officer or director of such self-regulatory organization, if such appropriate regulatory agency finds, on the record after notice and opportunity for hearing, that such person has willfully violated any provision of this chapter, the rules or regulations thereunder, or the rules of such self-regulatory organization, willfully abused his authority, or without reasonable justification or excuse has failed to enforce compliance—

(A) in the case of a national securities exchange, with any such provision by any member or person associated with a member;

(B) in the case of a registered securities association, with any such provision or any provision of the rules of the Municipal Securities Rulemaking Board by any member or person associated with a member; or

(C) in the case of a registered clearing agency, with any provision of the rules of the clearing agency by any participant.

**(i) Appointment of trustee**

If a proceeding under subsection (h)(1) of this section results in the suspension or revocation of the registration of a clearing agency, the appropriate regulatory agency for such clearing agency may, upon notice to such clearing agency, apply to any court of competent jurisdiction specified in section 78u(d) or 78aa of this title for the appointment of a trustee. In the event of such an application, the court may, to the extent it deems necessary or appropriate, take exclusive jurisdiction of such clearing agency and the records and assets thereof, wherever located; and the court shall appoint the appropriate regulatory agency for such clearing agency or a person designated by such appropriate regu-

latory agency as trustee with power to take possession and continue to operate or terminate the operations of such clearing agency in an orderly manner for the protection of participants and investors, subject to such terms and conditions as the court may prescribe.

(June 6, 1934, ch. 404, title I, §19, 48 Stat. 898; Pub. L. 87–196, Sept. 5, 1961, 75 Stat. 465; Pub. L. 87–561, July 27, 1962, 76 Stat. 247; Pub. L. 90–438, July 29, 1968, 82 Stat. 453; Pub. L. 91–94, Oct. 20, 1969, 83 Stat. 141; Pub. L. 91–410, Sept. 25, 1970, 84 Stat. 862; Pub. L. 94–29, §16, June 4, 1975, 89 Stat. 146; Pub. L. 103–202, title I, §106(c), Dec. 17, 1993, 107 Stat. 2350; Pub. L. 105–353, title III, §301(b)(11), Nov. 3, 1998, 112 Stat. 3236; Pub. L. 106–554, §1(a)(5) [title II, §202(b), (c)], Dec. 21, 2000, 114 Stat. 2763, 2763A–418, 2763A–421; Pub. L. 111–203, title VII, §717(c), title IX, §§916, 929F(e), July 21, 2010, 124 Stat. 1652, 1833, 1854.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (a)(1), (b)(2)(C)(i), (3)(C), (7)(C), (8), (c), (d)(1), (e)(1)(A), (2), (f), (g), and (h), was in the original "this title". See References in Text note set out under section 78a of this title.

The Securities Act of 1933, referred to in subsec. (h), is act May 27, 1933, ch. 38, title I, 48 Stat. 74, as amended, which is classified generally to subchapter I (§77a et seq.) of chapter 2A of this title. For complete classification of this Act to the Code, see section 77a of this title and Tables.

The Investment Advisers Act of 1940, referred to in subsec. (h), is title II of act Aug. 22, 1940, ch. 686, 54 Stat. 847, as amended, which is classified generally to subchapter II (§80b–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80b–20 of this title and Tables.

The Investment Company Act of 1940, referred to in subsec. (h), is title I of act Aug. 22, 1940, ch. 686, 54 Stat. 789, as amended, which is classified generally to subchapter I (§80a–1 et seq.) of chapter 2D of this title. For complete classification of this Act to the Code, see section 80a–51 of this title and Tables.

AMENDMENTS

2010—Subsec. (b)(1). Pub. L. 111–203, §916(b)(2), substituted "as soon as practicable after the date of the filing" for "upon the filing".

Subsec. (b)(2). Pub. L. 111–203, §916(a), added par. (2) and struck out former par. (2) which related to approval of rule change or institution of proceedings regarding disapproval of such change within thirty-five days of publication of notice or within such longer period as the Commission may designate up to ninety days of such date.

Subsec. (b)(3)(A). Pub. L. 111–203, §916(c)(1), substituted "shall take effect" for "may take effect" and inserted "on any person, whether or not the person is a member of the self-regulatory organization" after "charge imposed by the self-regulatory organization".

Subsec. (b)(3)(C). Pub. L. 111–203, §916(c)(2), substituted second sentence for former second sentence which read as follows: "At any time within sixty days of the date of filing of such a proposed rule change in accordance with the provisions of paragraph (1) of this subsection, the Commission summarily may abrogate the change in the rules of the self-regulatory organization made thereby and require that the proposed rule change be refiled in accordance with the provisions of paragraph (1) of this subsection and reviewed in accordance with the provisions of paragraph (2) of this subsection, if it appears to the Commission that such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter.", added third sentence, and substituted "this subparagraph" for "the preceding sentence" in last sentence.

Subsec. (b)(4)(D). Pub. L. 111–203, §916(d), amended subpar. (D) generally. Prior to amendment, subpar. (D) read as follows: "The Commission shall abrogate any change in the rules of such a clearing agency made by a proposed rule change which has taken effect pursuant to paragraph (3) of this subsection, require that the proposed rule change be refiled in accordance with the provisions of paragraph (1) of this subsection, and reviewed in accordance with the provisions of paragraph (2) of this subsection, if the appropriate regulatory agency for such clearing agency notifies the Commission within thirty days of the date of filing of such proposed rule change of such appropriate regulatory agency's (i) determination that the rules of such clearing agency as so changed may be inconsistent with the safeguarding of securities or funds in the custody or control of such clearing agency or for which it is responsible and (ii) reasons for such determination."

Subsec. (b)(10). Pub. L. 111–203, §916(b)(1), added par. (10) relating to rule of construction relating to filing date of proposed rule changes.

Pub. L. 111–203, §717(c), added par. (10) relating to stay pending determination whether product is a security pursuant to section 8306 of this title.

Subsec. (h)(4). Pub. L. 111–203, §929F(e), in introductory provisions, substituted "any person who is, or at the time of the alleged misconduct was, an officer or director" for "any officer or director" and "such person" for "such officer or director".

2000—Subsec. (b)(7). Pub. L. 106–554, §1(a)(5) [title II, §202(b)(1)], added par. (7).

Subsec. (b)(8). Pub. L. 106–554, §1(a)(5) [title II, §202(b)(2)], added par. (8).

Subsec. (b)(9). Pub. L. 106–554, §1(a)(5) [title II, §202(b)(3)], added par. (9).

Subsec. (d)(3). Pub. L. 106–554, §1(a)(5) [title II, §202(c)], added par. (3).

1998—Subsec. (c)(5). Pub. L. 105–353 realigned margins.

1993—Subsec. (b)(5), (6). Pub. L. 103–202, §106(c)(1), added pars. (5) and (6).

Subsec. (c)(5). Pub. L. 103–202, §106(c)(2), added par. (5).

1975—Pub. L. 94–29 amended section generally, substituting provisions covering the registration, responsibilities, and oversight of self-regulatory organizations by the Commission for provisions covering only the Commission's powers with respect to exchanges and securities, with a view to consolidating and expanding the Commission's oversight powers with respect to self-regulatory organizations, their members, participants, and officers, and with a view to giving the Commission identical powers over all self-regulatory organizations, including registered clearing agencies, and substantially strengthening the Commission's ability to assure that these organizations carry out their statutory responsibilities.

1970—Subsec. (e)(1). Pub. L. 91–410 substituted "December 31, 1970" for "September 1, 1970".

1969—Subsec. (e). Pub. L. 91–94 substituted "September 1, 1970" for "September 1, 1969" in par. (1), and "$945,000" for "$875,000" in par. (4).

1968—Subsec. (e). Pub. L. 90–438 added subsec. (e).

1962—Subsec. (d). Pub. L. 87–561 substituted "April 3, 1963" for "January 3, 1963" and "$950,000" for "$750,000".

1961—Subsec. (d). Pub. L. 87–196 added subsec. (d).

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by sections 916 and 929F(e) of Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

Amendment by section 717(c) of Pub. L. 111–203 effective on the later of 360 days after July 21, 2010, or, to the extent a provision of subtitle A (§§711–754) of title VII of Pub. L. 111–203 requires a rulemaking, not less than 60 days after publication of the final rule or regulation implementing such provision of subtitle A, see section 754 of Pub. L. 111–203, set out as a note under section 1a of Title 7, Agriculture.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, except for amendment of subsec. (g) by Pub. L. 94–29 which is effective 180 days after June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

CONSTRUCTION OF 1993 AMENDMENT

Amendment by Pub. L. 103–202 not to be construed to govern initial issuance of any public debt obligation or to grant any authority to (or extend any authority of) the Securities and Exchange Commission, any appropriate regulatory agency, or a self-regulatory organization to prescribe any procedure, term, or condition of such initial issuance, to promulgate any rule or regulation governing such initial issuance, or to otherwise regulate in any manner such initial issuance, see section 111 of Pub. L. 103–202, set out as a note under section 78o–5 of this title.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

REVIEW OF REGULATORY STRUCTURES AND PROCEDURES WITH RESPECT TO PENNY STOCKS; REPORT

Pub. L. 101–429, title V, §510, Oct. 15, 1990, 104 Stat. 957, directed Comptroller General, in consultation with Securities and Exchange Commission, to conduct a review of rules, procedures, facilities, and oversight and enforcement activities of self-regulatory organizations under Securities Exchange Act of 1934, with respect to penny stocks (within the meaning of 15 U.S.C. 78c(a)(51)), and, within one year after Oct. 15, 1990, to submit a report on the review including a statement of findings and such recommendations as the Comptroller General considered appropriate with respect to legislative or administrative changes.

## § 78t. Liability of controlling persons and persons who aid and abet violations

### (a) Joint and several liability; good faith defense

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

### (b) Unlawful activity through or by means of any other person

It shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person.

### (c) Hindering, delaying, or obstructing the making or filing of any document, report, or information

It shall be unlawful for any director or officer of, or any owner of any securities issued by, an issuer required to file any document, report, or information under this chapter or any rule or regulation thereunder without just cause to hinder, delay, or obstruct the making or filing of any such document, report, or information.

### (d) Liability for trading in securities while in possession of material nonpublic information

Wherever communicating, or purchasing or selling a security while in possession of, material nonpublic information would violate, or result in liability to any purchaser or seller of the security under any provisions of this chapter, or any rule or regulation thereunder, such conduct in connection with a purchase or sale of a put, call, straddle, option, privilege or security-based swap agreement with respect to such security or with respect to a group or index of securities including such security, shall also violate and result in comparable liability to any purchaser or seller of that security under such provision, rule, or regulation.

### (e) Prosecution of persons who aid and abet violations

For purposes of any action brought by the Commission under paragraph (1) or (3) of section 78u(d) of this title, any person that knowingly or recklessly provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

### (f) Limitation on Commission authority

The authority of the Commission under this section with respect to security-based swap agreements shall be subject to the restrictions and limitations of section 78c–1(b) of this title.

(June 6, 1934, ch. 404, title I, §20, 48 Stat. 899; May 27, 1936, ch. 462, §6, 49 Stat. 1379; Pub. L. 88–467, §9, Aug. 20, 1964, 78 Stat. 579; Pub. L. 98–376, §5, Aug. 10, 1984, 98 Stat. 1265; Pub. L. 104–67, title I, §104, Dec. 22, 1995, 109 Stat. 757; Pub. L. 105–353, title III, §301(b)(12), Nov. 3, 1998, 112 Stat. 3236; Pub. L. 106–554, §1(a)(5) [title II, §205(a)(3), title III, §303(i), (j)], Dec. 21, 2000, 114 Stat. 2763, 2763A–426, 2763A–456; Pub. L. 111–203, title VII, §762(d)(6), title IX, §§929O, 929P(c), July 21, 2010, 124 Stat. 1761, 1862, 1865.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this title". See References in Text note set out under section 78a of this title.

AMENDMENTS

2010—Subsec. (a). Pub. L. 111–203, §929P(c), inserted "(including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title)" after "controlled person is liable".

Subsec. (d). Pub. L. 111–203, §762(d)(6)(A), struck out "(as defined in section 206B of the Gramm-Leach-Bliley Act)" after "security-based swap agreement".

Subsec. (e). Pub. L. 111–203, §929O, inserted "or recklessly" after "knowingly".

Subsec. (f). Pub. L. 111–203, §762(d)(6)(B), struck out "(as defined in section 206B of the Gramm-Leach-Bliley Act)" after "security-based swap agreements".

2000—Subsec. (d). Pub. L. 106–554, §1(a)(5) [title III, §303(i)], amended subsec. (d) generally. Prior to amendment, subsec. (d) read as follows: "Wherever communicating, or purchasing or selling a security while in possession of, material nonpublic information would violate, or result in liability to any purchaser or seller

# TAB E

Section 922(a), referred to in subsec. (d), means section 922(a) of Pub. L. 111–203.

CODIFICATION

Section was enacted as part of the Investor Protection and Securities Reform Act of 2010, and also as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, and not as part of the Securities Exchange Act of 1934 which comprises this chapter.

EFFECTIVE DATE

Section effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as a note under section 5301 of Title 12, Banks and Banking.

DEFINITIONS

For definitions of ''Commission'' and ''securities laws'' as used in this section, see section 5301 of Title 12, Banks and Banking.

## § 78v. Hearings by Commission

Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept.

(June 6, 1934, ch. 404, title I, § 22, 48 Stat. 901.)

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§ 1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78w. Rules, regulations, and orders; annual reports

### (a) Power to make rules and regulations; considerations; public disclosure

(1) The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title shall each have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter or for the execution of the functions vested in them by this chapter, and may for such purposes classify persons, securities, transactions, statements, applications, reports, and other matters within their respective jurisdictions, and prescribe greater, lesser, or different requirements for different classes thereof. No provision of this chapter imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the Commission, the Board of Governors of the Federal Reserve System, other agency enumerated in section 78c(a)(34) of this title, or any self-regulatory organization, notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason.

(2) The Commission and the Secretary of the Treasury, in making rules and regulations pursuant to any provisions of this chapter, shall consider among other matters the impact any such rule or regulation would have on competition. The Commission and the Secretary of the Treasury shall not adopt any such rule or regulation which would impose a burden on competition not necessary or appropriate in furtherance of the purposes of this chapter. The Commission and the Secretary of the Treasury shall include in the statement of basis and purpose incorporated in any rule or regulation adopted under this chapter, the reasons for the Commission's or the Secretary's determination that any burden on competition imposed by such rule or regulation is necessary or appropriate in furtherance of the purposes of this chapter.

(3) The Commission and the Secretary, in making rules and regulations pursuant to any provision of this chapter, considering any application for registration in accordance with section 78s(a) of this title, or reviewing any proposed rule change of a self-regulatory organization in accordance with section 78s(b) of this title, shall keep in a public file and make available for copying all written statements filed with the Commission and the Secretary and all written communications between the Commission or the Secretary and any person relating to the proposed rule, regulation, application, or proposed rule change: *Provided, however*, That the Commission and the Secretary shall not be required to keep in a public file or make available for copying any such statement or communication which it may withhold from the public in accordance with the provisions of section 552 of title 5.

### (b) Annual report to Congress

(1) The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title shall each make an annual report to the Congress on its work for the preceding year, and shall include in each such report whatever information, data, and recommendations for further legislation it considers advisable with regard to matters within its respective jurisdiction under this chapter.

(2) The appropriate regulatory agency for a self-regulatory organization shall include in its annual report to the Congress for each fiscal year, a summary of its oversight activities under this chapter with respect to such self-regulatory organization, including a description of any examination conducted as part of such activities of any such organization, any material recommendation presented as part of such activities to such organization for changes in its organization or rules, and any action by such organization in response to any such recommendation.

(3) The appropriate regulatory agency for any class of municipal securities dealers shall include in its annual report to the Congress for each fiscal year a summary of its regulatory activities pursuant to this chapter with respect to such municipal securities dealers, including the nature of and reason for any sanction imposed pursuant to this chapter against any such municipal securities dealer.

(4) The Commission shall also include in its annual report to the Congress for each fiscal year—

(A) a summary of the Commission's oversight activities with respect to self-regulatory organizations for which it is not the appropriate regulatory agency, including a descrip-

tion of any examination of any such organization, any material recommendation presented to any such organization for changes in its organization or rules, and any action by any such organization in response to any such recommendations;

(B) a statement and analysis of the expenses and operations of each self-regulatory organization in connection with the performance of its responsibilities under this chapter, for which purpose data pertaining to such expenses and operations shall be made available by such organization to the Commission at its request;

(C) the steps the Commission has taken and the progress it has made toward ending the physical movement of the securities certificate in connection with the settlement of securities transactions, and its recommendations, if any, for legislation to eliminate the securities certificate;

(D) the number of requests for exemptions from provisions of this chapter received, the number granted, and the basis upon which any such exemption was granted;

(E) a summary of the Commission's regulatory activities with respect to municipal securities dealers for which it is not the appropriate regulatory agency, including the nature of, and reason for, any sanction imposed in proceedings against such municipal securities dealers;

(F) a statement of the time elapsed between the filing of reports pursuant to section 78m(f) of this title and the public availability of the information contained therein, the costs involved in the Commission's processing of such reports and tabulating such information, the manner in which the Commission uses such information, and the steps the Commission has taken and the progress it has made toward requiring such reports to be filed and such information to be made available to the public in machine language;

(G) information concerning (i) the effects its rules and regulations are having on the viability of small brokers and dealers; (ii) its attempts to reduce any unnecessary reporting burden on such brokers and dealers; and (iii) its efforts to help to assure the continued participation of small brokers and dealers in the United States securities markets;

(H) a statement detailing its administration of the Freedom of Information Act, section 552 of title 5, including a copy of the report filed pursuant to subsection (d) of such section; and

(I) the steps that have been taken and the progress that has been made in promoting the timely public dissemination and availability for analytical purposes (on a fair, reasonable, and nondiscriminatory basis) of information concerning government securities transactions and quotations, and its recommendations, if any, for legislation to assure timely dissemination of (i) information on transactions in regularly traded government securities sufficient to permit the determination of the prevailing market price for such securities, and (ii) reports of the highest published bids and lowest published offers for government securities (including the size at which

persons are willing to trade with respect to such bids and offers).

**(c) Procedure for adjudication**

The Commission, by rule, shall prescribe the procedure applicable to every case pursuant to this chapter of adjudication (as defined in section 551 of title 5) not required to be determined on the record after notice and opportunity for hearing. Such rules shall, as a minimum, provide that prompt notice shall be given of any adverse action or final disposition and that such notice and the entry of any order shall be accompanied by a statement of written reasons.

**(d) Cease-and-desist procedures**

Within 1 year after October 15, 1990, the Commission shall establish regulations providing for the expeditious conduct of hearings and rendering of decisions under section 78u-3 of this title, section 77h-1 of this title, section 80a-9(f) of this title, and section 80b-3(k) of this title.

(June 6, 1934, ch. 404, title I, §23, 48 Stat. 901; Aug. 23, 1935, ch. 614, §203(a), 49 Stat. 704; May 27, 1936, ch. 462, §8, 49 Stat. 1379; Pub. L. 88–467, §10, Aug. 20, 1964, 78 Stat. 580; Pub. L. 94–29, §18, June 4, 1975, 89 Stat. 155; Pub. L. 99–571, title I, §102(j), Oct. 28, 1986, 100 Stat. 3220; Pub. L. 100–181, title III, §§324, 325, Dec. 4, 1987, 101 Stat. 1259; Pub. L. 101–429, title II, §204, Oct. 15, 1990, 104 Stat. 940; Pub. L. 103–202, title I, §107, Dec. 17, 1993, 107 Stat. 2351; Pub. L. 109–351, title IV, §401(a)(3), Oct. 13, 2006, 120 Stat. 1973; Pub. L. 111–203, title III, §376(4), July 21, 2010, 124 Stat. 1569.)

REFERENCES IN TEXT

This chapter, referred to in subsecs. (a) to (c), was in the original "this title". See References in Text note set out under section 78a of this title.

AMENDMENTS

2010—Subsec. (b)(1). Pub. L. 111–203 struck out ", other than the Office of Thrift Supervision," before "shall each make".

2006—Subsec. (b)(1). Pub. L. 109–351 inserted "other than the Office of Thrift Supervision," before "shall each".

1993—Subsec. (b)(4)(C) to (K). Pub. L. 103–202, §107, redesignated subpars. (E) to (G) and (I) to (K) as (C) to (E) and (F) to (H), respectively, added a new subpar. (I), and struck out former subpars. (C), (D), and (H). Prior to amendment, subpars. (C), (D), and (H) read as follows:

"(C) beginning in 1975 and ending in 1980, information, data, and recommendations with respect to the development of a national system for the prompt and accurate clearance and settlement of securities transactions, including a summary of the regulatory activities, operational capabilities, financial resources, and plans of self-regulatory organizations and registered transfer agents with respect thereto;

"(D) beginning in 1975 and ending in 1980, a description of the steps taken, and an evaluation of the progress made, toward the establishment of a national market system, and recommendations for further legislation it considers advisable with respect to such system;

"(H) beginning in 1975 and ending in 1980, a description of the effect the absence of any schedule or fixed rates of commissions, allowances, discounts, or other fees to be charged by members for effecting transactions on a national securities exchange is having on the maintenance of fair and orderly markets and the development of a national market system for securities;".

1990—Subsec. (d). Pub. L. 101–429 added subsec. (d).

1987—Subsec. (a)(1). Pub. L. 100–181, §324(1), inserted "or" before "any self-regulatory organization" in last sentence.

Subsec. (a)(3). Pub. L. 100–181, §324(2), inserted "shall" after "section 78s(b) of this title,".

Subsec. (b)(4)(F). Pub. L. 100–181, §325, substituted "the" for "The".

1986—Subsec. (a)(2). Pub. L. 99–571, §102(j)(1), (2), inserted "and the Secretary of the Treasury" in three places and "or the Secretary's" in one place.

Subsec. (a)(3). Pub. L. 99–571, §102(j)(3), (4), inserted "and the Secretary" in three places and "or the Secretary" in one place.

1975—Subsec. (a). Pub. L. 94–29 designated existing provisions as par. (1), inserted references to other agencies enumerated in section 78c(a)(34) of this title, regulations appropriate to implement the provisions of this chapter for which the agencies are responsible, the classification of persons, transactions, statements, applications, and reports, the prescribing of greater, lesser, or different requirements for different classifications, and the non-liability of self-regulatory organization, and added pars. (2) and (3).

Subsec. (b). Pub. L. 94–29 designated existing provisions as par. (1), substituted "The Commission, the Board of Governors of the Federal Reserve System, and the other agencies enumerated in section 78c(a)(34) of this title, shall each make an annual report to the Congress on its work for the preceding year, and shall include in each such report whatever information, data, and recommendations for further legislation it considers advisable with regard to matters within its respective jurisdiction under this chapter" for "The Commission and the Board of Governors of the Federal Reserve System, respectively, shall include in their annual reports to Congress such information, data, and recommendation for further legislation as they may deem advisable with regard to matters within their respective jurisdictions under this chapter. The Commission shall include in its annual reports to the Congress for the fiscal years ended on June 30 of 1965, 1966, and 1967 information, data, and recommendations specifically related to the operation of the amendments to this chapter made by the Securities Acts Amendments of 1964", and added pars. (2) to (4).

Subsec. (c). Pub. L. 94–29 added subsec. (c).

1964—Subsec. (b). Pub. L. 88–467 required the Commission in its annual reports to Congress for fiscal years ending June 30, 1965, 1966, and 1967, to furnish information, data, and recommendations specifically related to the operations of the amendments to the Securities Exchange Act of 1934 made by the Securities Act Amendments of 1964.

1936—Subsec. (a). Act May 27, 1936, inserted second sentence.

### CHANGE OF NAME

Section 203(a) of act Aug. 23, 1935, substituted "Board of Governors of the Federal Reserve System" for "Federal Federal Reserve Board".

### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective on the transfer date, see section 351 of Pub. L. 111–203, set out as a note under section 906 of Title 2, The Congress.

### EFFECTIVE DATE OF 1990 AMENDMENT

Amendment by Pub. L. 101–429 effective Oct. 15, 1990, with provisions relating to civil penalties and accounting and disgorgement, see section 1(c)(1), (2) of Pub. L. 101–429, set out in a note under section 77g of this title.

### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–571 effective 270 days after Oct. 28, 1986, see section 401 of Pub. L. 99–571, set out as an Effective Date note under section 78o–5 of this title.

### EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

### EFFECTIVE DATE OF 1964 AMENDMENT

Amendment by Pub. L. 88–467 effective Aug. 20, 1964, see section 13 of Pub. L. 88–467, set out as a note under section 78c of this title.

### CONSTRUCTION OF 1993 AMENDMENT

Amendment by Pub. L. 103–202 not to be construed to govern initial issuance of any public debt obligation or to grant any authority to (or extend any authority of) the Securities and Exchange Commission, any appropriate regulatory agency, or a self-regulatory organization to prescribe any procedure, term, or condition of such initial issuance, to promulgate any rule or regulation governing such initial issuance, or to otherwise regulate in any manner such initial issuance, see section 111 of Pub. L. 103–202, set out as a note under section 78o–5 of this title.

### TERMINATION OF REPORTING REQUIREMENTS

For termination, effective May 15, 2000, of provisions of law requiring submittal to Congress of any annual, semiannual, or other regular periodic report listed in House Document No. 103–7 (in which the 2nd item on page 143, the 18th item on page 167, the 7th item on page 172, and 18th item on page 190 identify a reporting provision which, as subsequently amended, is contained in subsec. (b) of this section), see section 3003 of Pub. L. 104–66, as amended, set out as a note under section 1113 of Title 31, Money and Finance.

### TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78x. Public availability of information

### (a) "Records" defined

For purposes of section 552 of title 5 the term "records" includes all applications, statements, reports, contracts, correspondence, notices, and other documents filed with or otherwise obtained by the Commission pursuant to this chapter or otherwise.

### (b) Disclosure or personal use

It shall be unlawful for any member, officer, or employee of the Commission to disclose to any person other than a member, officer, or employee of the Commission, or to use for personal benefit, any information contained in any application, statement, report, contract, correspondence, notice, or other document filed with or otherwise obtained by the Commission (1) in contravention of the rules and regulations of the Commission under section 552 of title 5, or (2) in circumstances where the Commission has determined pursuant to such rules to accord confidential treatment to such information.

### (c) Confidential disclosures

The Commission may, in its discretion and upon a showing that such information is needed, provide all "records" (as defined in subsection (a)) and other information in its possession to such persons, both domestic and foreign, as the Commission by rule deems appropriate if the person receiving such records or information provides such assurances of confidentiality as the Commission deems appropriate.

### (d) Records obtained from foreign securities authorities

Except as provided in subsection (g), the Commission shall not be compelled to disclose

# TAB F

"(2) TREATMENT OF INFORMATION.—For purposes of section 552 of title 5, this subsection shall be considered a statute described in subsection (b)(3)(B) of such section 552. Collection of information pursuant to section 78q of this title shall be an administrative action involving an agency against specific individuals or agencies pursuant to section 3518(c)(1) of title 44."

Pub. L. 111–203, §929K(2), substituted "subsection (g)" for "subsection (f)" in par. (1).

Pub. L. 111–203, §929J(a)(3), added subsec. (e). Former subsec. (e) redesignated (f).

Subsec. (f). Pub. L. 111–203, §929K(4), added subsec. (f). Former subsec. (f) redesignated (g).

Pub. L. 111–203, §929I(a)(2), redesignated subsec. (e) as (f).

Subsec. (g). Pub. L. 111–203, §929K(3), redesignated subsec. (f) as (g).

1990—Subsec. (b). Pub. L. 101–550, §202(a)(1), struck out at end "Nothing in this subsection shall authorize the Commission to withhold information from the Congress."

Subsecs. (c) to (e). Pub. L. 101–550, §202(a)(2), added subsecs. (c) to (e).

1975—Subsec. (a). Pub. L. 94–29 substituted "For purposes of section 552 of title 5, the term 'records' includes all applications, statements, reports, contracts, correspondence, notices, and other documents filed with or otherwise obtained by the Commission pursuant to this chapter or otherwise" for "Nothing in this chapter shall be construed to require, or to authorize the Commission to require, the revealing of trade secrets or processes in any application, report, or document filed with the Commission under this chapter".

Subsecs. (b), (c). Pub. L. 94–29 redesignated subsec. (c) as (b) and substituted "application, statement, report, contract, correspondence, notice, or other document filed with or otherwise obtained by the Commission (1) in contravention of the rules and regulations of the Commission under section 552 of title 5, or (2) in circumstances where the Commission has determined pursuant to such rules to accord confidential treatment for such information. Nothing in this subsection shall authorize the Commission to withhold information from Congress" for "application, report, or document filed with the Commission which is not made available to the public pursuant to subsection (b) of this section: Provided, That the Commission may make available to the Board of Governors of the Federal Reserve System any information requested by the Board for the purpose of enabling it to perform its duties under this chapter". Former subsec. (b), providing for written objection to public disclosure of information, was struck out.

CHANGE OF NAME

Section 203(a) of act Aug. 23, 1935, substituted "Board of Governors of the Federal Reserve System" for "Federal Reserve Board".

EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78y. Court review of orders and rules

### (a) Final Commission orders; persons aggrieved; petition; record; findings; affirmance, modification, enforcement, or setting aside of orders; remand to adduce additional evidence

(1) A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated by the Commission for that purpose. Thereupon the Commission shall file in the court the record on which the order complained of is entered, as provided in section 2112 of title 28 and the Federal Rules of Appellate Procedure.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.

(4) The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.

(5) If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there was reasonable ground for failure to adduce it before the Commission, the court may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate. If the case is remanded to the Commission, it shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order.

### (b) Commission rules; persons adversely affected; petition; record; affirmance, enforcement, or setting aside of rules; findings; transfer of proceedings

(1) A person adversely affected by a rule of the Commission promulgated pursuant to section 78f, 78i(h)(2), 78k, 78k–1, 78o(c)(5) or (6), 78o–3, 78q, 78q–1, or 78s of this title may obtain review of this rule in the United States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit, by filing in such court, within sixty days after the promulgation of the rule, a written petition requesting that the rule be set aside.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated for that purpose. Thereupon, the Commission shall file in the court the rule under review and any documents referred to therein, the Commission's notice of proposed rulemaking and any documents referred to therein, all written submissions and the transcript of any oral presentations in the rulemaking, factual information

not included in the foregoing that was considered by the Commission in the promulgation of the rule or proffered by the Commission as pertinent to the rule, the report of any advisory committee received or considered by the Commission in the rulemaking, and any other materials prescribed by the court.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the materials set forth in paragraph (2) of this subsection, to affirm and enforce or to set aside the rule.

(4) The findings of the Commission as to the facts identified by the Commission as the basis, in whole or in part, of the rule, if supported by substantial evidence, are conclusive. The court shall affirm and enforce the rule unless the Commission's action in promulgating the rule is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

(5) If proceedings have been instituted under this subsection in two or more courts of appeals with respect to the same rule, the Commission shall file the materials set forth in paragraph (2) of this subsection in that court in which a proceeding was first instituted. The other courts shall thereupon transfer all such proceedings to the court in which the materials have been filed. For the convenience of the parties in the interest of justice that court may thereafter transfer all the proceedings to any other court of appeals.

**(c) Objections not urged before Commission; stay of orders and rules; transfer of enforcement or review proceedings**

(1) No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.

(2) The filing of a petition under this section does not operate as a stay of the Commission's order or rule. Until the court's jurisdiction becomes exclusive, the Commission may stay its order or rule pending judicial review if it finds that justice so requires. After the filing of a petition under this section, the court, on whatever conditions may be required and to the extent necessary to prevent irreparable injury, may issue all necessary and appropriate process to stay the order or rule or to preserve status or rights pending its review; but (notwithstanding section 705 of title 5) no such process may be issued by the court before the filing of the record or the materials set forth in subsection (b)(2) of this section unless: (A) the Commission has denied a stay or failed to grant requested relief, (B) a reasonable period has expired since the filing of an application for a stay without a decision by the Commission, or (C) there was reasonable ground for failure to apply to the Commission.

(3) When the same order or rule is the subject of one or more petitions for review filed under this section and an action for enforcement filed in a district court of the United States under section 78u(d) or (e) of this title, that court in which the petition or the action is first filed has jurisdiction with respect to the order or rule to the exclusion of any other court, and thereupon all such proceedings shall be transferred to that court; but, for the convenience of the parties in the interest of justice, that court may thereafter transfer all the proceedings to any other court of appeals or district court of the United States, whether or not a petition for review or an action for enforcement was originally filed in the transferee court. The scope of review by a district court under section 78u(d) or (e) of this title is in all cases the same as by a court of appeals under this section.

**(d) Other appropriate regulatory agencies**

(1) For purposes of the preceding subsections of this section, the term "Commission" includes the agencies enumerated in section 78c(a)(34) of this title insofar as such agencies are acting pursuant to this chapter and the Secretary of the Treasury insofar as he is acting pursuant to section 78o–5 of this title.

(2) For purposes of subsection (a)(4) of this section and section 706 of title 5, an order of the Commission pursuant to section 78s(a) of this title denying registration to a clearing agency for which the Commission is not the appropriate regulatory agency or pursuant to section 78s(b) of this title disapproving a proposed rule change by such a clearing agency shall be deemed to be an order of the appropriate regulatory agency for such clearing agency insofar as such order was entered by reason of a determination by such appropriate regulatory agency pursuant to section 78s(a)(2)(C) or 78s(b)(4)(C) of this title that such registration or proposed rule change would be inconsistent with the safeguarding of securities or funds.

(June 6, 1934, ch. 404, title I, §25, 48 Stat. 901; June 7, 1934, ch. 426, 48 Stat. 926; June 25, 1948, ch. 646, §32(a), 62 Stat. 991; May 24, 1949, ch. 139, §127, 63 Stat. 107; Pub. L. 85–791, §10, Aug. 28, 1958, 72 Stat. 945; Pub. L. 94–29, §20, June 4, 1975, 89 Stat. 158; Pub. L. 99–571, title I, §102(k), Oct. 28, 1986, 100 Stat. 3220; Pub. L. 101–432, §6(b), Oct. 16, 1990, 104 Stat. 975.)

References in Text

This chapter, referred to in subsecs. (a)(1) and (d)(1), was in the original "this title". See References in Text note set out under section 78a of this title.

The Federal Rules of Appellate Procedure, referred to in subsec. (a)(2), are set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

Amendments

1990—Subsec. (b)(1). Pub. L. 101–432 inserted "78i(h)(2)," after "section 78f,".

1986—Subsec. (d)(1). Pub. L. 99–571 inserted "and the Secretary of the Treasury insofar as he is acting pursuant to section 78o–5 of this title".

1975—Subsec. (a). Pub. L. 94–29 revised existing provisions into five numbered paragraphs.

Subsec. (b). Pub. L. 94–29 substituted provisions permitting persons adversely affected by any rule promulgated by the Commission pursuant to sections 78f, 78k, 78k–1, 78o(c)(5) or (6), 78o–3, 78q, 78q–1, or 78s of this title to obtain direct review in an appropriate Court of Appeals for provisions that commencement of proceedings under subsec. (a) shall not, unless specifically ordered

by the court, operate as a stay of the Commission's order.

Subsecs. (c), (d). Pub. L. 94–29 added subsecs. (c) and (d).

1958—Subsec. (a). Pub. L. 85–791, in second sentence, substituted "transmitted to the clerk of the court to" for "served upon", struck out "certify and" before "file in the court", struck out "a transcript of" after "file in the court", and inserted "as provided in section 2112 of title 28", and, in third sentence, substituted "petition" for "transcript", and "jurisdiction, which upon the filing of the record shall be exclusive" for "exclusive jurisdiction".

CHANGE OF NAME

Act June 25, 1948, eff. Sept. 1, 1948, as amended by act May 24, 1949, substituted "court of appeals" for "circuit court of appeals".

Act June 7, 1934, substituted "United States Court of Appeals for the District of Columbia" for "Court of Appeals for District of Columbia".

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–571 effective 270 days after Oct. 28, 1986, see section 401 of Pub. L. 99–571, set out as an Effective Date note under section 78o–5 of this title.

EFFECTIVE DATE OF 1975 AMENDMENT

Amendment by Pub. L. 94–29 effective June 4, 1975, see section 31(a) of Pub. L. 94–29, set out as a note under section 78b of this title.

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78z. Unlawful representations

No action or failure to act by the Commission or the Board of Governors of the Federal Reserve System, in the administration of this chapter shall be construed to mean that the particular authority has in any way passed upon the merits of, or given approval to, any security or any transaction or transactions therein, nor shall such action or failure to act with regard to any statement or report filed with or examined by such authority pursuant to this chapter or rules and regulations thereunder, be deemed a finding by such authority that such statement or report is true and accurate on its face or that it is not false or misleading. It shall be unlawful to make, or cause to be made, to any prospective purchaser or seller of a security any representation that any such action or failure to act by any such authority is to be so construed or has such effect.

(June 6, 1934, ch. 404, title I, §26, 48 Stat. 902; Pub. L. 105–353, title III, §301(b)(5), Nov. 3, 1998, 112 Stat. 3236.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this title". See References in Text note set out under section 78a of this title.

AMENDMENTS

1998—Pub. L. 105–353 substituted "Board of Governors of the Federal Reserve System" for "Federal Reserve Board".

TRANSFER OF FUNCTIONS

For transfer of functions of Securities and Exchange Commission, with certain exceptions, to Chairman of

such Commission, see Reorg. Plan No. 10 of 1950, §§1, 2, eff. May 24, 1950, 15 F.R. 3175, 64 Stat. 1265, set out under section 78d of this title.

## § 78aa. Jurisdiction of offenses and suits

### (a) In general

The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. In any action or proceeding instituted by the Commission under this chapter in a United States district court for any judicial district, a subpoena issued to compel the attendance of a witness or the production of documents or tangible things (or both) at a hearing or trial may be served at any place within the United States. Rule 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure shall not apply to a subpoena issued under the preceding sentence. Judgments and decrees so rendered shall be subject to review as provided in sections 1254, 1291, 1292, and 1294 of title 28. No costs shall be assessed for or against the Commission in any proceeding under this chapter brought by or against it in the Supreme Court or such other courts.

### (b) Extraterritorial jurisdiction

The district courts of the United States and the United States courts of any Territory shall have jurisdiction of an action or proceeding brought or instituted by the Commission or the United States alleging a violation of the antifraud provisions of this chapter involving—

(1) conduct within the United States that constitutes significant steps in furtherance of the violation, even if the securities transaction occurs outside the United States and involves only foreign investors; or

(2) conduct occurring outside the United States that has a foreseeable substantial effect within the United States.

(June 6, 1934, ch. 404, title I, §27, 48 Stat. 902; June 25, 1936, ch. 804, 49 Stat. 1921; June 25, 1948, ch. 646, §32(b), 62 Stat. 991; May 24, 1949, ch. 139, §127, 63 Stat. 107; Pub. L. 100–181, title III, §326, Dec. 4, 1987, 101 Stat. 1259; Pub. L. 111–203, title IX, §§929E(b), 929P(b)(2), July 21, 2010, 124 Stat. 1853, 1865.)

REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this title". See References in Text note set out under section 78a of this title.

# TAB G

(4) The prompt internal reporting of violations of the code to an appropriate person or persons identified in the code; and

(5) Accountability for adherence to the code.

(c) The registrant must:

(1) File with the Commission a copy of its code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions, as an exhibit to its annual report;

(2) Post the text of such code of ethics on its Internet website and disclose, in its annual report, its Internet address and the fact that it has posted such code of ethics on its Internet Web site; or

(3) Undertake in its annual report filed with the Commission to provide to any person without charge, upon request, a copy of such code of ethics and explain the manner in which such request may be made.

(d) If the registrant intends to satisfy the disclosure requirement under Item 5.05 of Form 8–K regarding an amendment to, or a waiver from, a provision of its code of ethics that applies to the registrant's principal executive officer, principal financial officer, principal accounting officer or controller, or persons performing similar functions and that relates to any element of the code of ethics definition enumerated in paragraph (b) of this Item by posting such information on its internet website, disclose the registrant's internet address and such intention.

*Instructions to Item 406.* 1. A registrant may have separate codes of ethics for different types of officers. Furthermore, a *code of ethics* within the meaning of paragraph (b) of this Item may be a portion of a broader document that addresses additional topics or that applies to more persons than those specified in paragraph (a). In satisfying the requirements of paragraph (c), a registrant need only file, post or provide the portions of a broader document that constitutes a *code of ethics* as defined in paragraph (b) and that apply to the persons specified in paragraph (a).

2. If a registrant elects to satisfy paragraph (c) of this Item by posting its code of ethics on its website pursuant to paragraph (c)(2), the code of ethics must remain accessible on its Web site for as long as the registrant remains subject to the requirements

of this Item and chooses to comply with this Item by posting its code on its Web site pursuant to paragraph (c)(2).

[68 FR 5127, Jan. 31, 2003, as amended at 70 FR 1594, Jan. 7, 2005; 83 FR 50211, Oct. 4, 2018]

**§ 229.407  (Item 407) Corporate governance.**

(a) *Director independence.* Identify each director and, when the disclosure called for by this paragraph is being presented in a proxy or information statement relating to the election of directors, each nominee for director, that is independent under the independence standards applicable to the registrant under paragraph (a)(1) of this Item. In addition, if such independence standards contain independence requirements for committees of the board of directors, identify each director that is a member of the compensation, nominating or audit committee that is not independent under such committee independence standards. If the registrant does not have a separately designated audit, nominating or compensation committee or committee performing similar functions, the registrant must provide the disclosure of directors that are not independent with respect to all members of the board of directors applying such committee independence standards.

(1) In determining whether or not the director or nominee for director is independent for the purposes of paragraph (a) of this Item, the registrant shall use the applicable definition of independence, as follows:

(i) If the registrant is a listed issuer whose securities are listed on a national securities exchange or in an inter-dealer quotation system which has requirements that a majority of the board of directors be independent, the registrant's definition of independence that it uses for determining if a majority of the board of directors is independent in compliance with the listing standards applicable to the registrant. When determining whether the members of a committee of the board of directors are independent, the registrant's definition of independence that it uses for determining if the members of that specific committee are independent in compliance with the

**Securities and Exchange Commission**                    **§ 229.407**

independence standards applicable for the members of the specific committee in the listing standards of the national securities exchange or inter-dealer quotation system that the registrant uses for determining if a majority of the board of directors are independent. If the registrant does not have independence standards for a committee, the independence standards for that specific committee in the listing standards of the national securities exchange or inter-dealer quotation system that the registrant uses for determining if a majority of the board of directors are independent.

(ii) If the registrant is not a listed issuer, a definition of independence of a national securities exchange or of an inter-dealer quotation system which has requirements that a majority of the board of directors be independent, and state which definition is used. Whatever such definition the registrant chooses, it must use the same definition with respect to all directors and nominees for director. When determining whether the members of a specific committee of the board of directors are independent, if the national securities exchange or national securities association whose standards are used has independence standards for the members of a specific committee, use those committee specific standards.

(iii) If the information called for by paragraph (a) of this Item is being presented in a registration statement on Form S–1 (§ 239.11 of this chapter) under the Securities Act or on a Form 10 (§ 249.210 of this chapter) under the Exchange Act where the registrant has applied for listing with a national securities exchange or in an inter-dealer quotation system that has requirements that a majority of the board of directors be independent, the definition of independence that the registrant uses for determining if a majority of the board of directors is independent, and the definition of independence that the registrant uses for determining if members of the specific committee of the board of directors are independent, that is in compliance with the independence listing standards of the national securities exchange or inter-dealer quotation system on which it

has applied for listing, or if the registrant has not adopted such definitions, the independence standards for determining if the majority of the board of directors is independent and if members of the committee of the board of directors are independent of that national securities exchange or inter-dealer quotation system.

(2) If the registrant uses its own definitions for determining whether its directors and nominees for director, and members of specific committees of the board of directors, are independent, disclose whether these definitions are available to security holders on the registrant's Web site. If so, provide the registrant's Web site address. If not, include a copy of these policies in an appendix to the registrant's proxy statement or information statement that is provided to security holders at least once every three fiscal years or if the policies have been materially amended since the beginning of the registrant's last fiscal year. If a current copy of the policies is not available to security holders on the registrant's Web site, and is not included as an appendix to the registrant's proxy statement or information statement, identify the most recent fiscal year in which the policies were so included in satisfaction of this requirement.

(3) For each director and nominee for director that is identified as independent, describe, by specific category or type, any transactions, relationships or arrangements not disclosed pursuant to Item 404(a) (§ 229.404(a)), or for investment companies, Item 22(b) of Schedule 14A (§ 240.14a–101 of this chapter), that were considered by the board of directors under the applicable independence definitions in determining that the director is independent.

*Instructions to Item 407(a).* 1. If the registrant is a listed issuer whose securities are listed on a national securities exchange or in an inter-dealer quotation system which has requirements that a majority of the board of directors be independent, and also has exemptions to those requirements (for independence of a majority of the board of directors or committee member independence) upon which the registrant relied, disclose the exemption relied upon and explain the basis for the registrant's conclusion that such exemption is applicable. The same disclosure should be provided if the registrant is not a

listed issuer and the national securities exchange or inter-dealer quotation system selected by the registrant has exemptions that are applicable to the registrant. Any national securities exchange or inter-dealer quotation system which has requirements that at least 50 percent of the members of a small business issuer's board of directors must be independent shall be considered a national securities exchange or inter-dealer quotation system which has requirements that a majority of the board of directors be independent for the purposes of the disclosure required by paragraph (a) of this Item.

2. Registrants shall provide the disclosure required by paragraph (a) of this Item for any person who served as a director during any part of the last completed fiscal year, except that no information called for by paragraph (a) of this Item need be given in a registration statement filed at a time when the registrant is not subject to the reporting requirements of section 13(a) or 15(d) of the Exchange Act (15 U.S.C. 78m(a) or 78o(d)) respecting any director who is no longer a director at the time of effectiveness of the registration statement.

3. The description of the specific categories or types of transactions, relationships or arrangements required by paragraph (a)(3) of this Item must be provided in such detail as is necessary to fully describe the nature of the transactions, relationships or arrangements.

(b) *Board meetings and committees; annual meeting attendance.* (1) State the total number of meetings of the board of directors (including regularly scheduled and special meetings) which were held during the last full fiscal year. Name each incumbent director who during the last full fiscal year attended fewer than 75 percent of the aggregate of:

(i) The total number of meetings of the board of directors (held during the period for which he has been a director); and

(ii) The total number of meetings held by all committees of the board on which he served (during the periods that he served).

(2) Describe the registrant's policy, if any, with regard to board members' attendance at annual meetings of security holders and state the number of board members who attended the prior year's annual meeting.

*Instruction to Item 407(b)(2).* In lieu of providing the information required by paragraph (b)(2) of this Item in the proxy statement, the registrant may instead provide the registrant's Web site address where such information appears.

(3) State whether or not the registrant has standing audit, nominating and compensation committees of the board of directors, or committees performing similar functions. If the registrant has such committees, however designated, identify each committee member, state the number of committee meetings held by each such committee during the last fiscal year and describe briefly the functions performed by each such committee. Such disclosure need not be provided to the extent it is duplicative of disclosure provided in accordance with paragraph (c), (d) or (e) of this Item.

(c) *Nominating committee.* (1) If the registrant does not have a standing nominating committee or committee performing similar functions, state the basis for the view of the board of directors that it is appropriate for the registrant not to have such a committee and identify each director who participates in the consideration of director nominees.

(2) Provide the following information regarding the registrant's director nomination process:

(i) State whether or not the nominating committee has a charter. If the nominating committee has a charter, provide the disclosure required by Instruction 2 to this Item regarding the nominating committee charter;

(ii) If the nominating committee has a policy with regard to the consideration of any director candidates recommended by security holders, provide a description of the material elements of that policy, which shall include, but need not be limited to, a statement as to whether the committee will consider director candidates recommended by security holders;

(iii) If the nominating committee does not have a policy with regard to the consideration of any director candidates recommended by security holders, state that fact and state the basis for the view of the board of directors that it is appropriate for the registrant not to have such a policy;

(iv) If the nominating committee will consider candidates recommended by

security holders, describe the procedures to be followed by security holders in submitting such recommendations;

(v) Describe any specific minimum qualifications that the nominating committee believes must be met by a nominating committee-recommended nominee for a position on the registrant's board of directors, and describe any specific qualities or skills that the nominating committee believes are necessary for one or more of the registrant's directors to possess;

(vi) Describe the nominating committee's process for identifying and evaluating nominees for director, including nominees recommended by security holders, and any differences in the manner in which the nominating committee evaluates nominees for director based on whether the nominee is recommended by a security holder, and whether, and if so how, the nominating committee (or the board) considers diversity in identifying nominees for director. If the nominating committee (or the board) has a policy with regard to the consideration of diversity in identifying director nominees, describe how this policy is implemented, as well as how the nominating committee (or the board) assesses the effectiveness of its policy;

(vii) With regard to each nominee approved by the nominating committee for inclusion on the registrant's proxy card (other than nominees who are executive officers or who are directors standing for re-election), state which one or more of the following categories of persons or entities recommended that nominee: Security holder, non-management director, chief executive officer, other executive officer, third-party search firm, or other specified source. With regard to each such nominee approved by a nominating committee of an investment company, state which one or more of the following additional categories of persons or entities recommended that nominee: Security holder, director, chief executive officer, other executive officer, or employee of the investment company's investment adviser, principal underwriter, or any affiliated person of the investment adviser or principal underwriter;

(viii) If the registrant pays a fee to any third party or parties to identify or evaluate or assist in identifying or evaluating potential nominees, disclose the function performed by each such third party; and

(ix) If the registrant's nominating committee received, by a date not later than the 120th calendar day before the date of the registrant's proxy statement released to security holders in connection with the previous year's annual meeting, a recommended nominee from a security holder that beneficially owned more than 5% of the registrant's voting common stock for at least one year as of the date the recommendation was made, or from a group of security holders that beneficially owned, in the aggregate, more than 5% of the registrant's voting common stock, with each of the securities used to calculate that ownership held for at least one year as of the date the recommendation was made, identify the candidate and the security holder or security holder group that recommended the candidate and disclose whether the nominating committee chose to nominate the candidate, *provided, however,* that no such identification or disclosure is required without the written consent of both the security holder or security holder group and the candidate to be so identified.

*Instructions to Item 407(c)(2)(ix).* 1. For purposes of paragraph (c)(2)(ix) of this Item, the percentage of securities held by a nominating security holder may be determined using information set forth in the registrant's most recent quarterly or annual report, and any current report subsequent thereto, filed with the Commission pursuant to the Exchange Act (or, in the case of a registrant that is an investment company registered under the Investment Company Act of 1940, the registrant's most recent report on Form N–CSR (§§ 249.331 and 274.128 of this chapter)), unless the party relying on such report knows or has reason to believe that the information contained therein is inaccurate.

2. For purposes of the registrant's obligation to provide the disclosure specified in paragraph (c)(2)(ix) of this Item, where the date of the annual meeting has been changed by more than 30 days from the date of the previous year's meeting, the obligation under that Item will arise where the registrant receives the security holder recommendation a reasonable time before the

registrant begins to print and mail its proxy materials.

3. For purposes of paragraph (c)(2)(ix) of this Item, the percentage of securities held by a recommending security holder, as well as the holding period of those securities, may be determined by the registrant if the security holder is the registered holder of the securities. If the security holder is not the registered owner of the securities, he or she can submit one of the following to the registrant to evidence the required ownership percentage and holding period:

a. A written statement from the "record" holder of the securities (usually a broker or bank) verifying that, at the time the security holder made the recommendation, he or she had held the required securities for at least one year; or

b. If the security holder has filed a Schedule 13D (§ 240.13d–101 of this chapter), Schedule 13G (§ 240.13d–102 of this chapter), Form 3 (§ 249.103 of this chapter), Form 4 (§ 249.104 of this chapter), and/or Form 5 (§ 249.105 of this chapter), or amendments to those documents or updated forms, reflecting ownership of the securities as of or before the date of the recommendation, a copy of the schedule and/or form, and any subsequent amendments reporting a change in ownership level, as well as a written statement that the security holder continuously held the securities for the one-year period as of the date of the recommendation.

4. For purposes of the registrant's obligation to provide the disclosure specified in paragraph (c)(2)(ix) of this Item, the security holder or group must have provided to the registrant, at the time of the recommendation, the written consent of all parties to be identified and, where the security holder or group members are not registered holders, proof that the security holder or group satisfied the required ownership percentage and holding period as of the date of the recommendation.

*Instruction to Item 407(c)(2).* For purposes of paragraph (c)(2) of this Item, the term *nominating committee* refers not only to nominating committees and committees performing similar functions, but also to groups of directors fulfilling the role of a nominating committee, including the entire board of directors.

(3) Describe any material changes to the procedures by which security holders may recommend nominees to the registrant's board of directors, where those changes were implemented after the registrant last provided disclosure in response to the requirements of paragraph (c)(2)(iv) of this Item, or paragraph (c)(3) of this Item.

*Instructions to Item 407(c)(3).* 1. The disclosure required in paragraph (c)(3) of this Item need only be provided in a registrant's quarterly or annual reports.

2. For purposes of paragraph (c)(3) of this Item, adoption of procedures by which security holders may recommend nominees to the registrant's board of directors, where the registrant's most recent disclosure in response to the requirements of paragraph (c)(2)(iv) of this Item, or paragraph (c)(3) of this Item, indicated that the registrant did not have in place such procedures, will constitute a material change.

(d) *Audit committee.* (1) State whether or not the audit committee has a charter. If the audit committee has a charter, provide the disclosure required by Instruction 2 to this Item regarding the audit committee charter.

(2) If a listed issuer's board of directors determines, in accordance with the listing standards applicable to the issuer, to appoint a director to the audit committee who is not independent (apart from the requirements in § 240.10A–3 of this chapter), including as a result of exceptional or limited or similar circumstances, disclose the nature of the relationship that makes that individual not independent and the reasons for the board of directors' determination.

(3)(i) The audit committee must state whether:

(A) The audit committee has reviewed and discussed the audited financial statements with management;

(B) The audit committee has discussed with the independent auditors the matters required to be discussed by the applicable requirements of the Public Company Accounting Oversight Board ("PCAOB") and the Commission;

(C) The audit committee has received the written disclosures and the letter from the independent accountant required by applicable requirements of the Public Company Accounting Oversight Board regarding the independent accountant's communications with the audit committee concerning independence, and has discussed with the independent accountant the independent accountant's independence; and

(D) Based on the review and discussions referred to in paragraphs (d)(3)(i)(A) through (d)(3)(i)(C) of this Item, the audit committee recommended to the board of directors that the audited financial statements be included in the company's annual

**Securities and Exchange Commission**                    **§ 229.407**

report on Form 10–K (17 CFR 249.310) (or, for closed-end investment companies registered under the Investment Company Act of 1940 (15 U.S.C. 80a–1 *et seq.*), the annual report to shareholders required by section 30(e) of the Investment Company Act of 1940 (15 U.S.C. 80a–29(e)) and Rule 30d–1 (17 CFR 270.30d–1) thereunder) for the last fiscal year for filing with the Commission.

(ii) The name of each member of the company's audit committee (or, in the absence of an audit committee, the board committee performing equivalent functions or the entire board of directors) must appear below the disclosure required by paragraph (d)(3)(i) of this Item.

(4)(i) If the registrant meets the following requirements, provide the disclosure in paragraph (d)(4)(ii) of this Item:

(A) The registrant is a listed issuer, as defined in §240.10A–3 of this chapter;

(B) The registrant is filing an annual report on Form 10–K (§249.310 of this chapter) or a proxy statement or information statement pursuant to the Exchange Act (15 U.S.C. 78a *et seq.*) if action is to be taken with respect to the election of directors; and

(C) The registrant is neither:

(*1*) A subsidiary of another listed issuer that is relying on the exemption in §240.10A–3(c)(2) of this chapter; nor

(*2*) Relying on any of the exemptions in §240.10A–3(c)(4) through (c)(7) of this chapter.

(ii)(A) State whether or not the registrant has a separately-designated standing audit committee established in accordance with section 3(a)(58)(A) of the Exchange Act (15 U.S.C. 78c(a)(58)(A)), or a committee performing similar functions. If the registrant has such a committee, however designated, identify each committee member. If the entire board of directors is acting as the registrant's audit committee as specified in section 3(a)(58)(B) of the Exchange Act (15 U.S.C. 78c(a)(58)(B)), so state.

(B) If applicable, provide the disclosure required by §240.10A–3(d) of this chapter regarding an exemption from the listing standards for audit committees.

(5) *Audit committee financial expert.* (i)(A) Disclose that the registrant's

board of directors has determined that the registrant either:

(*1*) Has at least one audit committee financial expert serving on its audit committee; or

(*2*) Does not have an audit committee financial expert serving on its audit committee.

(B) If the registrant provides the disclosure required by paragraph (d)(5)(i)(A)(*1*) of this Item, it must disclose the name of the audit committee financial expert and whether that person is independent, as *independence* for audit committee members is defined in the listing standards applicable to the listed issuer.

(C) If the registrant provides the disclosure required by paragraph (d)(5)(i)(A)(*2*) of this Item, it must explain why it does not have an audit committee financial expert.

*Instruction to Item 407(d)(5)(i).* If the registrant's board of directors has determined that the registrant has more than one audit committee financial expert serving on its audit committee, the registrant may, but is not required to, disclose the names of those additional persons. A registrant choosing to identify such persons must indicate whether they are independent pursuant to paragraph (d)(5)(i)(B) of this Item.

(ii) For purposes of this Item, an *audit committee financial expert* means a person who has the following attributes:

(A) An understanding of generally accepted accounting principles and financial statements;

(B) The ability to assess the general application of such principles in connection with the accounting for estimates, accruals and reserves;

(C) Experience preparing, auditing, analyzing or evaluating financial statements that present a breadth and level of complexity of accounting issues that are generally comparable to the breadth and complexity of issues that can reasonably be expected to be raised by the registrant's financial statements, or experience actively supervising one or more persons engaged in such activities;

(D) An understanding of internal control over financial reporting; and

(E) An understanding of audit committee functions.

(iii) A person shall have acquired such attributes through:

(A) Education and experience as a principal financial officer, principal accounting officer, controller, public accountant or auditor or experience in one or more positions that involve the performance of similar functions;

(B) Experience actively supervising a principal financial officer, principal accounting officer, controller, public accountant, auditor or person performing similar functions;

(C) Experience overseeing or assessing the performance of companies or public accountants with respect to the preparation, auditing or evaluation of financial statements; or

(D) Other relevant experience.

(iv) *Safe harbor.* (A) A person who is determined to be an audit committee financial expert will not be deemed an *expert* for any purpose, including without limitation for purposes of section 11 of the Securities Act (15 U.S.C. 77k), as a result of being designated or identified as an audit committee financial expert pursuant to this Item 407.

(B) The designation or identification of a person as an audit committee financial expert pursuant to this Item 407 does not impose on such person any duties, obligations or liability that are greater than the duties, obligations and liability imposed on such person as a member of the audit committee and board of directors in the absence of such designation or identification.

(C) The designation or identification of a person as an audit committee financial expert pursuant to this Item does not affect the duties, obligations or liability of any other member of the audit committee or board of directors.

*Instructions to Item 407(d)(5).* 1. The disclosure under paragraph (d)(5) of this Item is required only in a registrant's annual report. The registrant need not provide the disclosure required by paragraph (d)(5) of this Item in a proxy or information statement unless that registrant is electing to incorporate this information by reference from the proxy or information statement into its annual report pursuant to General Instruction G(3) to Form 10–K (17 CFR 249.310).

2. If a person qualifies as an audit committee financial expert by means of having held a position described in paragraph (d)(5)(iii)(D) of this Item, the registrant shall provide a brief listing of that person's relevant experience. Such disclosure may be made by reference to disclosures required under Item 401(e) (§ 229.401(e)).

3. In the case of a foreign private issuer with a two-tier board of directors, for purposes of paragraph (d)(5) of this Item, the term *board of directors* means the supervisory or non-management board. In the case of a foreign private issuer meeting the requirements of § 240.10A–3(c)(3) of this chapter, for purposes of paragraph (d)(5) of this Item, the term *board of directors* means the issuer's board of auditors (or similar body) or statutory auditors, as applicable. Also, in the case of a foreign private issuer, the term *generally accepted accounting principles* in paragraph (d)(5)(ii)(A) of this Item means the body of generally accepted accounting principles used by that issuer in its primary financial statements filed with the Commission.

4. A registrant that is an Asset-Backed Issuer (as defined in § 229.1101) is not required to disclose the information required by paragraph (d)(5) of this Item.

*Instructions to Item 407(d).* 1. The information required by paragraphs (d)(1)–(3) of this Item shall not be deemed to be "soliciting material," or to be "filed" with the Commission or subject to Regulation 14A or 14C (17 CFR 240.14a–1 through 240.14b–2 or 240.14c–1 through 240.14c–101), other than as provided in this Item, or to the liabilities of section 18 of the Exchange Act (15 U.S.C. 78r), except to the extent that the registrant specifically requests that the information be treated as soliciting material or specifically incorporates it by reference into a document filed under the Securities Act or the Exchange Act. Such information will not be deemed to be incorporated by reference into any filing under the Securities Act or the Exchange Act, except to the extent that the registrant specifically incorporates it by reference.

2. The disclosure required by paragraphs (d)(1)–(3) of this Item need only be provided one time during any fiscal year.

3. The disclosure required by paragraph (d)(3) of this Item need not be provided in any filings other than a registrant's proxy or information statement relating to an annual meeting of security holders at which directors are to be elected (or special meeting or written consents in lieu of such meeting).

(e) *Compensation committee.* (1) If the registrant does not have a standing compensation committee or committee performing similar functions, state the basis for the view of the board of directors that it is appropriate for the registrant not to have such a committee and identify each director who participates in the consideration of executive officer and director compensation.

(2) State whether or not the compensation committee has a charter. If

**Securities and Exchange Commission**                    **§ 229.407**

the compensation committee has a charter, provide the disclosure required by Instruction 2 to this Item regarding the compensation committee charter.

(3) Provide a narrative description of the registrant's processes and procedures for the consideration and determination of executive and director compensation, including:

(i)(A) The scope of authority of the compensation committee (or persons performing the equivalent functions); and

(B) The extent to which the compensation committee (or persons performing the equivalent functions) may delegate any authority described in paragraph (e)(3)(i)(A) of this Item to other persons, specifying what authority may be so delegated and to whom;

(ii) Any role of executive officers in determining or recommending the amount or form of executive and director compensation; and

(iii) Any role of compensation consultants in determining or recommending the amount or form of executive and director compensation (other than any role *limited* to consulting on any broad-based plan that does not discriminate in scope, terms, or operation, in favor of executive officers or directors of the registrant, and that is available generally to all salaried employees; or providing information that either is not customized for a particular registrant or that is customized based on parameters that are not developed by the compensation consultant, and about which the compensation consultant does not provide advice) during the registrant's last completed fiscal year, identifying such consultants, stating whether such consultants were engaged directly by the compensation committee (or persons performing the equivalent functions) or any other person, describing the nature and scope of their assignment, and the material elements of the instructions or directions given to the consultants with respect to the performance of their duties under the engagement:

(A) If such compensation consultant was engaged by the compensation committee (or persons performing the equivalent functions) to provide advice or recommendations on the amount or form of executive and director com-

pensation (other than any role *limited* to consulting on any broad-based plan that does not discriminate in scope, terms, or operation, in favor of executive officers or directors of the registrant, and that is available generally to all salaried employees; or providing information that either is not customized for a particular registrant or that is customized based on parameters that are not developed by the compensation consultant, and about which the compensation consultant does not provide advice) and the compensation consultant or its affiliates also provided additional services to the registrant or its affiliates in an amount in excess of $120,000 during the registrant's last completed fiscal year, then disclose the aggregate fees for determining or recommending the amount or form of executive and director compensation and the aggregate fees for such additional services. Disclose whether the decision to engage the compensation consultant or its affiliates for these other services was made, or recommended, by management, and whether the compensation committee or the board approved such other services of the compensation consultant or its affiliates.

(B) If the compensation committee (or persons performing the equivalent functions) has not engaged a compensation consultant, but management has engaged a compensation consultant to provide advice or recommendations on the amount or form of executive and director compensation (other than any role *limited* to consulting on any broad-based plan that does not discriminate in scope, terms, or operation, in favor of executive officers or directors of the registrant, and that is available generally to all salaried employees; or providing information that either is not customized for a particular registrant or that is customized based on parameters that are not developed by the compensation consultant, and about which the compensation consultant does not provide advice) and such compensation consultant or its affiliates has provided additional services to the registrant in an amount in excess of $120,000 during the registrant's last completed fiscal year, then disclose the

aggregate fees for determining or recommending the amount or form of executive and director compensation and the aggregate fees for any additional services provided by the compensation consultant or its affiliates.

(iv) With regard to any compensation consultant identified in response to Item 407(e)(3)(iii) whose work has raised any conflict of interest, disclose the nature of the conflict and how the conflict is being addressed.

*Instruction to Item 407(e)(3)(iv).* For purposes of this paragraph (e)(3)(iv), the factors listed in §240.10C–1(b)(4)(i) through (vi) of this chapter are among the factors that should be considered in determining whether a conflict of interest exists.

(4) Under the caption "Compensation Committee Interlocks and Insider Participation":

(i) Identify each person who served as a member of the compensation committee of the registrant's board of directors (or board committee performing equivalent functions) during the last completed fiscal year, indicating each committee member who:

(A) Was, during the fiscal year, an officer or employee of the registrant;

(B) Was formerly an officer of the registrant; or

(C) Had any relationship requiring disclosure by the registrant under any paragraph of Item 404 (§ 229.404). In this event, the disclosure required by Item 404 (§ 229.404) shall accompany such identification.

(ii) If the registrant has no compensation committee (or other board committee performing equivalent functions), the registrant shall identify each officer and employee of the registrant, and any former officer of the registrant, who, during the last completed fiscal year, participated in deliberations of the registrant's board of directors concerning executive officer compensation.

(iii) Describe any of the following relationships that existed during the last completed fiscal year:

(A) An executive officer of the registrant served as a member of the compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) of another entity, one of whose

executive officers served on the compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) of the registrant;

(B) An executive officer of the registrant served as a director of another entity, one of whose executive officers served on the compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) of the registrant; and

(C) An executive officer of the registrant served as a member of the compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) of another entity, one of whose executive officers served as a director of the registrant.

(iv) Disclosure required under paragraph (e)(4)(iii) of this Item regarding a compensation committee member or other director of the registrant who also served as an executive officer of another entity shall be accompanied by the disclosure called for by Item 404 with respect to that person.

*Instruction to Item 407(e)(4).* For purposes of paragraph (e)(4) of this Item, the term *entity* shall not include an entity exempt from tax under section 501(c)(3) of the Internal Revenue Code (26 U.S.C. 501(c)(3)).

(5) Under the caption "Compensation Committee Report:"

(i) The compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) must state whether:

(A) The compensation committee has reviewed and discussed the Compensation Discussion and Analysis required by Item 402(b) (§ 229.402(b)) with management; and

(B) Based on the review and discussions referred to in paragraph (e)(5)(i)(A) of this Item, the compensation committee recommended to the board of directors that the Compensation Discussion and Analysis be included in the registrant's annual report on Form 10–K (§ 249.310 of this chapter), proxy statement on Schedule 14A

**Securities and Exchange Commission**　　　　§ 229.407

(§240.14a–101 of this chapter) or information statement on Schedule 14C (§240.14c–101 of this chapter).

(ii) The name of each member of the registrant's compensation committee (or other board committee performing equivalent functions or, in the absence of any such committee, the entire board of directors) must appear below the disclosure required by paragraph (e)(5)(i) of this Item.

*Instructions to Item 407(e)(5).* 1. The information required by paragraph (e)(5) of this Item shall not be deemed to be "soliciting material," or to be "filed" with the Commission or subject to Regulation 14A or 14C (17 CFR 240.14a–1 through 240.14b–2 or 240.14c–1 through 240.14c–101), other than as provided in this Item, or to the liabilities of section 18 of the Exchange Act (15 U.S.C. 78r), except to the extent that the registrant specifically requests that the information be treated as soliciting material or specifically incorporates it by reference into a document filed under the Securities Act or the Exchange Act.

2. The disclosure required by paragraph (e)(5) of this Item need not be provided in any filings other than an annual report on Form 10–K (§249.310 of this chapter), a proxy statement on Schedule 14A (§240.14a–101 of this chapter) or an information statement on Schedule 14C (§240.14c–101 of this chapter). Such information will not be deemed to be incorporated by reference into any filing under the Securities Act or the Exchange Act, except to the extent that the registrant specifically incorporates it by reference. If the registrant elects to incorporate this information by reference from the proxy or information statement into its annual report on Form 10–K pursuant to General Instruction G(3) to Form 10–K, the disclosure required by paragraph (e)(5) of this Item will be deemed furnished in the annual report on Form 10–K and will not be deemed incorporated by reference into any filing under the Securities Act or the Exchange Act as a result of furnishing the disclosure in this manner.

3. The disclosure required by paragraph (e)(5) of this Item need only be provided one time during any fiscal year.

(f) *Shareholder communications.* (1) State whether or not the registrant's board of directors provides a process for security holders to send communications to the board of directors and, if the registrant does not have such a process for security holders to send communications to the board of directors, state the basis for the view of the board of directors that it is appropriate for the registrant not to have such a process.

(2) If the registrant has a process for security holders to send communications to the board of directors:

(i) Describe the manner in which security holders can send communications to the board and, if applicable, to specified individual directors; and

(ii) If all security holder communications are not sent directly to board members, describe the registrant's process for determining which communications will be relayed to board members.

*Instructions to Item 407(f).* 1. In lieu of providing the information required by paragraph (f)(2) of this Item in the proxy statement, the registrant may instead provide the registrant's Web site address where such information appears.

2. For purposes of the disclosure required by paragraph (f)(2)(ii) of this Item, a registrant's process for collecting and organizing security holder communications, as well as similar or related activities, need not be disclosed provided that the registrant's process is approved by a majority of the independent directors or, in the case of a registrant that is an investment company, a majority of the directors who are not "interested persons" of the investment company as defined in section 2(a)(19) of the Investment Company Act of 1940 (15 U.S.C. 80a–2(a)(19)).

3. For purposes of this paragraph, communications from an officer or director of the registrant will not be viewed as "security holder communications." Communications from an employee or agent of the registrant will be viewed as "security holder communications" for purposes of this paragraph only if those communications are made solely in such employee's or agent's capacity as a security holder.

4. For purposes of this paragraph, security holder proposals submitted pursuant to §240.14a–8 of this chapter, and communications made in connection with such proposals, will not be viewed as "security holder communications."

(g) *Smaller reporting companies and emerging growth companies.* (1) A registrant that qualifies as a "smaller reporting company," as defined by §229.10(f)(1), is not required to provide:

(i) The disclosure required in paragraph (d)(5) of this Item in its first annual report filed pursuant to Section 13(a) or 15(d) of the Exchange Act (15 U.S.C. 78m(a) or 78o(d)) following the effective date of its first registration

481

statement filed under the Securities Act (15 U.S.C. 77a *et seq.*) or Exchange Act (15 U.S.C. 78a *et seq.*); and

(ii) The disclosure required by paragraphs (e)(4) and (e)(5) of this Item.

(2) A registrant that qualifies as an "emerging growth company," as defined in Rule 405 of the Securities Act (§ 230.405 of this chapter) or Rule 12b–2 of the Exchange Act (§ 240.12b–2 of this chapter), is not required to provide the disclosure required by paragraph (e)(5) of this Item.

(h) *Board leadership structure and role in risk oversight.* Briefly describe the leadership structure of the registrant's board, such as whether the same person serves as both principal executive officer and chairman of the board, or whether two individuals serve in those positions, and, in the case of a registrant that is an investment company, whether the chairman of the board is an "interested person" of the registrant as defined in section 2(a)(19) of the Investment Company Act (15 U.S.C. 80a–2(a)(19)). If one person serves as both principal executive officer and chairman of the board, or if the chairman of the board of a registrant that is an investment company is an "interested person" of the registrant, disclose whether the registrant has a lead independent director and what specific role the lead independent director plays in the leadership of the board. This disclosure should indicate why the registrant has determined that its leadership structure is appropriate given the specific characteristics or circumstances of the registrant. In addition, disclose the extent of the board's role in the risk oversight of the registrant, such as how the board administers its oversight function, and the effect that this has on the board's leadership structure.

(i) *Employee, officer and director hedging.* In proxy or information statements with respect to the election of directors:

(1) Describe any practices or policies that the registrant has adopted regarding the ability of employees (including officers) or directors of the registrant, or any of their designees, to purchase financial instruments (including prepaid variable forward contracts, equity swaps, collars, and exchange funds), or

otherwise engage in transactions, that hedge or offset, or are designed to hedge or offset, any decrease in the market value of registrant equity securities—

(i) Granted to the employee or director by the registrant as part of the compensation of the employee or director; or

(ii) Held, directly or indirectly, by the employee or director.

(2) A description provided pursuant to paragraph (1) shall provide a fair and accurate summary of the practices or policies that apply, including the categories of persons covered, or disclose the practices or policies in full.

(3) A description provided pursuant to paragraph (1) shall also describe any categories of hedging transactions that are specifically permitted and any categories of such transactions specifically disallowed.

(4) If the registrant does not have any such practices or policies regarding hedging, the registrant shall disclose that fact or state that the transactions described in paragraph (1) above are generally permitted.

*Instructions to Item 407(i).*

1. For purposes of this Item 407(i), "registrant equity securities" means those equity securities as defined in section 3(a)(11) of the Exchange Act (15 U.S.C. 78c(a)(11)) and § 240.3a11–1 of this chapter) that are issued by the registrant or by any parent or subsidiary of the registrant or any subsidiary of any parent of the registrant.

2. The information required by this Item 407(i) will not be deemed to be incorporated by reference into any filing under the Securities Act or the Exchange Act, except to the extent that the registrant specifically incorporates it by reference.

*Instructions to Item 407.* 1. For purposes of this Item:

a. *Listed issuer* means a listed issuer as defined in § 240.10A–3 of this chapter;

b. *National securities exchange* means a national securities exchange registered pursuant to section 6(a) of the Exchange Act (15 U.S.C. 78f(a));

c. *Inter-dealer quotation system* means an automated inter-dealer quotation system of a national securities association registered pursuant to section 15A(a) of the Exchange Act (15 U.S.C. 78o–3(a)); and

**Securities and Exchange Commission**                    **§ 229.501**

d. *National securities association* means a national securities association registered pursuant to section 15A(a) of the Exchange Act (15 U.S.C. 78o–3(a)) that has been approved by the Commission (as that definition may be modified or supplemented).

2. With respect to paragraphs (c)(2)(i), (d)(1) and (e)(2) of this Item, disclose whether a current copy of the applicable committee charter is available to security holders on the registrant's Web site, and if so, provide the registrant's Web site address. If a current copy of the charter is not available to security holders on the registrant's Web site, include a copy of the charter in an appendix to the registrant's proxy or information statement that is provided to security holders at least once every three fiscal years, or if the charter has been materially amended since the beginning of the registrant's last fiscal year. If a current copy of the charter is not available to security holders on the registrant's Web site, and is not included as an appendix to the registrant's proxy or information statement, identify in which of the prior fiscal years the charter was so included in satisfaction of this requirement.

[71 FR 53254, Sept. 8, 2006, as amended at 73 FR 964, Jan. 4, 2008; 73 FR 57238, Oct. 2, 2008; 74 FR 68364, Dec. 23, 2009; 77 FR 38453, July 27, 2012; 84 FR 2425, Mar. 8, 2019; 84 FR 12717, Apr. 2, 2019]

## Subpart 229.500—Registration Statement and Prospectus Provisions

### § 229.501 (Item 501) Forepart of Registration Statement and Outside Front Cover Page of Prospectus.

The registrant must furnish the following information in plain English. See § 230.421(d) of Regulation C of this chapter.

(a) *Front cover page of the registration statement.* Where appropriate, include the delaying amendment legend from § 230.473 of Regulation C of this chapter.

(b) *Outside front cover page of the prospectus.* Limit the outside cover page to one page. If the following information applies to your offering, disclose it on the outside cover page of the prospectus.

(1) *Name.* The registrant's name. A foreign registrant must give the English translation of its name.

*Instruction to paragraph 501(b)(1):* If your name is the same as that of a company that is well known, include information to eliminate any possible confusion with the other company. If your name indicates a line of

business in which you are not engaged or in which you are engaged only to a limited extent, include information to eliminate any misleading inference as to your business.

(2) *Title and amount of securities.* The title and amount of securities offered. Separately state the amount of securities offered by selling security holders, if any. If the underwriter has any arrangement with the issuer, such as an over-allotment option, under which the underwriter may purchase additional shares in connection with the offering, indicate that this arrangement exists and state the amount of additional shares that the underwriter may purchase under the arrangement. Give a brief description of the securities except where the information is clear from the title of the security. For example, you are not required to describe common stock that has full voting, dividend and liquidation rights usually associated with common stock.

(3) *Offering price of the securities.* Where you offer securities for cash, the price to the public of the securities, the underwriter's discounts and commissions, the net proceeds you receive, and any selling shareholder's net proceeds. Show this information on both a per share or unit basis and for the total amount of the offering. If you make the offering on a minimum/maximum basis, show this information based on the total minimum and total maximum amount of the offering. You may present the information in a table, term sheet format, or other clear presentation. You may present the information in any format that fits the design of the cover page so long as the information can be easily read and is not misleading:

*Instructions to paragraph 501(b)(3):* 1. If a preliminary prospectus is circulated and you are not subject to the reporting requirements of Section 13(a) or 15(d) of the Exchange Act, provide, as applicable:

(A) A bona fide estimate of the range of the maximum offering price and the maximum number of securities offered; or

(B) A bona fide estimate of the principal amount of the debt securities offered.

2. If it is impracticable to state the price to the public, explain the method by which the price is to be determined. Instead of explaining the method on the outside front cover page of the prospectus, you may state that the offering price will be determined by

483

# TAB H

drawn, shall be deemed made with reference to the application as amended. (Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78l)

### § 240.12d1–6  Withdrawal of certification.

An exchange may, by notice to the Commission, withdraw its certification prior to the time that the registration to which it relates first becomes effective pursuant to § 240.12d1–1.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78l)

SUSPENSION OF TRADING, WITHDRAWAL, AND STRIKING FROM LISTING AND REGISTRATION

### § 240.12d2–1  Suspension of trading.

(a) A national securities exchange may suspend from trading a security listed and registered thereon in accordance with its rules.   Such exchange shall promptly notify the Commission of any such suspension, the effective date thereof, and the reasons therefor.

(b) Any such suspension may be continued until such time as it shall appear to the Commission that such suspension is designed to evade the provisions of section 12(d) and the rules and regulations thereunder relating to the withdrawal and striking of a security from listing and registration.   During the continuance of such suspension the exchange shall notify the Commission promptly of any change in the reasons for the suspension.   Upon the restoration to trading of any security suspended under this rule, the exchange shall notify the Commission promptly of the effective date thereof.

(c) Suspension of trading shall not terminate the registration of any security.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78l) [28 F.R. 1506, Feb. 16, 1963]

### § 240.12d2–2  Removal from listing and registration.

(a) A national securities exchange shall file with the Commission an application on Form 25 to strike a security from listing and registration thereon within a reasonable time after the exchange is reliably informed that any of the following conditions exist with respect to such a security:

(1) The entire class of the security has been called for redemption, maturity or retirement; appropriate notice thereof has been given; funds sufficient for

the payment of all such securities have been deposited with an agency authorized to make such payments; and such funds have been made available to security holders.

(2) The entire class of the security has been redeemed or paid at maturity or retirement.

(3) The instruments representing the securities comprising the entire class have come to evidence, by operation of law or otherwise, other securities in substitution therefor and represent no other right, except, if such be the fact, the right to receive an immediate cash payment (the right of dissenters to receive the appraised or fair value of their holdings shall not prevent the application of this provision).

(4) All rights pertaining to the entire class of the security have been extinguished: *Provided, however,* That where such an event occurs as the result of an order of a court or other governmental authority, the order shall be final, all applicable appeal periods shall have expired, and no appeals shall be pending.

EFFECTIVE DATE: Such an application shall be deemed to be granted and shall become effective at the opening of business on such date as the exchange shall specify in said application, but not less than 10 days following the date on which said application is filed with the Commission; *Provided, however,* That in the event removal is being effected under paragraph (a)(3) of this section and the exchange has admitted or intends to admit a successor security to trading under the temporary exemption provided for by § 240.12a–5, such date shall not be earlier than the date on which the successor security is removed from its exempt status.

(b)(1) A national securities exchange may strike a security from listing and registration thereon if (i) trading in such security has been terminated pursuant to a rule of such exchange requiring such termination whenever the security is admitted to trading on another exchange; and (ii) listing and registration of such security has become effective on such other exchange.

(2) A national securities exchange which has stricken a security from listing and registration under the provisions of this paragraph shall send written notice of such action to the Commission within 3 days from the date thereof.

(c) In cases not provided for in paragraphs (a) or (b) of this section, a national securities exchange may file an application to strike a security from list-

ing and registration, in accordance with its rules, on a date specified in the application, which date shall be not less than 10 days after it is filed with the Commission. The Commission will enter an order granting such application on the date specified in the application unless the Commission, by written notice to the exchange, postpones the effective date for a period of not more than 60 days thereafter: *Provided, however,* That the Commission, by written notice to the exchange on or before the effective date, may order a hearing to determine whether the application to strike the security from listing and registration has been made in accordance with the rules of the exchange, or what terms should be imposed by the Commission for the protection of investors.

(d) The issuer of a security listed and registered on a national securities exchange may file an application to withdraw such security from listing and registration on such exchange in accordance with the rules of such exchange. Notice of the filing of such an application shall be published by the Commission in the FEDERAL REGISTER, and such notice shall provide that any interested person may, on or before a date specified, submit to the Commission in writing, all facts bearing upon whether the application to withdraw the security from listing and registration has been made in accordance with the rules of the exchange and what terms should be imposed by the Commission for the protection of investors. An order disposing of the matter will be issued by the Commission on the basis of the application and any other information furnished to the Commission unless prior thereto the Commission orders a hearing on the matter.

(e) An application by an issuer or by a national securities exchange to withdraw or strike a security from listing and registration pursuant to the provisions of paragraph (c) or (d) of this section shall comply with the following requirements:

(1) The application shall be filed in triplicate, the original of which shall be dated and signed by an authorized official of the exchange, or of the issuer, as the case may be.

(2) If the applicant is the exchange it shall promptly deliver a copy of the application to the issuer and if the applicant is the issuer it shall promptly

deliver a copy of the application to the exchange.

(3) The application shall set forth a description of the security involved together with a statement of all material facts relating to the reasons for filing such application for withdrawal or striking from listing and registration.

(4) The application shall set forth the steps taken by the applicant to comply with the rules of the exchange governing the delisting of securities.

(f) If within 30 days after the publication of any rule or regulation which substantially alters or adds to the obligations, or detracts from the rights, of an issuer of a security registered pursuant to application under section 12(b) or (c), or of its officers, directors, or security holders, or of persons soliciting or giving any proxy or consent or authorization with respect to such security, the issuer shall file with the Commission a request that such registration shall expire and shall accompany such request with a written explanation of the reasons why the publication of such rule or regulation leads the issuer to make such request, such registration shall expire immediately upon receipt of such request or immediately before such rule or regulation becomes effective, whichever date is later. The absence of an express reservation, in an application for registration, of the rights herein granted shall not be deemed a waiver thereof.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78*l*) [28 F.R. 1506, Feb. 16, 1963]

### UNLISTED TRADING

§ 240.12f-1    Applications for permission to extend unlisted trading privileges.

(a) An application may be made to the Commission by any national securities exchange for the extension of unlisted trading privileges to any security pursuant to section 12(f). One copy of such application, executed by a duly authorized officer of the exchange, shall be filed and shall set forth:

(1) Name of issuer;

(2) Title of security;

(3) Information as to the public distribution of such security in the vicinity of such exchange, and the geographical area which is deemed to constitute such vicinity, stating the source of such information;

(4) Information as to the volume of public trading in such security in the vi-

# TAB I

made with reference to the application as amended.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78*l*)

### § 240.12d1–6 Withdrawal of certification.

An exchange may, by notice to the Commission, withdraw its certification prior to the time that the registration to which it relates first becomes effective pursuant to § 240.12d1–1.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78*l*)

SUSPENSION OF TRADING, WITHDRAWAL, AND STRIKING FROM LISTING AND REGISTRATION

### § 240.12d2–1 Suspension of trading.

(a) A national securities exchange may suspend from trading a security listed and registered thereon in accordance with its rules. Such exchange shall promptly notify the Commission of any such suspension, the effective date thereof, and the reasons therefor.

(b) Any such suspension may be continued until such time as it shall appear to the Commission that such suspension is designed to evade the provisions of section 12(d) and the rules and regulations thereunder relating to the withdrawal and striking of a security from listing and registration. During the continuance of such suspension the exchange shall notify the Commission promptly of any change in the reasons for the suspension. Upon the restoration to trading of any security suspended under this rule, the exchange shall notify the Commission promptly of the effective date thereof.

(c) Suspension of trading shall not terminate the registration of any security.

(Sec. 12, 48 Stat. 892, as amended; 15 U.S.C. 78*l*)

[28 FR 1506, Feb. 16, 1963]

### § 240.12d2–2 Removal from listing and registration.

PRELIMINARY NOTES: 1. The filing of the Form 25 (Sec. 249.25 of this chapter) by an issuer relates solely to the withdrawal of a class of securities from listing on a national securities exchange and/or from registration under section 12(b) of the Act (15 U.S.C. 78*l*(b)), and shall not affect its obligation to be registered under section 12(g) of the Act and/or reporting obligations under section 15(d) of the Act (15 U.S.C. 78o(d)).

2. Implementation. The rules of each national securities exchange must be designed to meet the requirements of this section and must be operative no later than April 24, 2006. Each national securities exchange must submit to the Commission a proposed rule change that complies with section 19(b) of the Act (15 U.S.C. 78s) and Rule 19b–4 (17 CFR 240.19b–4) thereunder, and this section no later than October 24, 2005.

(a) A national securities exchange must file with the Commission an application on Form 25 (17 CFR 249.25) to strike a class of securities from listing on a national securities exchange and/or registration under section 12(b) of the Act within a reasonable time after the national securities exchange is reliably informed that any of the following conditions exist with respect to such a security:

(1) The entire class of the security has been called for redemption, maturity or retirement; appropriate notice thereof has been given; funds sufficient for the payment of all such securities have been deposited with an agency authorized to make such payments; and such funds have been made available to security holders.

(2) The entire class of the security has been redeemed or paid at maturity or retirement.

(3) The instruments representing the securities comprising the entire class have come to evidence, by operation of law or otherwise, other securities in substitution therefor and represent no other right, except, if such be the fact, the right to receive an immediate cash payment (the right of dissenters to receive the appraised or fair value of their holdings shall not prevent the application of this provision).

(4) All rights pertaining to the entire class of the security have been extinguished; provided, however, that where such an event occurs as a result of an order of a court or other governmental authority, the order shall be final, all applicable appeal periods shall have expired, and no appeals shall be pending.

EFFECTIVE DATE: Such an application shall be deemed to be granted and shall become effective at the opening of business on such date as the exchange shall specify in said application, but not less than 10 days following

**Securities and Exchange Commission**    **§ 240.12d2–2**

the date on which said application is filed with the Commission; *Provided, however,* That in the event removal is being effected under paragraph (a)(3) of this section and the exchange has admitted or intends to admit a successor security to trading under the temporary exemption provided for by § 240.12a–5, such date shall not be earlier than the date on which the successor security is removed from its exempt status.

(b)(1) In cases not provided for in paragraph (a) of this section, a national securities exchange may file an application on Form 25 to strike a class of securities from listing and/or withdraw the registration of such securities, in accordance with its rules, if the rules of such exchange, at a minimum, provide for:

(i) Notice to the issuer of the exchange's decision to delist its securities;

(ii) An opportunity for appeal to the national securities exchange's board of directors, or to a committee designated by the board; and

(iii) Public notice of the national securities exchange's final determination to remove the security from listing and/or registration, by issuing a press release and posting notice on its Web site. Public notice under this paragraph shall be disseminated no fewer than 10 days before the delisting becomes effective pursuant to paragraph (d)(1) of this section, and must remain posted on its Web site until the delisting is effective.

(2) A national securities exchange must promptly deliver a copy of the application on Form 25 to the issuer.

(c)(1) The issuer of a class of securities listed on a national securities exchange and/or registered under section 12(b) of the Act may file an application on Form 25 to notify the Commission of its withdrawal of such securities from listing on such national securities exchange and its intention to withdraw the securities from registration under section 12(b) of the Act.

(2) An issuer filing Form 25 under this paragraph must satisfy the requirements in paragraph (c)(2) of this section and represent on the Form 25 that such requirements have been met:

(i) The issuer must comply with all applicable laws in effect in the state in which it is incorporated and with the national securities exchange's rules

governing an issuer's voluntary withdrawal of a class of securities from listing and/or registration.

(ii) No fewer than 10 days before the issuer files an application on Form 25 with the Commission, the issuer must provide written notice to the national securities exchange of its determination to withdraw the class of securities from listing and/or registration on such exchange. Such written notice must set forth a description of the security involved, together with a statement of all material facts relating to the reasons for withdrawal from listing and/or registration.

(iii) Contemporaneous with providing written notice to the exchange of its intent to withdraw a class of securities from listing and/or registration, the issuer must publish notice of such intention, along with its reasons for such withdrawal, via a press release and, if it has a publicly accessible Web site, posting such notice on that Web site. Any notice provided on an issuer's Web site under this paragraph shall remain available until the delisting on Form 25 has become effective pursuant to paragraph (d)(1) of this section. If the issuer has not arranged for listing and/or registration on another national securities exchange or for quotation of its security in a quotation medium (as defined in § 240.15c2–11), then the press release and posting on the Web site must contain this information.

(3) A national securities exchange, that receives, pursuant to paragraph (c)(2)(ii) of this section, written notice from an issuer that such issuer has determined to withdraw a class of securities from listing and/or registration on such exchange, must provide notice on its Web site of the issuer's intent to delist and/or withdraw from registration its securities by the next business day. Such notice must remain posted on the exchange's Web site until the delisting on Form 25 is effective pursuant to paragraph (d)(1) of this section.

(d)(1) An application on Form 25 to strike a class of securities from listing on a national securities exchange will be effective 10 days after Form 25 is filed with the Commission.

(2) An application on Form 25 to withdraw the registration of a class of securities under section 12(b) of the Act

143

# TAB J

**Securities and Exchange Commission**  §240.19b–4

brief summary of the reason for the notice and the contact information of an individual who can provide further information about the matter that is the subject of the notice.

(f)(1) The maximum fixed-dollar amount is $250 billion until the three-year anniversary of the compliance date of this section at which time the maximum fixed-dollar amount is $50 billion unless the Commission issues an order to:

(i) Maintain the maximum fixed-dollar amount at $250 billion for an additional period of time or indefinitely; or

(ii) Lower the maximum fixed-dollar amount to an amount that is less than $250 billion but greater than $50 billion.

(2) If, after considering the levels of security-based swap activity of security-based swap dealers operating under this section, the Commission determines that it may be appropriate to change the maximum fixed-dollar amount pursuant paragraph (f)(1)(i) or (ii) of this section, the Commission will publish a notice of the potential change and subsequently will issue an order regarding any such change.

[84 FR 44076, Aug. 22, 2019, as amended at 84 FR 68668, Dec. 16, 2019]

SUSPENSION AND EXPULSION OF EXCHANGE MEMBERS

**§240.19a3–1   [Reserved]**

**§240.19b–3   [Reserved]**

**§240.19b–4   Filings with respect to proposed rule changes by self-regulatory organizations.**

(a) *Definitions.* As used in this section:

(1) The term *advance notice* means a notice required to be made by a designated clearing agency pursuant to Section 806(e) of the Payment, Clearing and Settlement Supervision Act (12 U.S.C. 5465(e));

(2) The term *designated clearing agency* means a clearing agency that is registered with the Commission, and for which the Commission is the Supervisory Agency (as determined in accordance with section 803(8) of the Payment, Clearing and Settlement Supervision Act (12 U.S.C. 5462(8)), that has been designated by the Financial Stability Oversight Council pursuant to

section 804 of the Payment, Clearing and Settlement Supervision Act (12 U.S.C. 5463) as systemically important or likely to become systemically important;

(3) The term *Payment, Clearing and Settlement Supervision Act* means Title VIII of the Dodd-Frank Wall Street Reform and Consumer Protection Act (124 Stat. 1802, 1803, 1807, 1809, 1811, 1814, 1816, 1818, 1820, 1821; 12 U.S.C. 5461 *et seq.*);

(4) The term *proposed rule change* has the meaning set forth in Section 19(b)(1) of the Act (15 U.S.C. 78s(b)(1));

(5) The term *security-based swap submission* means a submission of identifying information required to be made by a clearing agency pursuant to section 3C(b)(2) of the Act (15 U.S.C. 78c–3(b)(2)) for each security-based swap, or any group, category, type or class of security-based swaps, that such clearing agency plans to accept for clearing;

(6) The term *stated policy, practice, or interpretation* means:

(i) Any material aspect of the operation of the facilities of the self-regulatory organization; or

(ii) Any statement made generally available to the membership of, to all participants in, or to persons having or seeking access (including, in the case of national securities exchanges or registered securities associations, through a member) to facilities of, the self-regulatory organization (''specified persons''), or to a group or category of specified persons, that establishes or changes any standard, limit, or guideline with respect to:

(A) The rights, obligations, or privileges of specified persons or, in the case of national securities exchanges or registered securities associations, persons associated with specified persons; or

(B) The meaning, administration, or enforcement of an existing rule.

(b)(1) Filings with respect to proposed rule changes by a self-regulatory organization, except filings with respect to proposed rules changes by self-regulatory organizations submitted pursuant to section 19(b)(7) of the Act (15 U.S.C. 78s(b)(7)), shall be made electronically on Form 19b–4 (17 CFR 249.819).

(2) For purposes of Section 19(b) of the Act and this rule, a ''business day''

747

is any day other than a Saturday, Sunday, Federal holiday, a day that the Office of Personnel Management has announced that Federal agencies in the Washington, DC area are closed to the public, a day on which the Commission is subject to a Federal government shutdown or a day on which the Commission's Washington, DC office is otherwise not open for regular business.

(c) A stated policy, practice, or interpretation of the self-regulatory organization shall be deemed to be a proposed rule change unless (1) it is reasonably and fairly implied by an existing rule of the self-regulatory organization or (2) it is concerned solely with the administration of the self-regulatory organization and is not a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule of the self-regulatory organization.

(d) Regardless of whether it is made generally available, an interpretation of an existing rule of the self-regulatory organization shall be deemed to be a proposed rule change if (1) it is approved or ratified by the governing body of the self-regulatory organization and (2) it is not reasonably and fairly implied by that rule.

(e) For the purposes of this paragraph, *new derivative securities product* means any type of option, warrant, hybrid securities product or any other security, other than a single equity option or a security futures product, whose value is based, in whole or in part, upon the performance of, or interest in, an underlying instrument.

(1) The listing and trading of a new derivative securities product by a self-regulatory organization shall not be deemed a proposed rule change, pursuant to paragraph (c)(1) of this section, if the Commission has approved, pursuant to section 19(b) of the Act (15 U.S.C. 78s(b)), the self-regulatory organization's trading rules, procedures and listing standards for the product class that would include the new derivative securities product and the self-regulatory organization has a surveillance program for the product class.

(2) Recordkeeping and reporting:

(i) Self-regulatory organizations shall retain at their principal place of business a file, available to Commission staff for inspection, of all relevant records and information pertaining to each new derivative securities product traded pursuant to this paragraph (e) for a period of not less than five years, the first two years in an easily accessible place, as prescribed in § 240.17a–1.

(ii) When relying on this paragraph (e), a self-regulatory organization shall submit Form 19b–4(e) (17 CFR 249.820) to the Commission within five business days after commencement of trading a new derivative securities product.

(f) A proposed rule change may take effect upon filing with the Commission pursuant to Section 19(b)(3)(A) of the Act, 15 U.S.C. 78s(b)(3)(A), if properly designated by the self-regulatory organization as:

(1) Constituting a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing rule;

(2) Establishing or changing a due, fee, or other charge applicable only to a member;

(3) Concerned solely with the administration of the self-regulatory organization;

(4) Effecting a change in an existing service of a registered clearing agency that either:

(i)(A) Does not adversely affect the safeguarding of securities or funds in the custody or control of the clearing agency or for which it is responsible; and

(B) Does not significantly affect the respective rights or obligations of the clearing agency or persons using the service; or

(ii)(A) Primarily affects the clearing operations of the clearing agency with respect to products that are not securities, including futures that are not security futures, swaps that are not security-based swaps or mixed swaps, and forwards that are not security forwards; and

(B) Either

(*1*) Does not significantly affect any securities clearing operations of the clearing agency or any rights or obligations of the clearing agency with respect to securities clearing or persons using such securities-clearing service, or

(*2*) Does significantly affect any securities clearing operations of the clearing agency or the rights or obligations of the clearing agency with respect to securities clearing or persons using such securities-clearing service, but is necessary to maintain fair and orderly markets for products that are not securities, including futures that are not security futures, swaps that are not security-based swaps or mixed swaps, and forwards that are not security forwards. Proposed rule changes filed pursuant to this subparagraph II must also be filed in accordance with the procedures of Section 19(b)(1) for approval pursuant to Section 19(b)(2) and the regulations thereunder within fifteen days of being filed under Section 19(b)(3)(A).

(5) Effecting a change in an existing order-entry or trading system of a self-regulatory organization that:

(i) Does not significantly affect the protection of investors or the public interest;

(ii) Does not impose any significant burden on competition; and

(iii) Does not have the effect of limiting the access to or availability of the system; or

(6) Effecting a change that:

(i) Does not significantly affect the protection of investors or the public interest;

(ii) Does not impose any significant burden on competition; and

(iii) By its terms, does not become operative for 30 days after the date of the filing, or such shorter time as the Commission may designate if consistent with the protection of investors and the public interest; provided that the self-regulatory organization has given the Commission written notice of its intent to file the proposed rule change, along with a brief description and text of the proposed rule change, at least five business days prior to the date of filing of the proposed rule change, or such shorter time as designated by the Commission.

(g) Proceedings to determine whether a proposed rule change should be disapproved will be conducted pursuant to 17 CFR 201.700 and 201.701 (Initiation of Proceedings for SRO Proposed Rule Changes and for Proposed NMS Plans and Plan Amendments).

(h) Notice of orders issued pursuant to section 19(b) of the Act will be given by prompt publication thereof, together with a statement of written reasons therefor.

(i) Self-regulatory organizations shall retain at their principal place of business a file, available to interested persons for public inspection and copying, of all filings, notices and submissions made pursuant to this section and all correspondence and other communications reduced to writing (including comment letters) to and from such self-regulatory organization concerning any such filing, notice or submission, whether such correspondence and communications are received or prepared before or after the filing, notice or submission of the proposed rule change, advance notice or security-based swap submission, as applicable.

(j) Filings by a self-regulatory organization submitted on Form 19b–4 (17 CFR 249.819) electronically shall contain an electronic signature. For the purposes of this section, the term *electronic signature* means an electronic entry in the form of a magnetic impulse or other form of computer data compilation of any letter or series of letters or characters comprising a name, executed, adopted or authorized as a signature. The signatory to an electronically submitted rule filing shall manually sign a signature page or other document, in the manner prescribed by Form 19b–4, authenticating, acknowledging or otherwise adopting his or her signature that appears in typed form within the electronic filing. Such document shall be executed before or at the time the rule filing is electronically submitted and shall be retained by the filer in accordance with § 240.17a–1.

(k) If the conditions of this section and Form 19b–4 (17 CFR 249.819) are otherwise satisfied, all filings submitted electronically on or before 5:30 p.m. Eastern Standard Time or Eastern Daylight Saving Time, whichever is currently in effect, on a business day, shall be deemed filed on that business day, and all filings submitted after 5:30 p.m. Eastern Standard Time or Eastern Daylight Saving Time, whichever is currently in effect, shall be deemed filed on the next business day.

(l) The self-regulatory organization shall post each proposed rule change, and any amendments thereto, on its Web site within two business days after the filing of the proposed rule change, and any amendments thereto, with the Commission. If a self-regulatory organization does not post a proposed rule change on its Web site on the same day that it filed the proposal with the Commission, then the self-regulatory organization shall inform the Commission of the date on which it posted such proposal on its Web site. Such proposed rule change and amendments shall be maintained on the self-regulatory organization's Web site until:

(1) In the case of a proposed rule change filed under section 19(b)(2) of the Act (15 U.S.C. 78s(b)(2)), the Commission approves or disapproves the proposed rule change or the self-regulatory organization withdraws the proposed rule change, or any amendments, or is notified that the proposed rule change is not properly filed; or

(2) In the case of a proposed rule change filed under section 19(b)(3)(A) of the Act (15 U.S.C. 78s(b)(3)(A)), or any amendment thereto, 60 days after the date of filing, unless the self-regulatory organization withdraws the proposed rule change or is notified that the proposed rule change is not properly filed; and

(3) In the case of proposed rule changes approved by the Commission pursuant to section 19(b)(2) of the Act (15 U.S.C. 78s(b)(2)) or noticed by the Commission pursuant to section 19(b)(3)(A) of the Act (15 U.S.C. 78s(b)(3)(A)), the self-regulatory organization updates its rule text as required by paragraph (m) of this section; and

(4) In the case of a proposed rule change, or any amendment thereto, that has been disapproved, withdrawn or not properly filed, the self-regulatory organization shall remove the proposed rule change, or any amendment, from its Web site within two business days of notification of disapproval, improper filing, or withdrawal by the SRO of the proposed rule change.

(m)(1) Each self-regulatory organization shall post and maintain a current and complete version of its rules on its Web site.

(2) A self-regulatory organization, other than a self-regulatory organization that is registered with the Commission under section 6(g) of the Act (15 U.S.C. 78f(g)) or pursuant to section 15A(k) of the Act (15 U.S.C. 78o–1(k)), shall update its Web site to reflect rule changes filed pursuant to section 19(b)(2) of the Act (15 U.S.C. 78s(b)(2)) within two business days after it has been notified of the Commission's approval of a proposed rule change, and to reflect rule changes filed pursuant to section 19(b)(3)(A) of the Act (15 U.S.C. 78s(b)(3)(A)) within two business days of the Commission's notice of such proposed rule change.

(3) A self-regulatory organization that is registered with the Commission under section 6(g) of the Act (15 U.S.C. 78f(g)) or pursuant to section 15A(k) of the Act (15 U.S.C. 78o–1(k)), shall update its Web site to reflect rule changes filed pursuant to section 19(b)(2) of the Act by two business days after the later of:

(A) Notification that the Commission has approved a proposed rule change; and

(B)(i) The filing of a written certification with the Commodity Futures Trading Commission under section 5c(c) of the Commodity Exchange Act (7 U.S.C. 7a–2(c));

(ii) Receipt of notice from the Commodity Futures Trading Commission that it has determined that review of the proposed rule change is not necessary; or

(iii) Receipt of notice from the Commodity Futures Trading Commission that it has approved the proposed rule change.

(4) If a rule change is not effective for a certain period, the self-regulatory organization shall clearly indicate the effective date in the relevant rule text.

(n)(1)(i) A designated clearing agency shall provide an advance notice to the Commission of any proposed change to its rules, procedures, or operations that could materially affect the nature or level of risks presented by such designated clearing agency. Except as provided in paragraph (n)(1)(ii) of this section, such advance notice shall be submitted to the Commission electronically on Form 19b–4 (referenced in 17 CFR 249.819). The Commission shall,

**Securities and Exchange Commission**                                      **§ 240.19b–4**

upon the filing of any advance notice, provide for prompt publication thereof.

(ii) Any designated clearing agency that files an advance notice with the Commission prior to December 10, 2013, shall file such advance notice in electronic format to a dedicated email address to be established by the Commission. The contents of an advance notice filed pursuant to this paragraph (n)(1)(ii) shall contain the information required to be included for advance notices in the General Instructions for Form 19b–4 (referenced in 17 CFR 249.819).

(2)(i) For purposes of this paragraph (n), the phrase *materially affect the nature or level of risks presented,* when used to qualify determinations on a change to rules, procedures, or operations at the designated clearing agency, means matters as to which there is a reasonable possibility that the change could affect the performance of essential clearing and settlement functions or the overall nature or level of risk presented by the designated clearing agency.

(ii) Changes to rules, procedures, or operations that could materially affect the nature or level of risks presented by a designated clearing agency may include, but are not limited to, changes that materially affect participant and product eligibility, risk management, daily or intraday settlement procedures, default procedures, system safeguards, governance or financial resources of the designated clearing agency.

(iii) Changes to rules, procedures, or operations that may not materially affect the nature or level of risks presented by a designated clearing agency include, but are not limited to:

(A) Changes to an existing procedure, control, or service that do not modify the rights or obligations of the designated clearing agency or persons using its payment, clearing, or settlement services and that do not adversely affect the safeguarding of securities, collateral, or funds in the custody or control of the designated clearing agency or for which it is responsible; or

(B) Changes concerned solely with the administration of the designated clearing agency or related to the rou-

tine, daily administration, direction, and control of employees;

(3) The designated clearing agency shall post the advance notice, and any amendments thereto, on its Web site within two business days after the filing of the advance notice, and any amendments thereto, with the Commission. Such advance notice and amendments shall be maintained on the designated clearing agency's Web site until the earlier of:

(i) The date the designated clearing agency withdraws the advance notice or is notified that the advance notice is not properly filed; or

(ii) The date the designated clearing agency posts a notice of effectiveness as required by paragraph (n)(4)(ii) of this section.

(4)(i) The designated clearing agency shall post a notice on its Web site within two business days of the date that any change to its rules, procedures, or operations referred to in an advance notice has been permitted to take effect as such date is determined in accordance with Section 806(e) of the Payment, Clearing and Settlement Supervision Act (12 U.S.C. 5465).

(ii) The designated clearing agency shall post a notice on its Web site within two business days of the effectiveness of any change to its rules, procedures, or operations referred to in an advance notice.

(5) A designated clearing agency shall provide copies of all materials submitted to the Commission relating to an advance notice with the Board of Governors of the Federal Reserve System contemporaneously with such submission to the Commission.

(6) The publication and Web site posting requirements contained in paragraphs (n)(1), (n)(3), and (n)(4) of this section do not apply to any information contained in an advance notice for which a designated clearing agency has requested confidential treatment following the procedures set forth in § 240.24b–2.

(o)(1) Every clearing agency that is registered with the Commission that plans to accept a security-based swap, or any group, category, type, or class of security-based swaps for clearing shall submit to the Commission a security-based swap submission and provide