**BOYDEN GRAY & ASSOCIATES PLLC**
801 17TH STREET NW, SUITE 350
WASHINGTON, DC 20006
(202) 955-0620

July 19, 2023

Honorable Lyle W. Cayce
Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130

Re:   Rule 28(j) Letter in *Alliance for Fair Board Recruitment v. Securities and Exchange Commission*, No. 21-60626

Mr. Cayce:

In *Alpine Securities Corp. v. Financial Industry Regulatory Authority* ("*FINRA*"), No. 23-5129 (D.C. Cir. July 5, 2023) (Ex.A), the D.C. Circuit granted an emergency motion for injunction to prohibit FINRA—a self-regulatory organization ("SRO") under the Exchange Act of 1934—from trying to expel Alpine from its membership. Alpine argued that, regardless of FINRA's nominal designation as a private entity, FINRA is a state actor impermissibly exercising government authority. *See, e.g.*, Ex.A.3–7 (Walker, J., concurring). The D.C. Circuit held that Alpine "satisfied the stringent requirements for an injunction pending appeal," which includes likely success on the merits. Ex.A.1–2.

Concurring, Judge Walker explained that a "private entity can qualify as a state actor ... when the government compels the private entity to take a particular action." Ex.A.6 (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019)). And such compulsion was present because, like all SROs, (1) FINRA's "enforcement activities are controlled by the government," (2) the "Securities Exchange Act requires FINRA to enforce government standards, including statutory provisions and SEC regulations," and (3) "FINRA's own rules are generally vetted by the SEC before taking effect." *Id.*

Like FINRA, Nasdaq is an SRO. And for the same reasons, Nasdaq should be deemed a state actor for the challenged actions here, which ultimately compel Nasdaq to enforce its Rule encouraging discrimination based on race and sex, or face SEC sanctions. *See* Alliance.Br.21–23; Alliance.Reply.Br.6–11. It makes no difference that *Alpine* is about an SRO's enforcement proceedings, whereas this case is about an SRO's rules. In both cases, the SRO is mandated by the SEC to act, which is the relevant inquiry. Ex.A.6.

While Judge Walker's opinion suggests Nasdaq is a state actor for all purposes, this Court need not reach that issue because Nasdaq is certainly a state actor for purposes of reviewing the Rule. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 179 (1972) (government cannot "require[] compliance by [a private party] with provisions of its constitution and bylaws containing racially discriminatory provisions").

Respectfully,

/s/ Jonathan Berry
BOYDEN GRAY & ASSOCIATES PLLC
801 17th Street NW, Suite 350
Washington, DC 20006
202-955-0618
berry@boydengrayassociates.com

*Counsel of Record for Petitioner*
*Alliance for Fair Board Recruitment*

cc:   All Counsel

# Exhibit A

# United States Court of Appeals
## For The District of Columbia Circuit

**No. 23-5129**  **September Term, 2022**

**1:23-cv-01506-BAH**

**Filed On:** July 5, 2023

Alpine Securities Corporation,

    Appellant

Scottsdale Capital Advisors Corporation,

    Appellee

    v.

Financial Industry Regulatory Authority and
United States of America,

    Appellees

    **BEFORE:**   Henderson, Walker*, and Garcia**, Circuit Judges

## ORDER

Upon consideration of the emergency motion for injunction pending appeal, the oppositions thereto, and the reply; and the administrative stay entered on June 8, 2023, it is

**ORDERED** that the administrative stay be dissolved. It is

**FURTHER ORDERED** that the emergency motion for injunction pending appeal be granted and the Financial Industry Regulatory Authority be enjoined from continuing the expedited enforcement proceeding against Alpine Securities Corporation pending further order of the court. Appellant has satisfied the stringent requirements for an

---

\* A statement by Circuit Judge Walker, concurring in this order, is attached.
\*\* Judge Garcia would deny the emergency motion for injunction pending appeal.

## United States Court of Appeals
### For The District of Columbia Circuit

**No. 23-5129**                                                             **September Term, 2022**

injunction pending appeal.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021).

**Per Curiam**

                                                   **FOR THE COURT:**
                                                   Mark J. Langer, Clerk

                        BY:    /s/
                               Michael C. McGrail
                               Deputy Clerk

# United States Court of Appeals
#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-5129                                            September Term, 2022

WALKER, *Circuit Judge*, concurring:

*"Because the entire 'executive Power' belongs to the President alone, it can only be exercised by the President and those acting under him."*\*

     To buy and sell securities, brokers must register with a self-regulatory organization. 15 U.S.C. § 78o(a)(1), (b)(1)(B). Self-regulatory organizations are responsible for "enforc[ing] compliance" with the "provisions" of the Securities and Exchange Act, and the "rules and regulations thereunder." *Id.* § 78s(g)(1); *see also id.* § 78o-3(b)(7).

     Alpine Securities Corporation is a securities broker. Earlier this year, it found itself in trouble with its self-regulatory organization, the Financial Industry Regulatory Authority. Believing that Alpine violated a preexisting cease-and-desist order, FINRA brought an expedited enforcement action seeking to stop Alpine from selling securities. In response, Alpine filed this suit, collaterally attacking FINRA's authority to conduct its enforcement proceeding.

     All that might sound like a run-of-the-mill encounter with the government. But here's the twist: Self-regulatory organizations are not government agencies. They are private corporations responsible for regulating securities brokers. *Id.* § 78s(g)(1).

     Alpine says FINRA's enforcement action violates the Constitution because FINRA's hearing officers impermissibly wield executive power that may be exercised only by the President and officers under his supervision. And it seeks an injunction pending appeal to block its expulsion from FINRA—the so-called "corporate death penalty"—while it argues its case. App. 48.

     By granting Alpine's request, the Court preserves the status quo and allows full consideration of Alpine's constitutional argument.

I

     We will enjoin agency action pending appeal when the party seeking the injunction is likely to win on the merits, it will suffer irreparable harm without an injunction, and the equities and public interest favor our intervention. *Nken v. Holder*,

---

     \* *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 143 S. Ct. 1720, 1741 (2023) (Thomas, J., concurring) (cleaned up).

United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-5129                                September Term, 2022

556 U.S. 418, 426, 435 (2009); *see also John Doe Co. v. CFPB*, 849 F.3d 1129, 1131 (D.C. Cir. 2017).

If Alpine is likely to succeed on the merits, the other boxes are easily checked. Alpine would suffer an irreparable harm without an injunction because the ongoing FINRA enforcement proceedings would put it out of business. Plus, the resolution of claims by an unconstitutionally structured adjudicator is a "here-and-now injury" that cannot later be remedied. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023) (cleaned up).

An injunction would also be equitable and in the public interest. The public interest favors preventing the deprivation of individual rights and abuses of government power. *See Nken*, 556 U.S. at 436. If Alpine's constitutional challenge has merit, that is the case here: It will be "subject[] to an illegitimate proceeding, led by an illegitimate decisionmaker." *Axon*, 598 U.S. at 191.

The interests cutting the other way are not as strong. The public has an interest in timely enforcement against those who violate the law. *Nken*, 556 U.S. at 436. But here the only evidence that Alpine *has* violated the law is FINRA's say so. And if Alpine is correct on the merits, then FINRA is an illegitimate decisionmaker.

That leaves Alpine's likelihood of success on the merits. At this early stage, Alpine has raised a serious argument that FINRA impermissibly exercises significant executive power. So the Court is correct to grant an injunction preserving Alpine's business while it litigates its constitutional challenge. To be clear, "I do not rule out the possibility that further briefing and argument might convince me that my current view is unfounded." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissenting); *see also Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring) ("[t]o reiterate," a vote to stay is "not a decision on the merits").

II

In our system of government, the President alone is "vested" with the "executive Power." U.S. Const. art. II, § 1.

To ensure that the executive power remains with the President, the Constitution puts limits on those who exercise it on the President's behalf. Anyone who "wield[s] significant executive power" must be an Officer of the United States. *See Buckley v. Valeo*, 424 U.S. 1, 126 (1976). Those officers must generally be removable by the President or an officer subordinate to the President. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2211 (2020) (principal officers must be removeable by the President).

United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 23-5129**                                        **September Term, 2022**

And they must be appointed by an appropriate government body under the Appointments Clause. U.S. Const. art. II, § 2, cl. 2; *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018).

Applying those principles, the Supreme Court held that Administrative Law Judges *within* the SEC were Officers of the United States who must be appointed in accordance with the Appointments Clause. *Lucia*, 138 S. Ct. at 2049. The ALJs, the Court reasoned, "exercised significant authority" because they had "discretion" to exercise an "important" government function—"enforc[ing] the nation's securities laws." *Id.* at 2049, 2051, 2053 (cleaned up). The ALJs could, among other things, demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt. *Id.* at 2053.

FINRA's hearing officers are near carbon copies of those ALJs. They are tasked by statute with enforcing the nation's securities laws. 15 U.S.C § 78s(g)(1). They can "levy sanctions that carry the force of federal law." *Turbeville v. FINRA*, 874 F.3d 1268, 1270 (11th Cir. 2017) (citing 15 U.S.C. § 78o-3(b)(7)). And like *Lucia*'s ALJs, hearing officers demand testimony, rule on motions, regulate the course of a hearing, decide the admissibility of evidence, and enforce compliance with discovery orders by punishing contempt. *See* FINRA Rules 8210 (Provision of Information and Testimony), 9252 (Requests for Information), 9235 (Hearing Officer Authority), 9263 (Evidence Admissibility), 9280 (Contemptuous Conduct).[1]

True, the SEC can review FINRA's decisions "on its own motion, or upon application by any person aggrieved . . . filed within thirty days." 15 U.S.C. § 78s(d)(2). But that doesn't differentiate the hearing officers from *Lucia*'s ALJs. The SEC could review the ALJs' decisions too. Yet that "ma[d]e no difference" to whether they exercised significant executive power. *Lucia*, 138 S. Ct. at 2054. The Court emphasized that the SEC "adopts [ALJs'] credibility findings absent overwhelming evidence to the contrary." *Id.* (cleaned up). The standard of review is similar here. *See Daniel D. Manoff*, 55 S.E.C. 1155, n.6 (2002) (credibility determinations made by NASD—FINRA's predecessor—"can be overcome only when there is 'substantial evidence' for doing so") (cleaned up).

---

[1] To be sure, there are some minor differences between the FINRA hearing officers and *Lucia*'s ALJs. For example, the ALJs "administer Oaths." *Lucia*, 138 S. Ct. at 2053. In FINRA hearings, that job is left to "a court reporter or notary public." FINRA Rule 9262 (Testimony).

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 23-5129**                                                                                           **September Term, 2022**

In other words, if the ALJs in *Lucia* exercised "significant" executive power, then FINRA hearing officers probably do too. *Lucia*, 138 S. Ct. at 2051.

Does it make a difference that FINRA hearing officers are employees of a nominally private corporation? Probably not. Though FINRA is private, its enforcement activities are controlled by the government. The Securities Exchange Act *requires* FINRA to enforce government standards, including statutory provisions and SEC regulations. 15 U.S.C. § 78s(g)(1). And FINRA's own rules are generally vetted by the SEC before taking effect. *Id.* § 78s(b)(1). And the SEC can modify them at any time. *Id.* § 78s(c). And FINRA does not enjoy prosecutorial discretion—indeed, the SEC may remove FINRA's directors and officers if they do not enforce government standards. *Id.* §§ 78s(h)(4), 78o-3(b)(7). And even FINRA's code of procedure is approved by the SEC. *See Regulatory Notice 08-57*, FINRA (2008), https://www.finra.org/rules-guidance/notices/08-57 (FINRA announces SEC approval of its code of procedure, among other things).

From start to finish, FINRA hearing officers execute government laws subject to a government plan, with little to no room for private control. *Cf. Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("a private entity can qualify as a state actor . . . when the government compels the private entity to take a particular action").

Despite seeming to exercise the executive authority of the United States, FINRA hearing officers remain private employees. That presents two constitutional issues that will benefit from "full briefing, oral argument, and our usual extensive internal deliberations." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring). First, FINRA hearing officers are not appointed by a government body pursuant to the Appointments Clause. *See Lucia*, 138 S. Ct. at 2051. Second, they are shielded from removal by the SEC except for cause. 15 U.S.C. § 78s(h)(4). And the Supreme Court has assumed that the President may not remove SEC Commissioners at will. *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 487 (2010). That means that there are two layers of removal protection—one for the Commissioners and one for the hearing officers. That may well infringe on the President's "ability to execute the laws . . . by holding his subordinates accountable for their conduct." *Id.* at 496.

FINRA might prevail on those issues, but on the briefing before us, that seems unlikely. It would be odd if the Constitution *prohibits* Congress from vesting significant executive power in an unappointed and unremovable government administrator but *allows* Congress to vest such power in an unappointed and unremovable private hearing officer. *See Lucia*, 138 S. Ct. at 2051; *see also Department of Transportation*

Case: 21-60626   Document: 276   Page: 10   Date Filed: 07/19/2023
USCA Case #23-5129   Document #2006351   Filed: 07/05/2023   Page 7 of 7

United States Court of Appeals
For The District of Columbia Circuit

No. 23-5129                                    September Term, 2022

*v. Association of American Railroads*, 575 U.S. 43, 57 (2015) (Alito, J., concurring) ("There is good reason to think that those who have not sworn an oath cannot exercise significant authority of the United States.").

To so hold could create a constitutional loophole. It would suggest that Congress was free to fix the constitutional infirmity with the ALJs in *Lucia* simply by moving them outside of the Executive Branch. But that wouldn't cure the basic defect motivating the Supreme Court: Only the President and properly appointed Officers of the United States may exercise significant executive power. *See Lucia*, 138 S. Ct. at 2051 (citing *Buckley*, 424 U.S. at 126). "What cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows." *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, No. 20-1199, slip op. 39 (U.S. June 29, 2023) (cleaned up).

To be sure, Congress may authorize private organizations to work with government regulators. For example, it does not violate the Constitution to let private entities make recommendations that the government later approves. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). But the hearing officers here do not just make recommendations—they enforce securities laws and decide parties' rights. And unless the losing party appeals to the SEC or the SEC steps in unprompted, the hearing officers' decisions are final.

\*\*\*

There is a serious argument that FINRA hearing officers exercise significant executive power. And it is undisputed that they do not act under the President. That may be a constitutional problem. *See* U.S. Const. art. II, § 1, cl. 1; *id.* art. II, § 2, cl. 2.

The Court is right to grant an injunction pending appeal to let Alpine litigate its case against FINRA, without the agency first sentencing it to the corporate death penalty.