No. 21-60626

# In the United States Court of Appeals for the Fifth Circuit

ALLIANCE FOR FAIR BOARD RECRUITMENT, and
NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,
*Petitioners*,

*v.*

SECURITIES AND EXCHANGE COMMISSION,
*Respondent.*

On Petition for Review of an Order of the
United States Securities and Exchange Commission
No. 34-92590

## AMICUS BRIEF OF THE STATE OF UTAH AND 18 OTHER STATES IN SUPPORT OF NATIONAL CENTER FOR PUBLIC POLICY RESEARCH PETITION FOR REHEARING EN BANC

Drew C. Ensign
Holtzman, Vogel, Baran,
Torchinsky & Josefiak PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808

Sean D. Reyes
Attorney General
Christopher A. Bates
Deputy Solicitor General
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, UT 84114
Phone: (801) 366-0260

*Counsel for Amici Curiae*
*Additional counsel listed at end of brief*

Dated: November 28, 2023

## CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Petitioner National Center for Public Policy Research is a non-profit corporation and has no parent corporations or subsidiaries.

2. Margaret A. Little and Sheng Li of The New Civil Liberties Alliance—*Counsel* for Petitioner National Center for Public Policy Research.

3. Petitioner Alliance for Fair Board Recruitment is a non-profit membership corporation and has no parent corporations or subsidiaries.

4. Jonathan Berry, R. Trent McCotter, Michael Buschbacher, and Jordan E. Smith of Boyden Gray & Associates—*Counsel* for Petitioner Alliance for Fair Board Recruitment.

5. The Securities and Exchange Commission is a federal agency.

6. Michael A. Conley, Daniel E. Matro, Vanessa Ann Countryman, and Tracy A. Hardin of the Securities and Exchange Commission—*Counsel* for Respondent Securities and Exchange Commission.

7. Allyson N. Ho, Bradley G. Hubbard, Amir C. Tayrani, and Amalia E. Reiss of Gibson, Dunn & Crutcher LLP; John Zecca, Jeffrey S. Davis, John Yetter, and Joanne Pedone of The Nasdaq Stock Market L.L.C.; and Burt M. Rublin, Stephen J. Kastenberg, Paul Lantieri III, Peter F. Andrews, and Seth D. Berlin of Ballard Spahr LLP—*Counsel* for Intervenor Nasdaq Stock Market, LLC.

8. The States of Utah, Alabama, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Carolina, Tennessee, Texas, Virginia, and West Virginia.

9. Drew C. Ensign and Christopher A. Bates—*Counsel* for Amici States.[1]

---

[1] Because the States are permitted to file amicus briefs without consent under FRAP 29(a)(2), they are not subject to FRAP 29(a)(4)(E). The

November 28, 2023

/s/ *Christopher A. Bates*
Christopher A. Bates

---

Interests of Amici section, *infra* at 1, sets forth the identity of the Amici
States, as well as their interests and authority. *See* FRAP 29(a)(4)(E).

# TABLE OF CONTENTS

Certificate of Interested Parties ..................................................... ii

Table of Authorities ..................................................................... vi

Interests of Amici ........................................................................ 1

Argument .................................................................................... 2

    I.    SEC's Quota Rule Is Subject To—and Cannot Survive—Constitutional Scrutiny. ......................................... 5

        A.    SEC's Approval of the Quota Rule Must Comport with the Constitution. ...................................................... 5

        B.    SEC's Quota Rule Violates the Equal Protection Clause. ................................................................................ 7

    II.    The Quota Rule Undermines Traditional State Authority and Violates State Laws. ..................................... 10

Conclusion ................................................................................ 13

Certificate of Compliance ......................................................... 16

Certificate of Service ................................................................ 17

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors, Inc. v. Pena,*
515 U.S. 200 (1995) ............................................................... 7

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.,*
141 S. Ct. 2485 (2021) ........................................................ 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
458 U.S. 592 (1982) .............................................................. 1

*Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.,*
256 F.3d 1095 (11th Cir. 2001) ............................................. 8

*Bolling v. Sharpe,*
347 U.S. 497 (1954) .............................................................. 8

*Business Roundtable v. SEC,*
905 F.2d 406 (D.C. Cir. 1990) ........................................ 3, 12

*Cort v. Ash,*
422 U.S. 66 (1975) .............................................................. 11

*Crawford v. Carroll,*
529 F.3d 961 (11th Cir. 2008) ............................................. 8

*Crimmins v. Am. Stock Exch., Inc.,*
346 F. Supp. 1256 (S.D.N.Y. 1972) ..................................... 6

*Fisher v. Univ. of Texas at Austin,*
570 U.S. 297 (2013) .............................................................. 9

*Grutter v. Bollinger,*
539 U.S. 306 (2003) ................................................ 3, 8, 9, 13

*Intercontinental Indus., Inc. v. Am. Stock Exch.,*
452 F.2d 935 (5th Cir. 1971) ............................................... 5

*J.E.B. v. Alabama ex rel. T.B.,*
511 U.S. 127 (1994) .............................................................. 7

*Kinney v. Weaver,*
367 F.3d 337 (5th Cir. 2004) ............................................... 5

*League of United Latin Am. Citizens v. Perry,*
548 U.S. 399 (2006) .............................................................. 2

*Marsh v. Rosenbloom,*
499 F.3d 165 (2d Cir. 2007) ............................................... 10

*McDonald v. Santa Fe Trail Transp. Co.,*
427 U.S. 273 (1976) .............................................................. 8

*Moose Lodge No. 107 v. Irvis*,
  407 U.S. 163 (1972) ............................................................... 6
*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ............................................................... 9
*Rooms v. SEC*,
  444 F.3d 1208 (10th Cir. 2006) ............................................. 5
*Santa Fe Industries v. Green*,
  430 U.S. 462 (1977) ....................................................... 10, 11
*Sessions v. Morales*,
  137 S. Ct. 1678 (2017) .......................................................... 8
*Students for Fair Admissions, Inc. v. Harvard Coll.*,
  600 U.S. 181 (2023) .......................................................... 2, 5
*Villani v. N.Y. Stock Exch., Inc.*,
  348 F. Supp. 1185 (S.D.N.Y. 1972) ...................................... 6

## Statutes

Utah Code § 34A-5-106 ............................................................. 11

## Other Authorities

S. Rep. No. 792 (1934) ............................................................ 12

## INTERESTS OF AMICI

The States of Utah, Alabama, Arkansas, Florida, Georgia, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, South Carolina, Tennessee, Texas, Virginia, and West Virginia ("Amici States") have significant interests in this dispute. As explained below, Amici States have a unique interest because they are traditionally the primary regulators of corporate structure and organization within their jurisdictions.

In addition, Amici States have "quasi-sovereign interest[s] in the health and well-being—both physical and economic—of [their] residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). Federal courts "ha[ve] had too much experience with the political, social, and moral damage of discrimination not to recognize that a State has a substantial interest in assuring its residents that it will act to protect them from these evils." *Id.* at 609. SEC's rule directly affects those interests.

More generally, the legal issues presented in this case, and the real-world impact of their resolution, are of great importance to Amici States. Nasdaq's proposed rule and SEC's approval of it ("Quota Rule")

not only contravene the Constitution, but potentially undermine state law and policy on corporate board composition and racial and gender preferences.

## ARGUMENT

"It is a sordid business, this divvying us up by race." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring in part). For that reason, the "core purpose of the Equal Protection Clause [is] doing away with all governmentally imposed discrimination on the basis of race." *Students for Fair Admissions, Inc. v. Harvard Coll.*, 600 U.S. 181, 206 (2023) (cleaned up). And "[e]liminating racial discrimination means eliminating *all* of it." *Id.* (emphasis added).

But rather than eliminating race-based discrimination, SEC is affirmatively perpetuating it. Put simply, SEC is practicing what it is constitutionally bound to be eliminating. The agency has blessed explicit race-based requirements for listed corporations and further included overt sex-based mandates. And the types of preferences it adopted are particularly problematic: outright quotas rather than any sort of "plus factor."

2

None of this is lawful, and SEC has transgressed both constitutional and statutory limitations on its authority. Indeed, SEC's Quota Rule "amount[s] to outright racial balancing, which is patently unconstitutional." *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003).

Similarly, SEC lacks the "power to interfere in the management of corporations." *Business Roundtable v. SEC*, 905 F.2d 406, 411 (D.C. Cir. 1990) (cleaned up). SEC thus lacks statutory authority to embark on its foray into the compositions of corporate boards generally—even if it had managed to stay within constitutional bounds. That the agency's crusade culminated in adopting explicit race- and sex-based quotas should have made this case an easy one: the Quota Rule both violates the Constitution and exceeds SEC and Nasdaq's statutory authority.

The panel's opinion, however, purports to bypass all constitutional limitations by deeming SEC's governmental actions not to be state action—even though SEC's approval was the but-for cause of the race- and sex-based requirements becoming legally operative and even though violation of them results in *governmentally imposed penalties*.

The panel's opinion invents a new zone in which agency rules can operate. In the panel's view, SEC's actions somehow lack a sufficient

governmental nexus to trigger scrutiny under the First and Fourteenth Amendments, and yet somehow also possess a sufficient governmental nexus to avoid private non-delegation doctrine concerns.

No other government action of which Amici States are aware has *ever* successfully navigated between that constitutional Scylla and Charybdis. That is unsurprising. The panel's state-action-except-when-it's-not contortions would be problematic in any context. But in service of governmentally sanctioned discrimination, they are especially concerning.

The panel further gave short shrift to the States' traditional roles in regulating the management of corporations by implausibly holding that Nasdaq's specific quotas—with their *explicit numerical thresholds*—are not actually quotas at all, but rather a mere "disclosure-based framework." Op. at 31. Not so. When the federal government *compels* action based on whether *express numerical floors* for race-, sex-, and sexual orientation-based targets are met, that is a quota full stop.

"[A]t the heart of the Constitution's guarantee of equal protection lies the simple command that the Government must *treat citizens as*

*individuals*, not as simply components of a racial, religious, sexual or national class." *Fair Admissions*, <u>600 U.S. at 223</u> (emphasis added) (cleaned up). This Court should correct the panel's manifest errors by granting rehearing en banc.

## I. SEC's Quota Rule Is Subject To—and Cannot Survive—Constitutional Scrutiny.

### A. SEC's Approval of the Quota Rule Must Comport with the Constitution.

As with all federal statutes, the Securities Exchange Act and its implementing regulations cannot mandate any actions that violate the Constitution: "[G]overnmental discretion is always constrained by the Constitution." *Kinney v. Weaver*, <u>367 F.3d 337, 357</u> (5th Cir. 2004) (en banc). For Self-Regulatory Organizations ("SROs"), such as Nasdaq, their "intimate involvement . . . with the Securities and Exchange Commission brings [them] within the purview of the Fifth Amendment controls over governmental due process." *Intercontinental Indus., Inc. v. Am. Stock Exch.*, <u>452 F.2d 935, 941</u> (5th Cir. 1971); *accord Rooms v. SEC*, <u>444 F.3d 1208, 1214</u> (10th Cir. 2006) (holding that due process requirements apply to the National Association of Securities Dealers). When an SRO acts "under the self-regulatory power conferred upon it by the 1934 Act, it is engaged in governmental action, federal in

character, and the Act impose[s] upon it the requirement that it comply with" the Constitution. *Crimmins v. Am. Stock Exch., Inc.*, 346 F. Supp. 1256, 1259 (S.D.N.Y. 1972).

"It is now beyond dispute that the Fifth Amendment due process requirements as to federal action apply to" SROs because they act "under the self-regulatory power conferred upon [them] by a federal agency, the Securities & Exchange Commission." *Villani v. N.Y. Stock Exch., Inc.*, 348 F. Supp. 1185, 1188 n.1 (S.D.N.Y. 1972), *opinion modified on reargument*, 367 F. Supp. 1124 (S.D.N.Y. 1973), *and aff'd sub nom. Sloan v. N.Y. Stock Exch., Inc.*, 489 F.2d 1 (2d Cir. 1973).

More generally, governmental "regulation [that] requires compliance by [private parties] with provisions of . . . bylaws containing racially discriminatory provisions" is unconstitutional state action. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 179 (1972). And that is precisely what the Quota Rule is: it requires Nasdaq-listed companies to comply with the quota requirements of Nasdaq's listing rules, which could only become effective *after* receiving SEC's blessing in the Quota Rule.

The panel, however, did not properly grapple with whether the rule comported with the Constitution. Instead, it effectively transmuted the Quota Rule into a sort of legal chameleon—changing its colors to be precisely whatever it needs to be to evade constitutional scrutiny. According to the panel, the Quota Rule lacks a sufficient governmental nexus when the issue is state action, but has the necessary nexus when the issue is the private non-delegation doctrine. *See* Op. at 15-22.

The panel's novel creation of such a fiction warrants rehearing en banc.

## B.     SEC's Quota Rule Violates the Equal Protection Clause.

The Quota Rule imposes explicit preferences on the basis of race, ethnicity, and sex. All of these categories trigger strict or heightened scrutiny. *See*, *e.g.*, *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 227 (1995) ("[A]ll racial classifications . . . must be analyzed by a reviewing court under strict scrutiny."); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 135 (1994) (applying "heightened scrutiny" to sex-based classifications).

"Discrimination is discrimination no matter what the race, color, religion, sex, or national origin of the victim. Our Constitution does not

distinguish between races and neither do [courts]." *Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1103 (11th Cir. 2001), *overruled in part on other grounds by Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). The law is blind—the same legal standards and protections apply regardless of the race, ethnicity, or sex that is treated differently. *See*, *e.g.*, *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 287 (1976).[2]

Moreover, the type of race- and sex-based preferences here are particularly crude: outright quotas rather than any sort of holistic analysis or plus factor.

"Properly understood, a 'quota' is a program in which a certain fixed number or proportion of opportunities are reserved exclusively for certain minority groups." *Grutter*, 539 U.S. at 335 (cleaned up). "Quotas impose a fixed number or percentage which must be attained." *Id.* (cleaned up).

---

[2] The Equal Protection Clause of the Fourteenth Amendment applies against the federal government through the Fifth Amendment's Due Process Clause, and the same constitutional standards apply. *See Bolling v. Sharpe*, 347 U.S. 497, 499-00 (1954); *Sessions v. Morales*, 137 S. Ct. 1678, 1686 n.1 (2017).

The rule at issue here does just that, imposing a fixed-number requirement for women and racial minorities. (SEC also does not explain the apparent interchangeability of racial minorities and members of the LGBTQ+ community.)

Quotas are "patently unconstitutional." *Id.* at 330 (explaining that seeking "to assure . . . some specified percentage of a particular group merely because of its race or ethnic origin" is "patently unconstitutional"). "Racial balancing is not transformed from 'patently unconstitutional' to a compelling state interest simply by relabeling it 'racial diversity.'" *Fisher v. Univ. of Texas at Austin*, 570 U.S. 297, 311 (2013) (quoting *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 732 (2007)).[3]

---

[3] Nor does the penalty for non-compliance—*i.e.*, requiring corporations to announce their failure to meet the quota—render the Quota Rule constitutional. The imposition of *any* penalty for non-compliance with an unconstitutional requirement violates the Constitution, even if the penalty is not the most extreme one available (here, complete delisting). Nor is there any doubt that the Quota Rule would be enforceable by SEC. And such enforcement cannot be fairly understood as anything other than state action.

9

## II.    The Quota Rule Undermines Traditional State Authority and Violates State Laws.

Federal courts "expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance'" and to use "exceedingly clear language if it wishes to significantly alter the balance between federal and state power." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam) (internal quotation marks omitted).

"[C]orporate law is overwhelmingly the province of the states." *Marsh v. Rosenbloom*, 499 F.3d 165, 176 (2d Cir. 2007). Similarly, "the Supreme Court expressly has cautioned against displacement of state law" in this area. *Id.* at 177.

Indeed, in *Santa Fe Industries v. Green*, 430 U.S. 462 (1977), the Court expressly refused to recognize a cause of action for corporate mismanagement under the Exchange Act because it "would overlap and quite possibly interfere with state corporate law" and "federalize" an area of traditional state concern. *Id.* at 479. The Court therefore explained that "investors commit their funds to corporate directors on the understanding that, except where federal law *expressly* requires certain responsibilities of directors, state law will govern the internal

10

affairs of the corporation." *Id.* (quoting *Cort v. Ash*, <u>422 U.S. 66, 84</u> (1975)) (emphasis added).

In addition to regulating in a sphere that is the traditional province of the States, the Quota Rule stands in clear tension with—if not outright violation of—the existing civil rights laws of States. For example, the Utah Antidiscrimination Act expressly states that employers may not discriminate in employment on the basis of race, sex, or sexual orientation. Utah Code § 34A-5-106. But the Quota Rule necessarily requires corporations to classify directors based on prohibited grounds. How else would a company know if it satisfied Nasdaq's numerical requirements?

Given the irreconcilability of civil rights statutes of States and the Quota Rule, it is likely that Nasdaq and Nasdaq-listed companies will eventually argue that the Quota Rule—once blessed by this Court— preempts such state laws. And if they were to succeed in that argument, this Court will have created an even-stranger legal creature: a rule that somehow preempts State law under the Supremacy Clause and yet is simultaneously not "state action" for purposes of the First and Fourteenth Amendments.

The D.C. Circuit has previously struck down an SEC rule governing SROs that attempted to insert the Exchange Act into traditional state-law corporate governance issues. In *Business Roundtable*, the D.C. Circuit rejected a rule that would have barred national securities exchanges from listing stock of corporations that adopted certain prohibited stock voting structures. 905 F.2d at 407. The D.C. Circuit explained that the Exchange Act "did not seek to regulate the stockholders' choices" and did not give SEC or exchanges the "power to interfere in the management of corporations." *Id.* at 411 (quoting S. Rep. No. 792, at 10 (1934)).

In so doing, the *Business Roundtable* court rejected various SEC explanations that attempted to tie the rule to the Exchange Act because there was no justification for the rule that would not also justify a claim to regulate "corporate governance as a whole." *Id.* at 413. Rather, the D.C. Circuit required a strong tie between the proffered rule and the Exchange Act's fundamental purposes. *See id.*

The same principle controls here. There is simply no tie between the Quota Rule and the purposes of the Exchange Act that would justify such significant encroachment on traditional State authority. The

Quota Rule thus exceeds SEC's authority and unlawfully trespasses on federalism.

## CONCLUSION

The Quota Rule adopts explicit race- and sex-based quotas and is thus "patently unconstitutional." *Grutter*, 539 U.S. at 330. SEC's willingness to employ outright quotas, which are plainly repugnant to the Constitution, is deeply concerning. Moreover, SEC lacks statutory authority to promulgate the Quota Rule.

Because SEC has transgressed both constitutional and statutory limitations on its authority, the panel's flawed endorsement of SEC's Quota Rule warrants rehearing en banc.

Dated:  November 28, 2023

Respectfully submitted,

/s/ *Christopher A. Bates*

Drew C. Ensign
Holtzman, Vogel, Baran,
Torchinsky & Josefiak PLLC
2300 N Street NW
Suite 643
Washington, DC 20037
(202) 737-8808

Sean D. Reyes
Attorney General
Christopher A. Bates
Deputy Solicitor General
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, UT 84114
Phone: (801) 366-0260

*Counsel for Amici Curiae*

## Additional Counsel
*Counsel for Amici States*

STEVE MARSHALL
Attorney General
State of Alabama

TIM GRIFFIN
Attorney General
State of Arkansas

ASHLEY MOODY
Attorney General
State of Florida

CHRISTOPHER M. CARR
Attorney General
State of Georgia

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

JEFF LANDRY
Attorney General
State of Louisiana

LYNN FITCH
Attorney General
State of Mississippi

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW WRIGLEY
Attorney General
State of North Dakota

ALAN WILSON
Attorney General
State of South Carolina

JONATHAN SKRMETTI
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

JASON S. MIYARES
Attorney General
State of Virginia

PATRICK MORRISEY
Attorney General
State of West Virginia

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of <u>Federal Rule of Appellate Procedure 29(a)(5)</u> because it contains 2,299 words, excluding the parts exempted by Rule 32(f); and (2) the typeface and type style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the program used for the word count).

/s/ *Christopher A. Bates*

## CERTIFICATE OF SERVICE

I, Christopher A. Bates, hereby certify that I electronically filed the foregoing Amicus Brief of the State of Utah and 18 Other States in Support of National Center for Public Policy Research Petition for Rehearing En Banc with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit on November 28, 2023 by using the appellate CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

/s/ *Christopher A. Bates*