No. 21-60626

# In the United States Court of Appeals for the Fifth Circuit

ALLIANCE FOR FAIR BOARD RECRUITMENT;
NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,

*Petitioners*,

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent*.

On Petition for Review of an Order of the
Securities and Exchange Commission

### INTERVENOR THE NASDAQ STOCK MARKET LLC'S RESPONSE TO THE PETITIONS FOR REHEARING EN BANC

John Zecca
Jeffrey S. Davis
John Yetter
Joanne Pedone
THE NASDAQ STOCK MARKET LLC
805 King Farm Boulevard
Rockville, Maryland  20850

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103

Seth D. Berlin
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, D.C.  20006

Allyson N. Ho
Bradley G. Hubbard
Paulette C. Miniter
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 573-2900

Amir C. Tayrani
Amalia E. Reiss
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Counsel for Intervenor The Nasdaq Stock Market LLC*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Petitioners | Counsel for Petitioners |
|---|---|
| Alliance for Fair Board Recruitment | C. Boyden Gray<br>Jonathan Berry<br>R. Trent McCotter<br>Michael Buschbacher<br>Jordan E. Smith<br>BOYDEN GRAY & ASSOCIATES<br>801 17th Street, N.W., Suite 350<br>Washington, D.C. 20006 |
| National Center for Public Policy Research | Margaret A. Little<br>Sheng Li<br>NEW CIVIL LIBERTIES ALLIANCE<br>1225 19th Street, N.W., Suite 450<br>Washington, D.C. 20036 |
| Respondent | Counsel for Respondent |
| Securities and Exchange Commission | Michael A. Conley<br>Vanessa A. Countryman<br>Tracey A. Hardin<br>Daniel E. Matro<br>John R. Rady<br>U.S. SECURITIES & EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, D.C. 20549 |

| Intervenor | Counsel for Intervenor |
|---|---|
| The Nasdaq Stock Market LLC<br><br>Nasdaq, Inc.<br>(The Nasdaq Stock Market LLC's parent company)<br><br>Borse Dubai Limited<br>(owns more than 10 percent of Nasdaq, Inc.'s shares)<br><br>Investor AB<br>(owns more than 10 percent of Nasdaq, Inc.'s shares) | Allyson N. Ho<br>Bradley G. Hubbard<br>Paulette C. Miniter<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas  75201<br><br>Amir C. Tayrani<br>Amalia E. Reiss<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C.  20036<br><br>John Zecca<br>Jeffrey S. Davis<br>John Yetter<br>Joanne Pedone<br>THE NASDAQ STOCK MARKET LLC<br>805 King Farm Boulevard<br>Rockville, Maryland  20850<br><br>Stephen J. Kastenberg<br>Paul Lantieri III<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, Pennsylvania  19103<br><br>Seth D. Berlin<br>BALLARD SPAHR LLP<br>1909 K Street, N.W., 12th Floor<br>Washington, D.C.  20006 |

Respectfully submitted,

/s/ Allyson N. Ho
Allyson N. Ho
*Counsel of Record*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons.......................................................................i

Table of Authorities .......................................................................................iv

Introduction.....................................................................................................1

Factual and Procedural Background...............................................................3

    I.    Nasdaq is a private company that regulates its members and listed companies subject to Commission oversight..............3

    II.   Nasdaq adopts the Board Diversity Rules in response to pervasive investor demand ..........................................................4

    III. The Commission approves the rules as consistent with the Exchange Act ...................................................................................6

    IV. The panel upholds the Commission's decision ............................7

Argument.........................................................................................................9

    I.    The panel decision correctly held that Nasdaq isn't a state actor and its rules aren't attributable to the government...........9

          A.   The panel decision comports with uniform precedent holding that self-regulatory organizations like Nasdaq aren't subject to constitutional constraints..........................9

          B.   The panel decision is consistent with the Supreme Court's *Moose Lodge* decision ..............................................12

          C.   The Commission's approval of the Diversity Rules doesn't convert them into state action ................................14

    II.   The panel decision correctly held that the Commission's approval of the Board Diversity Rule is supported by substantial evidence .................................................................18

Conclusion ....................................................................................................22

Certificate of Service ...................................................................................23

Certificate of Compliance.............................................................................23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Acosta v. Hensel Phelps Constr. Co.*,
　909 F.3d 723 (5th Cir. 2018) ................................................................ 12

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
　526 U.S. 40 (1999) ................................................................ 15

*Barnes v. Lehman*,
　861 F.2d 1383 (5th Cir. 1988) ................................................................ 15

*Bernstein v. Lind-Waldock & Co.*,
　738 F.2d 179 (7th Cir. 1984) ............................................................ 3, 10

*Blum v. Yaretsky*,
　457 U.S. 991 (1982) ........................................................... 15, 17

*Burton v. Wilmington Parking Auth.*,
　365 U.S. 715 (1961) ................................................................ 12

*D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*,
　279 F.3d 155 (2d Cir. 2002) ................................................................ 10

*Desiderio v. NASD, Inc.*,
　191 F.3d 198 (2d Cir. 1999) ................................................................ 10

*First Jersey Secs., Inc. v. Bergen*,
　605 F.2d 690 (3d Cir. 1979) ................................................................ 10

*Frazier v. Bd. of Trs. of Nw. Miss. Reg'l Med. Ctr.*,
　765 F.2d 1278 (5th Cir. 1985) ................................................................ 12

*Intercontinental Indus., Inc. v. Am. Stock Exchange*,
　452 F.2d 935 (5th Cir. 1971) ................................................................ 11

*Jackson v. Metro. Edison Co.*,
　419 U.S. 345 (1974) ........................................................... 12, 17

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Jones v. SEC*,
115 F.3d 1173 (4th Cir. 1997) .......................................... 3, 10

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) .............................................. 2, 10, 16

*Miller v. Dunn*,
35 F.4th 1007 (5th Cir. 2022) ............................................ 12

*Moose Lodge No. 107 v. Irvis*,
407 U.S. 163 (1972) ............................................... 12, 13, 14

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
53 F.4th 869 (5th Cir. 2022) .............................................. 17

*Perpetual Secs., Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002) .............................................. 10

*Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381 (1940) ...................................................... 17

*United States v. Solomon*,
509 F.2d 863 (2d Cir. 1975) .......................................... 10, 11

*Vill. of Bensenville v. FAA*,
457 F.3d 52 (D.C. Cir. 2006) ............................................. 15

*W.H. Scott Constr. Co. v. City of Jackson*,
199 F.3d 206 (5th Cir. 1999) ............................................. 12

## Statutes

15 U.S.C. § 78f(b)(5) ..................................................... 19

15 U.S.C. § 78f(b)(8) ..................................................... 19

15 U.S.C. § 78s(b)(1) ...................................................... 4

## TABLE OF AUTHORITIES
(continued)

Page(s)

15 U.S.C. § 78s(b)(2)(C)(i) ............................................................... 4

15 U.S.C. § 78s(g) ........................................................................... 14

15 U.S.C. § 78s(h) .......................................................................... 14

## Regulations

69 Fed. Reg. 71,256 (Dec. 8, 2004) ................................................. 3

71 Fed. Reg. 3550 (Jan. 23, 2006) .................................................. 4

## INTRODUCTION

In a thorough 52-page opinion, the panel carefully considered—and correctly rejected—petitioners' challenges to disclosure requirements adopted by Nasdaq, a private company, to govern its private contractual relationships with companies that voluntarily decide to list on its exchange.  The panel decision is correct, consistent with longstanding precedent, and breaks no new ground.  Rehearing is unwarranted for two fundamental reasons.

**_First_**, the panel decision properly held that Nasdaq's disclosure requirements don't offend the Constitution because they aren't state action subject to its strictures in the first place.  That holding follows inexorably from precedent of the Supreme Court and this Court sharply limiting the circumstances in which private economic activity can be deemed state action.

The Commission's review and approval of Nasdaq's disclosure requirements is nowhere near enough to trigger constitutional scrutiny because, as the Supreme Court recently emphasized, "the 'being heavily regulated makes you a state actor' theory of state action is entirely circular and would significantly endanger individual liberty and private

enterprise." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1932 (2019).

Petitioners' contrary arguments would impose constitutional constraints on broad swaths of the economy, from energy companies and utilities to railroads and airlines—all of which are subject to the same type of government oversight and regulation as Nasdaq. The panel decision correctly rejected the disruptive and novel expansion of the state-action doctrine that petitioners' arguments would require.

***Second***, the panel decision correctly held that substantial evidence supports the Commission's finding that Nasdaq's disclosure requirements are consistent with the Exchange Act's objectives given "broad demand" from investors for standardized board diversity information "that would contribute to investors' investment and voting decisions." Op. 28 (quoting JA7). At the same time, the panel decision preserved the Exchange Act's limits on the "kinds of disclosure rules the SEC can approve," including the prohibition on "disclosure rules that violate other requirements of [the Act]." Op. 28. These meaningful constraints guard against petitioners' parade of horribles, all of which

lack a similar connection to investors' investment and voting decisions—
and the underlying purposes of the Exchange Act.

Because the panel decision is correct, consistent with the precedent
of the Supreme Court and this Court, and creates no conflict with the
decisions of any other court, rehearing should be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

### I.    Nasdaq is a private company that regulates its members and listed companies subject to Commission oversight.

From the Founding until the early 1930s, securities exchanges
regulated their members and listed companies without federal oversight.
*See* 69 Fed. Reg. 71,256, 71,257 (Dec. 8, 2004).  When Congress adopted
the modern securities laws in the 1930s, it preserved and built upon that
self-regulatory framework.  *Bernstein v. Lind-Waldock & Co.*, 738 F.2d
179, 186 (7th Cir. 1984).

Under the Exchange Act, private securities exchanges continue to
exercise a primary supervisory role over their members and listed
companies, subject to comprehensive Commission oversight.  *See Jones
v. SEC*, 115 F.3d 1173, 1179–82 (4th Cir. 1997).  Exchanges develop and
adopt their own rules to govern their markets.   But with minor
exceptions, those rules can't take effect until they have been reviewed

and approved by the Commission, which must approve an exchange's proposed rule if it's consistent with the Exchange Act. 15 U.S.C. § 78s(b)(1), (b)(2)(C)(i).

Companies wishing to be listed on a securities exchange are free to choose among the multiple, private exchanges that provide listing services. Nasdaq—a private, limited liability company registered with the Commission as an exchange, *see* 71 Fed. Reg. 3550 (Jan. 23, 2006)— is one of the available listing venues.

To list on Nasdaq, companies enter into voluntary contractual agreements with Nasdaq under which Nasdaq facilitates the listing and trading of their securities and the companies agree to abide by Nasdaq's rules. In lieu of listing on Nasdaq, companies are free to decide to list with a competitor exchange, publicly trade without listing, or go private.

## II. Nasdaq adopts the Board Diversity Rules in response to pervasive investor demand.

In recent years, investors and other market participants have increasingly called for greater disclosure of standardized, board-level diversity information. JA305–313. These demands were driven by a substantial body of empirical studies indicating that board diversity improves corporate governance and company performance. *See*, *e.g.*,

4

JA275–293 (reviewing empirical studies).  In response to these pervasive demands, Nasdaq developed and submitted for the Commission's approval two rules:  the Board Diversity Rule and the Board Recruiting Service Rule.

The Board Diversity Rule requires companies listed on Nasdaq to publicly disclose a standardized Board Diversity Matrix that provides aggregated information on the voluntarily self-identified gender and racial characteristics and LGBTQ+ status of their board members. JA319–328.  The rule also requires most listed companies that don't have at least two diverse board members (including at least one who self-identifies as female and one who self-identifies as a racial minority or LGBTQ+) to offer some explanation as to why not.  JA328–330.

Nasdaq doesn't evaluate the substance or merits of a company's explanation.  JA5.  Instead, Nasdaq's enforcement of the rule is limited to ensuring that listed companies disclose the voluntarily self-reported demographic statistics and either (1) have two diverse directors or (2) explain why they don't.  JA3–4.  Companies that don't have two diverse directors can provide an explanation as anodyne as:  "The Company does not meet the diversity objectives . . . because it does not believe Nasdaq's

listing rule is appropriate." JA205.  No company will be delisted—or face any other sanction—based on the composition of its board, the substance of its explanation, or board members' unwillingness to disclose their demographic information.  JA204, 224–225.

Under the Board Recruiting Service Rule, Nasdaq provides listed companies that don't meet the Board Diversity Rule's diversity objectives with an optional year of free access to an independent, third-party board recruiting service.  JA218–219.  No company is required to use the service, and Nasdaq has no role in identifying or recommending director candidates to companies that elect to use the service.  JA20–21.

## III. The Commission approves the rules as consistent with the Exchange Act.

After notice and comment, the Commission approved Nasdaq's rules as "consistent with the requirements of the [Exchange] Act."  JA2.

First, the Commission endorsed the uniform holdings of "numerous courts" that Nasdaq is a private entity, not a state actor, and that the Commission's review and approval of the proposed rules didn't convert Nasdaq's rules into state action subject to constitutional constraints. JA17 & nn.231–33.

Second, the Commission determined that Nasdaq's rules are consistent with the Exchange Act. Although the Commission was unable to draw a definitive conclusion about the impact of board diversity on company performance, JA8–10, it found that standardized board-diversity disclosures would "provide investors with information to facilitate their evaluation of companies in which they might invest"—information in which "commenters representing a broad array of investors have indicated an interest." JA2.

As a result, the Commission found that the Board Diversity Rule would "contribute to the maintenance of fair and orderly markets" and, in accordance with the Exchange Act's objectives, was "designed to promote just and equitable principles of trade, remove impediments to and perfect the mechanism of a free and open market and a national market system, and protect investors and the public interest." JA2.[1]

## IV.   The panel upholds the Commission's decision.

Petitioners sought review in this Court, contending that the Diversity Rules violate the Constitution and that the Commission's

---

[1] The Commission also approved the Board Recruiting Service Rule as consistent with the Exchange Act. JA3.

approval of the rules violated the Exchange Act and the Administrative Procedure Act.  A panel of this Court denied the petitions.

With respect to petitioners' constitutional challenges, the panel decision held, "[i]n accord with the many courts that have considered this question," that "Nasdaq is not a state actor."  Op. 8.  The panel decision further concluded that "the Rules drafted and proposed by Nasdaq, a private self-regulatory organization, are not attributable to the government and are therefore not subject to constitutional scrutiny." Op. 22.

The panel decision also held that substantial evidence supports the Commission's finding that the Board Diversity Rule is consistent with the Exchange Act's disclosure-related objectives.  The panel decision explained that "the record is full of evidence that the status quo deprives market participants of fair access to information about board composition"—which "many commenters argue . . . is important to investors[']" investment and voting decisions—and that this evidence amply supports the Commission's finding that the Board Diversity Rule is "designed . . . to remove impediments to and perfect the mechanism of

a free and open market and a national market system" consistent with the Exchange Act.  Op. 41.[2]

## ARGUMENT

## I.    The panel decision correctly held that Nasdaq isn't a state actor and its rules aren't attributable to the government.

The panel decision's rejection of petitioners' constitutional arguments reflects a straightforward application of settled precedent.  As the panel decision correctly concluded, nothing about Nasdaq's structure or its relationship with the Commission transforms this private company into a state actor or its adoption of the Diversity Rules into state action. Op. 7.

### A.    The panel decision comports with uniform precedent holding that self-regulatory organizations like Nasdaq aren't subject to constitutional constraints.

The panel decision held that Nasdaq is a private entity whose private conduct formulating listing rules isn't "fairly attributable to the government," and so isn't subject to constitutional constraints.  Op. 16–17.  That ruling comports with the uniform body of precedent holding

---

[2] The panel decision also rejected NCPPR's argument that the Commission's approval of the Board Recruiting Service Rule was arbitrary and capricious.  Op. 51–52.

that exchanges and other self-regulatory organizations aren't state actors subject to constitutional scrutiny.  *See D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*, 279 F.3d 155, 162 (2d Cir. 2002); *Desiderio v. NASD, Inc.*, 191 F.3d 198, 206–07 (2d Cir. 1999); *Jones*, 115 F.3d at 1183; *First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 698–99 (3d Cir. 1979); *United States v. Solomon*, 509 F.2d 863, 871 (2d Cir. 1975) (Friendly, J.); *see also* FINRA Panel-Stage Amicus Br. 17–23 (providing circuit-by-circuit analysis).

There's good reason why all of those courts reached the same conclusion, and why it applies equally here.  Nasdaq, like other self-regulatory organizations, isn't a state actor because it wasn't created by the government and doesn't have a board appointed (and removable) by the government.  *See Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 138–39 (2d Cir. 2002).  Nor is the fact that exchanges are "heavily regulated by a federal commission" sufficient to render them state actors.  *See Bernstein*, 738 F.2d at 186 (Chicago Mercantile Exchange not a state actor); *see also Halleck*, 139 S. Ct. at 1932 (rejecting "the 'being heavily regulated makes you a state actor' theory of state action").

Petitioners don't engage with this settled body of precedent at all. Instead, they contend that the panel decision conflicts with this Court's decision in *Intercontinental Industries, Inc. v. American Stock Exchange*, 452 F.2d 935 (5th Cir. 1971).  *See* Alliance Pet. 10–11; NCPPR Pet. 13. Not so.  There, this Court reviewed a Commission order granting the American Stock Exchange's application to delist the petitioner. *Intercontinental Indus.*, 452 F.2d at 937.  *Intercontinental Industries'* suggestion that the exchange's "intimate involvement" with the Commission "brings it within the purview of the Fifth Amendment" is dicta, as the panel decision correctly explained, because "'rather than decide' whether the exchange was a state actor," the Court "went on to reject [the] due-process arguments on the merits."  Op. 12 (quoting *Intercontinental Indus.*, 452 F.2d at 941).

Indeed, four years after *Intercontinental Industries* was decided, Judge Friendly recognized that its state-action discussion was dicta.  *See Solomon*, 509 F.2d at 871 (referring to the due process "dictum in *Intercontinental Industries*"); *see also Intercontinental Indus.*, 452 F.2d at 940–41 ("rather than decide those points here, we merely make it clear that our decision does not cast our imprimatur on these arguments").

What's more, that dicta was expressly premised on the expansive notion of state action articulated in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), which the Supreme Court has since "limit[ed]" to its facts. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358 (1974); *see also Frazier v. Bd. of Trs. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1287 (5th Cir. 1985). Because *Intercontinental Industries* is "incompatibl[e]" with intervening Supreme Court precedent, *Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022), the panel wouldn't have been bound by its due-process language even if that language had been something more than dicta. *See Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 743 (5th Cir. 2018).[3]

## B. The panel decision is consistent with the Supreme Court's *Moose Lodge* decision.

In *Moose Lodge No. 107 v. Irvis*, the Supreme Court confirmed that even a "pervasive" "regulatory scheme enforced by the [government]" isn't enough to convert a private organization's adoption or enforcement

---

[3] Nor does the panel decision conflict with *W.H. Scott Construction Co. v. City of Jackson*, 199 F.3d 206, 211 (5th Cir. 1999), *see* Alliance Pet. vi, 9, which addressed the constitutionality of a "City's minority-participation policy" and so indisputably involved state action.

of its own rules into state action.  407 U.S. 163, 176–77 (1972).  That's why, as the panel decision recognized, the Supreme Court enjoined only "government enforcement of the [private] rule."  Op. 21 (citing *Moose Lodge*, 407 U.S. at 179).  Contrary to the Alliance's contention otherwise (at 9), the panel decision didn't "fail[] to follow" *Moose Lodge*—it simply (and correctly) recognized that petitioners' *Moose Lodge* argument "misses the mark."  Op. 21.

In *Moose Lodge*, a plaintiff who was refused service by a private club because of his race sued the club and the Pennsylvania Liquor Control Board, arguing that the Board's actions in issuing the club a license made the club's discrimination state action.  407 U.S. at 164–66.  The Supreme Court held that the club's refusal to serve the plaintiff did *not* implicate the Fourteenth Amendment because "the operation of the regulatory scheme enforced by the Pennsylvania Liquor Control Board does not sufficiently implicate the State in the discriminatory guest policies of Moose Lodge to make the latter 'state action.'"  *Id.* at 177.

By contrast, the Supreme Court held that a state regulation requiring private clubs to adhere to their own by-laws *was* state action because it amounted to a state mandate to engage in discrimination.  *Id.*

at 177–79.  So the Court enjoined enforcement of that regulation but left the club's underlying policy intact.  *Id.* at 179.

If anything, *Moose Lodge* underscores the distinction between state action by a government regulator (the Commission) and private conduct by a regulated private party (Nasdaq).  *Moose Lodge* held only the action of the government regulator—embodied in the regulatory requirement that Moose Lodge enforce its own by-laws—was state action.  Here, petitioners don't challenge the Exchange Act's provisions that require Nasdaq to enforce its own rules.  *See* 15 U.S.C. § 78s(g), (h); Op. 21.

Instead, petitioners challenge the underlying privately formulated and privately adopted Diversity Rules.  Like the club's by-laws in *Moose Lodge*, Nasdaq's Diversity Rules are private conduct, not state action.  There is no conflict with *Moose Lodge*.

### C.    The Commission's approval of the Diversity Rules doesn't convert them into state action.

Petitioners argue that the Commission's regulatory approval transformed the Diversity Rules into state action, *see* Alliance Pet. 9; NCPPR Pet. 12, but as the panel decision explains, well-settled precedent from the Supreme Court and this Court forecloses that argument. Op. 19.

The Supreme Court has repeatedly underscored that "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives." *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (same). This Court's precedent is in accord, making clear that government regulation doesn't transform private conduct into state action. *See Barnes v. Lehman*, 861 F.2d 1383, 1387 (5th Cir. 1988) ("Regulations that dictate procedures, forms, or even penalties *without dictating the challenged action* do not convert private action into state action.").

Under that uniform precedent, the Commission's "yes-or-no approval" (Op. 19) of the rules that Nasdaq—a private company—developed, drafted, and adopted doesn't come close to turning those rules into state action. As the D.C. Circuit has explained—and the panel decision correctly reiterated—the "'Supreme Court has never held that the government becomes responsible for the actions of a third party due to the length or intensity of its attention to the actions of the party before approval.'" Op. 20 (quoting *Vill. of Bensenville v. FAA*, 457 F.3d 52, 65 (D.C. Cir. 2006)).

15

It's not surprising that petitioners identify no case holding otherwise. That's because, especially in today's modern administrative state, if government regulation could convert a regulated entity into a state actor, then government's reach would be virtually limitless— subjecting a vast array of heavily regulated industries to constitutional strictures, interfering to an even greater extent with private decision-making, and overriding voluntary contractual relationships. That's why the Supreme Court rejected in no uncertain terms "the 'being heavily regulated makes you a state actor' theory of state action"—ruling otherwise would "significantly endanger individual liberty and private enterprise." *Halleck*, 139 S. Ct. at 1932.

It doesn't matter, for state-action purposes, that Nasdaq was engaged in a "regulatory function" of its own—overseeing the companies listed on its exchange—when it developed and adopted the Diversity Rules. NCPPR Pet. 9. Exchanges have regulated their members and listed companies since the Founding, so Nasdaq's adoption of rules doesn't entail "exercis[ing] powers that are 'traditionally the exclusive

prerogative of the State.'" *Blum*, 457 U.S. at 1005 (quoting *Jackson*, 419 U.S. at 353).[4]

\*     \*     \*

The panel decision's holding—that Nasdaq isn't a state actor and its rules aren't state action—is correct. It follows directly from a long line of precedent that requires rejecting petitioners' constitutional objections to Nasdaq's rules. Any other result would not only conflict with that precedent (and create a circuit split to boot), but also seriously curtail private parties' ability to make their own decisions free from constitutional strictures.

---

[4] Petitioners' non-delegation argument—that in the absence of state action, the Diversity Rules would violate the private non-delegation doctrine—also fails. *See* Alliance Pet. 11–12; NCPPR Pet. 10. As the panel decision explained, "there is no private nondelegation challenge properly before [the Court] in this case." Op. 15 n.9. In any event, the Commission's authority to review Nasdaq's proposed rules forecloses any possible private non-delegation challenge because Nasdaq "function[s] subordinately" to the federal government. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399–400 (1940). That's precisely why courts have "uniformly" rejected private non-delegation challenges to self-regulatory organizations. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 877 (5th Cir. 2022).

## II.    The panel decision correctly held that the Commission's approval of the Board Diversity Rule is supported by substantial evidence.

The panel decision correctly concluded that substantial evidence supported the Commission's determination that the Board Diversity Rule's disclosure requirements are consistent with the Exchange Act. Op. 26.

In reviewing Nasdaq's rules, the Commission reasonably found that the Board Diversity Rule establishes a disclosure requirement, JA5, and that disclosures under the rule would facilitate the availability of information that a broad swath of investors indicated would be relevant to their investment and proxy-voting decisions.  JA2, 7–8.  Both findings are amply supported by substantial evidence.   As the Commission explained, making the information at issue "widely available" in a "consistent" and "comparable" way "would contribute to investors' investment and voting decisions," by providing "increased transparency" and making "it more efficient and less costly for investors to collect, use, and compare [that] information."  JA2, 7–8.

According to petitioners, however, the panel decision will open the floodgates to all manner of disclosure requirements with no connection to

corporate performance because, in petitioners' view, the panel decision "removed all objective limitations on what SEC and national exchanges can force companies to disclose or explain." NCPPR Pet. 4; *see also id.* at 6–8; Alliance Pet. 13–15. But nothing in the panel decision undercuts the meaningful constraints imposed by the Exchange Act, which requires that disclosure rules (1) "remove impediments to and perfect the mechanism of a free and open market" and "protect investors and the public interest," and (2) not "permit unfair discrimination between customers, issuers, brokers, or dealers," impose an unwarranted burden on competition, or "regulate . . . matters not related to the [Act's] purposes." 15 U.S.C. § 78f(b)(5), (8).

The panel decision doesn't alter these fundamental limits on exchanges' authority in any way. Nor does it in any way expand the types of disclosures the *Commission itself* can impose under the Exchange Act—which isn't at issue here. The decision merely concludes that there was substantial evidence in the record to support the Commission's finding that the Board Diversity Rule is consistent with the purposes of the Exchange Act because, as the Commission explained, there is "broad demand" for standardized board diversity information "from

'institutional investors, investment managers, listed companies, and individual investors.'" Op. 28–29 (quoting JA7).

This evidence was "sufficient," the panel decision correctly concluded, "to support the SEC's determination that ***regardless of whether investors think that board diversity is good or bad for companies***, disclosure of information about board diversity would inform how investors behave in the market." Op. 29 (emphasis added); *see also* Op. 41–43.

The Alliance now insists (at 13) that the "broad demand" for diversity information was really just the work of "a handful of financial activists." But that characterization is belied by the record. JA6–8 & nn.73–77, nn.91–92; *see also* Investors & Investment Advisers Panel-Stage Amicus Br. 5–9, 13–31 (investors and advisers "who collectively manage $18.3 trillion" "support Nasdaq's Board Diversity Matrix because it will greatly improve the accessibility, quality, and consistency of information relating to companies' overall board diversity"); Nasdaq-Listed Companies Panel-Stage Amicus Br. 5 (describing "strong and growing investor interest in board diversity data"). Petitioners don't otherwise seriously dispute the panel decision's assessment of the

evidentiary record—and for good reason.  That record meaningfully distinguishes the Board Diversity Rule from petitioners' parade of horribles.

Moreover, the vigorous competition among exchanges for listings imposes additional, practical limitations on the disclosure requirements that Nasdaq and other exchanges can adopt.  If a listed company deems compliance with a disclosure rule to be overly burdensome or unduly intrusive, it's free to switch its listing to another exchange—which is a strong deterrent to adopting unwarranted, overbroad disclosure obligations.  There is no need for judicial intervention to supplement these powerful market-based constraints on the exchanges.

*     *     *

Issues of diversity in the boardroom raise important questions on which people of good faith can disagree.  But this case presents none of them.  Instead, it asks whether Nasdaq's rules are state action and whether substantial evidence supports the Commission's conclusion that the rules comport with the Exchange Act.  Consistent with precedent from the Supreme Court, this Court, and other courts across the country, the panel decision correctly rejected petitioners' challenges.  Nothing in

the panel decision's correct resolution of those challenges merits further review.

## CONCLUSION

The petitions for rehearing en banc should be denied.

Dated:  December 18, 2023

Respectfully submitted,

 /s/ Allyson N. Ho

John Zecca
Jeffrey S. Davis
John Yetter
Joanne Pedone
THE NASDAQ STOCK MARKET LLC
805 King Farm Boulevard
Rockville, Maryland  20850

Stephen J. Kastenberg
Paul Lantieri III
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania  19103

Seth D. Berlin
BALLARD SPAHR LLP
1909 K Street, N.W., 12th Floor
Washington, D.C.  20006

Allyson N. Ho
Bradley G. Hubbard
Paulette C. Miniter
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2971
*aho@gibsondunn.com*
*bhubbard@gibsondunn.com*
*pminiter@gibsondunn.com*

Amir C. Tayrani
Amalia E. Reiss
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

*Counsel for Intervenor*
*The Nasdaq Stock Market LLC*

## CERTIFICATE OF SERVICE

I certify that, on December 18, 2023, a true and correct copy of the foregoing brief was served via the Court's CM/ECF system on all counsel of record.

*/s/ Allyson N. Ho*
Allyson N. Ho

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because this brief was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word 2019.  This brief complies with the type-volume limitation of Rule 35(b)(2) because it contains 3,893 words, excluding the parts exempted under Rule 32(f).

*/s/ Allyson N. Ho*
Allyson N. Ho