No. 21-60626

# In the United States Court of Appeals for the Fifth Circuit

---

ALLIANCE FOR FAIR BOARD RECRUITMENT;
NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,

*Petitioners,*

*v.*

SECURITIES EXCHANGE COMMISSION,

*Respondents.*

---

On Petition for Review of an Order of the
United States Securities and Exchange Commission
No. 34-92590

---

### BRIEF FOR *AMICUS CURIAE* CORY R. LIU IN SUPPORT OF PETITIONERS

---

Devon Westhill
CENTER FOR EQUAL OPPORTUNITY
1054 31st NW, Suite 330
Washington, D.C. 20007
(202) 886-2000

Daniel I. Morenoff
   *Counsel of Record*
Joseph A. Bingham
AMERICAN CIVIL RIGHTS PROJECT
Post Office Box 12207
Dallas, TX 75225
(214) 504-1835

*Counsel for Amicus Curiae*

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, the undersigned counsel certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made so that this Court may evaluate possible disqualification or recusal.

1. *Amicus curiae* Cory R. Liu;

2. Daniel I. Morenoff and Joseph A. Bingham of the American Civil Rights Project, counsel for *amicus curiae* Cory R. Liu;

3. Devon Westhill of the Center for Equal Opportunity, counsel for *amicus curiae* Cory R. Liu.

Dated March 28, 2024

*/s/Daniel I. Morenoff*
Daniel I. Morenoff

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF *AMICUS CURIAE* ..................................................................... 1

ARGUMENT ........................................................................................................ 2

    I.    The Challenged Rule Irrationally Discriminates Between Different Forms of Diversity ......................................... 2

    II.   The Challenged Rule Irrationally Treats Racial Minorities as Interchangeable With Sexual Orientation and Gender Identity Minorities ................................................................... 4

CONCLUSION ..................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**

*Hopwood v. Texas*,
  78 F.3d 932 (5th Cir. 1996) ................................................................. 3

*Students for Fair Admissions, Inc. v.
  President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) ............................................................................ 4

**Other Authorities**

Deena Prichep, *For LGBTQ People of Color,
  Discrimination Compounds*, NPR (Nov. 25, 2017),
  perma.cc/SUM6-P3UE ...................................................................... 5

Dennis Austin, *White Gay Culture's Toxicity Resembles Racism*,
  DAILY ILLINI (Sept. 24, 2021), perma.cc/HE7A-BH8E ........................... 5

Kenji Yoshino, *Covering*,
  111 YALE L.J. 769 (2001) ................................................................... 6

Michael Dru Kelley, *Is George Santos Even Gay?*,
  ADVOCATE (Jan. 13, 2023), perma.cc/KT8B-8Q7W .............................. 6

Rebecca Nagle, *Invisibility is the Modern Form of Racism
  Against Native Americans*, TEEN VOGUE (Oct. 23, 2018),
  perma.cc/6XNV-VPMB ....................................................................... 6

Sanford Levinson, *Diversity*,
  2 U. PA. J. CONST. L. 573 (2000) ..................................................... 2, 3

Wesley Yang, *Paper Tigers*, N.Y. MAG. (May 6, 2011),
  perma.cc/W8EZ-ZPMU ....................................................................... 6

## INTEREST OF *AMICUS CURIAE*

Cory R. Liu is an attorney and civil-rights scholar whose *amicus* brief on behalf of Professor David E. Bernstein was relied upon by the Supreme Court in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023). He is the author of *Affirmative Action's Badge of Inferiority on Asian Americans*, 22 Tex. Rev. L. & Pol. 317 (2018), and co-author of *Individual Dignity as the Foundation of an Inclusive Society*, 77 SMU L. Rev. (forthcoming 2024).

No party's counsel authored any portion of this brief. No person other than *amicus* and his counsel made any monetary contribution to fund the preparation or submission of this brief. The parties have consented to the filing of this brief.

**ARGUMENT**

There are right ways and wrong ways to achieve diversity. The challenged rule creates a bizarre and irrational hierarchy of identities, setting a baseline expectation that corporate boards should have at least one woman, but treating racial, sexual-orientation, and gender-identity minorities as optional and interchangeable. This discrimination between different forms of diversity and treatment of different minority groups as interchangeable makes no sense and cannot withstand judicial scrutiny under even the most deferential standard of rational-basis review.

**I. The Challenged Rule Irrationally Discriminates Between Different Forms of Diversity**

In critiquing the goal of diversity, Professor Sanford Levinson once observed that "there are always going to be many more distinct groups . . . than there are spaces available." Sanford Levinson, *Diversity*, 2 U. PA. J. CONST. L. 573, 601 (2000). Hence, "any and all 'diversity'-oriented programs will *necessarily* be limited in their scope, [and] preferences for only certain . . . groups must be defended on the basis of some argument other than a striving for diversity as such." *Id.* "One must always assert, as a practical matter, that the diversity provided by group

*A* is more important, along some relevant dimensions, than that provided by some groups *B, C, . . . .*" *Id.*

Professor Levinson is hardly the first person to make this observation. As Judge Wiener of this Court observed in *Hopwood v. Texas* when he concluded that the University of Texas's admissions policy was not narrowly tailored to achieve diversity:

> [B]lacks and Mexican Americans are but two among any number of racial or ethnic groups that could and presumably should contribute to genuine diversity. By singling out only those two ethnic groups, the initial stage of the law school's 1992 admissions process ignored altogether non-Mexican Hispanic Americans, Asian Americans, and Native Americans, to name but a few.

*Hopwood v. Texas*, 78 F.3d 932, 966 (5th Cir. 1996) (Wiener, J., specially concurring).

In this case, the challenged rule arbitrarily privileges diversity of sex over diversity of race, sexual orientation, and gender identity by treating the latter three categories of identities as optional and interchangeable. The rule is structured to ask two different questions:

1. Does the board have at least one member who is a woman?

2. Does the board have at least one member who is *either* a racial minority *or* LGBTQ+?

3

The SEC and Nasdaq can proffer no rational basis for why it chose this policy over any number of other potential permutations, such as:

| First Question | Second Question | Third Question |
|---|---|---|
| Racial Minority | Woman or LGBTQ+ | N/A |
| LGBTQ+ | Racial Minority or Woman | N/A |
| Woman | Racial Minority | LGBTQ+ |

Each of these permutations would have different effects on how corporate boards think about and prioritize different aspects of diversity. The SEC and Nasdaq rejected them all and arbitrarily chose to privilege diversity of sex over diversity of race, sexual orientation, and gender identity, treating the latter three categories of identities as optional and interchangeable. In doing so, they irrationally discriminated between different forms of diversity.

**II.   The Challenged Rule Irrationally Treats Racial Minorities as Interchangeable with Sexual Orientation and Gender Identity Minorities**

The Supreme Court recently chastised Harvard University for "using racial categories that are plainly overbroad," "arbitrary or undefined," or "underinclusive." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 216 (2023). For

4

example, the "Asian" category "sweeps into one pile" disparate groups from around the world that "constitute about 60% of the world's population," and the "Hispanic" category includes people from both Europe and Latin America. *Id.* at 292 (Gorsuch, J., concurring). These crude "classifications depend . . . on irrational stereotypes." *Id.*

The challenged rule approaches diversity even more crudely, grouping all racial minorities into *one* category and then treating that category as interchangeable with sexual-orientation and gender-identity minorities. The rule codifies the notion that the contribution of a white bisexual man to diversity is not merely similar to, but *interchangeable with*, the contributions of a straight black man or a transgender Native American. That is plainly irrational.

The experiences of racial, sexual-orientation, and gender-identity minorities are not usefully analogous, let alone interchangeable. *See, e.g.*, Dennis Austin, *White Gay Culture's Toxicity Resembles Racism*, DAILY ILLINI (Sept. 24, 2021), perma.cc/HE7A-BH8E ("There exists a segment of white gay culture that is just as inherently racist and problematic as their white heterosexual counterparts."); Deena Prichep, *For LGBTQ People of Color, Discrimination Compounds*, NPR (Nov. 25, 2017),

perma.cc/SUM6-P3UE (noting that "communities of color . . . may not always see LGBTQ issues as part of the same struggle"). For example, racial discrimination frequently occurs based on a person's appearance or surname, but it is more difficult to draw conclusions about a person's sexual orientation. *See, e.g.*, Kenji Yoshino, *Covering*, 111 YALE L.J. 769, 772 (2001) (noting that "gays are generally able to assimilate in more ways than either racial minorities or women"); Michael Dru Kelley, *Is George Santos Even Gay?*, ADVOCATE (Jan. 13, 2023), perma.cc/KT8B-8Q7W (explaining that a business holding itself out as LGBTQ+-owned-and-operated requires "three affidavits from three individuals attesting under penalty of law that you identify as LGBTQ+").

By treating racial minorities as interchangeable with sexual-orientation and gender-identity minorities, the rule furthers the erasure of racial minorities from American public life and represents a step back from the progress this nation made with the passage of the Civil Rights Act of 1964. *See, e.g.*, Rebecca Nagle, *Invisibility is the Modern Form of Racism Against Native Americans*, TEEN VOGUE (Oct. 23, 2018), perma.cc/6XNV-VPMB; Wesley Yang, *Paper Tigers*, N.Y. MAG. (May 6, 2011), perma.cc/W8EZ-ZPMU ("Here is what I sometimes suspect my

face signifies to other Americans: an invisible person, barely distinguishable from a mass of faces that resemble it.").

The only appropriate and lawful way to achieve diversity is to treat people as unique individuals rather than stereotyping them based on limited aspects of their identity. *See Fair Admissions*, 600 U.S. at 230–31. The challenged rule is a clumsy, wrongheaded, and unlawful attempt to move our society even further toward one dominated by identity-based quotas. A decision from this Court holding the rule unlawful would be an important and necessary step toward ensuring "that this country will live up to its principles so clearly enunciated in the Declaration of Independence and the Constitution of the United States: that all men are created equal, are equal citizens, and must be treated equally before the law." *Id.* at 287 (Thomas, J., concurring).

## CONCLUSION

The SEC order and Nasdaq rule are unlawful and cannot withstand judicial scrutiny under even the most deferential standard of rational-basis review.

Respectfully submitted,

*/s/ Daniel I. Morenoff*
Daniel I. Morenoff
Joseph A. Bingham
AMERICAN CIVIL RIGHTS PROJECT
Post Office Box 12207
Dallas TX 75225
(214) 504-1835
dan@americancivilrightsproject.org
joe@americancivilrightsproject.org

Devon Westhill
CENTER FOR EQUAL OPPORTUNITY
1054 31st NW, Suite 330
Washington, D.C. 20007
(202) 886-2000
devon.westhill@ceousa.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

On March 28, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Microsoft Defender and is free of viruses.

*/s/ Daniel I. Morenoff*
Daniel I. Morenoff

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 29(a)(5), because excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 1,219 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, Size 14.

*/s/ Daniel I. Morenoff*
Daniel I. Morenoff