# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 21-60626

ALLIANCE FOR FAIR BOARD RECRUITMENT, NATIONAL CENTER
FOR PUBLIC POLICY RESEARCH,

*Petitioners,*

v.

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

ON PETITION FOR REVIEW OF AN ORDER OF THE UNITED STATES
SECURITIES AND EXCHANGE COMMISSION NO. 34-92590

## BRIEF OF *AMICUS CURIAE* PROFESSOR JOSEPH A. GRUNDFEST IN SUPPORT OF RESPONDENT SECURITIES AND EXCHANGE COMMISSION

## SUBMITTED UPON RE-HEARING *EN BANC*

STEVEN M. SHEPARD
SUSMAN GODFREY L.L.P.
*Attorneys for Amicus Curiae*
One Manhattan West
295 Ninth Avenue
New York, New York 10001
(212) 336-8330
sshepard@susmangodfrey.com

CP COUNSEL PRESS    (800) 4-APPEAL • (329433)

*No. 21-60626, Alliance for Fair Board Recruitment; National Center for Public Policy Research v. Securities and Exchange Commission*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of Rule 28.2.2 have an interest in

the outcome of this case. These representations are made in order that the judges of

this court may evaluation possible disqualifications or recusal.

### *Petitioners*
Alliance for Fair Board Recruitment
National Center for Public Policy Research

### *Counsel for Petitioners*
Jonathan Berry, Boyden Gray & Associates
R. Trent McCotter, Boyden Gray & Associates
Michael Buschbacher, Boyden Gray & Associates
Jared Kelson, Boyden Gray & Associates
James R. Conde, Boyden Gray & Associates
Mark Chenoweth, New Civil Liberties Alliance
Margaret A. Little, New Civil Liberties Alliance
Sheng Tao Li, New Civil Liberties Alliance

### *Respondent*
U.S. Securities and Exchange Commission
Counsel for Respondent
Megan Barbero, U.S. Securities and Exchange Commission
Michael A. Conley, U.S. Securities and Exchange Commission
Daniel Matro, U.S. Securities and Exchange Commission
Tracey A. Hardin, U.S. Securities and Exchange Commission
John Robert Rady, U.S. Securities and Exchange Commission

***Intervenor***
Nasdaq Stock Market, L.L.C.

***Counsel for Intervenor***
Allyson Newton Ho, Gibson, Dunn & Crutcher, L.L.P.
Seth D. Berlin, Ballard Spahr, L.L.P.
Bradley G. Hubbard, Gibson, Dunn & Crutcher, L.L.P.
Stephen J. Kastenberg, Ballard Spahr, L.L.P.
Paul Lantieri, III, Ballard Spahr, L.L.P.
Paulette Miniter, Gibson, Dunn & Crutcher, L.L.P.
Joanne Pedone, Nasdaq Incorporated
Amalia E. Reiss, Gibson, Dunn & Crutcher, L.L.P.
Amir C. Tayrani, Gibson, Dunn & Crutcher, L.L.P.
John Yetter, Nasdaq, Incorporated
John Zecca, Nasdaq, Incorporated

***Amicus Curiae Cory R. Liu***

***Counsel for Amicus Curiae Cory R. Liu***
Devon Westhill, Center for Equal Opportunity
Daniel I. Morenoff, American Civil Rights Project
Joseph A. Bingham, American Civil Rights Project
State Amici Curiae in Support of Petitioners
State of Arizona, State of Alabama, State of Alaska, State of Arkansas,
State of Florida, State of Georgia, State of Idaho, State of Indiana, State
of Iowa, State of Kansas, State of Kentucky, State of Louisiana, State of
Mississippi, State of Missouri, State of Montana, State of Nebraska,
State of North Dakota, State of Ohio, State of Oklahoma, State of South
Carolina, State of South Dakota, State of Tennessee, State of Texas,
State of Utah, State of Virginia, State of West Virginia

***Counsel for State Amici***
Drew C. Ensign, Holtzman Vogel Baran Torchinsky & Josefiak, PLLC
Sean D. Reyes, Office of the Utah Attorney General
Stanford E. Pursuer, Office of the Utah Attorney General
Christopher A. Bates, Office of the Utah Attorney General

***Amicus Curiae Buckeye Institute***

ii

**_Counsel for Amicus Curiae Buckeye Institute_**

Jay R. Carson, Buckeye Institute
David C. Tyron, Buckeye Institute
Alex M. Certo, Buckeye Institute
John J. Park Jr.

**_Amicus Curiae Advancing American Freedom, Inc. et al._**

**_Counsel for Advancing American Freedom, Inc. et al._**

J. Marc Wheat, Advancing American Freedom, Inc.
Timothy Harper, Advancing American Freedom, Inc.
Ilya Shapiro, Manhattan Institute
Tim Rosenberger, Manhattan Institute

**_Amici Curiae Nonpartisan Group of Academics and Petitioners in the Field of Corporate Governance* in Support of Respondent_**

**_Counsel for Nonpartisan Group of Academics and Petitioners in the Field of Corporate Governance_**

Marc Wolinsky, Wachtell, Lipton, Rosen & Katz
Elaine P. Golin, Wachtell, Lipton, Rosen & Katz
Carrie M. Reilly, Wachtell, Lipton, Rosen & Katz
Kevin S. Schwartz, Wachtell, Lipton, Rosen & Katz
Jeohn Salone Favors, Wachtell, Lipton, Rosen & Katz

**_Amici Curiae Investors and Investment Advisers in Support of Respondent_**
**_Council of Institutional Investors_**

Investment Adviser Association
Northern Trust Investments, Incorporated
Ariel Investments, L.L.C.
Boston Trust Walden Company
Lord, Abett & Company, L.L.C.
Gaingels, Incorporated
Robert F. Kennedy Center for Justice & Human Rights

**_Counsel for Amici Curiae Investors and Investment Advisers_**

Neal S. Manne, Susman Godfrey L.L.P.
Seven M. Shepard, Susman Godfrey L.L.P.
Arun Subramanian, Susman Godfrey L.L.P.

iii

***Amicus Curiae Financial Industry Regulatory Authority, Inc. in Support of Respondent***

***Counsel for Amicus Curiae Financial Industry Regulatory Authority, Inc.***
Aaron Streett, Baker Botts L.L.P.
Elisabeth Butler, Baker Botts L.L.P.

***Amici Curiae Ad Hoc Coalition of Nasdaq-Listed Companies in Support of Respondent***

***Counsel for Amici Curiae Ad Hoc Coalition of Nasdaq-Listed Companies***
Pratik Shah, Akin Gump Strauss Hauer & Feld LLP
Juliana DeVries, Akin Gump Strauss Hauer & Feld LLP

***Amicus Curiae American Civil Liberties Union***

***Counsel for Amicus Curiae American Civil Liberties Union***
Brian Hauss, American Civil Liberties Union
Sandra S. Park, American Civil Liberties Union

***Amicus Curiae Sean J. Griffith***

***Counsel for Amicus Curiae Sean J. Griffith***
Heather Gebelin Hacker, Hacker Stephens LLP

***Amicus Curiae Interfaith Center on Corporate Responsibility***

***Counsel for Amicus Curiae Interfaith Center on Corporate Responsibility***
Beth-Ann Roth, R|K Invest Law, PBC
Richard A. Kirby, R|K Invest Law, PBC

***Amici Curiae Academic Experts in the Fields of Business, Management, and Economics in Support of Respondent***
Gennaro Bernile
Douglas Cumming
Daniel P. Forbes
Aida Sijamic Wahid
Scott E. Yonker

iv

K.J. Martijn Cremers
Amy Hillman
Frances J. Milliken
Quinetta M. Roberson

***Counsel for Amici Curiae Academic Experts in the Fields of Business, Management and Economics***
Victoria Nugent, Democracy Forward Foundation
Aman T. George, Democracy Forward Foundation
Peter C. Renn, Lambda Legal Defense and Education Fund, Inc.
Karen L. Loewy, Lambda Legal Defense and Education Fund, Inc.

Dated: May 6, 2024                     Respectfully submitted,

                                       */s/ Steven M. Shepard*
                                       Steven M. Shepard
                                       SUSMAN GODFREY L.L.P.
                                       One Manhattan West, 50th Floor
                                       New York, NY 10001
                                       Phone: (212) 336-8330
                                       sshepard@susmangodfrey.com

                                       *Counsel for Amicus Curiae*

v

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ vii

INTEREST OF *AMICUS CURIAE* ........................................................... 1

INTRODUCTION ...................................................................................... 3

ARGUMENT .............................................................................................. 4

    I.    Petitioners Mischaracterize the Diversity Rules' Requirements .................................................................................... 4

    II.   The Exchange Act Does Not Limit Disclosure Requirements to Material Information .......................................................... 9

        A.    The Statutory Text Nowhere Limits Disclosure Requirements to "Material" Information ................................. 10

        B.    Materiality is Not Limited to "Investment Factors" or "Quantitative Considerations." ................................................. 13

    III.  The Diversity Rules Satisfy the Exchange Act Provisions Regarding SEC Approval of Exchange Rules .................................... 17

CONCLUSION .......................................................................................... 21

CERTIFICATE OF COMPLIANCE ......................................................... 24

CERTIFICATE OF SERVICE .................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. Sandoval*,
532 U.S. 275 (2001)..........................................................................................12

*Dillon v. Berg*,
326 F. Supp. 1214 (D. Del.), *aff'd*, 453 F.2d 876 (3d Cir. 1971).......................14

*Nat. Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*,
606 F.2d 1031 (D.C. Cir. 1979).........................................................................12

*Newcastle Partners, L.P. v. Vesta Ins. Grp., Inc.*,
887 A.2d 975 (Del. Ch.), *aff'd*, 906 A.2d 807 (Del. 2005) ................................14

*Resnik v. Woertz*,
774 F. Supp. 2d 614 (D. Del. 2011)....................................................................14

*Spanakos v. Pate*,
237 A.3d 809 (Del. 2020) ...................................................................................14

*TSC Industries, Inc. v. Northway, Inc.*,
426 U.S. 438 (1976)......................................................................................14, 15

*United Sav. Ass'n of Tex. V. Timbers Inwood Forest Assocs. Ltd.*,
484 U.S. 365 (1988).............................................................................................4

## Statutes

Securities Act of 1933, 15 U.S.C. § 7(a)(1)............................................................12

Securities Act of 1933, 15 U.S. C. §11(a) ..............................................................10

Securities Exchange Act of 1934, 15 U.S.C. § 6(b) .................................................4

Securities Exchange Act of 1934, 15 U.S. C. § 23(e)(2)...........................................4

Securities Exchange Act of 1934, 15 U.S.C. § 77aa ...............................................11

Securities Exchange Act of 1934, 15 U.S.C. § 77g(a)(1)........................................12

Securities Exchange Act of 1934, 15 U.S.C. § 77k(a) ............................................10

Securities Exchange Act of 1934, 15 U.S.C. § 78c(f) ............................................21

Securities Exchange Act of 1934, 15 U.S.C. § 78f(b) ............................................17

Securities Exchange Act of 1934, 15 U.S.C. § 78f(b)(8) ........................................19

Securities Exchange Act of 1934, 15 U.S.C. § 78n(a) ............................................14

**Other Authorities**

17 C.F.R. § 240.14a-9(a) ...........................................................................................15

17 C.F.R. § Pt. 211, Subpt. B.....................................................................................16

64 Fed. Reg. 45,150 (Aug. 12, 1999) ........................................................................16

*Brief of Investors and Investment Advisers as Amici Curiae*, No. 21-
   60626 (filed Feb. 24, 2022) ..................................................................................18

Usha Rodrigues, Dictation and Delegation in Securities Regulation,
   92 Ind. L.J. 453 (2017) .........................................................................................12

## INTEREST OF *AMICUS CURIAE*

Joseph A. Grundfest, Esq., is the William A, Franke Professor of Law and Business at Stanford Law School (emeritus). He served as a Commissioner of the United States Securities and Exchange Commission from 1985 to 1990. He is a leading authority in the fields of securities and corporate law. His scholarship has been published in the Harvard, Yale, and Stanford Law reviews, among other leading journals. He has for decades taught securities regulation, including analyses of the relationship between SEC and Exchange regulation, both to law students and to corporate counsel and executives as part of professional education programs. Professor Grundfest has been recognized as among the nation's most influential attorneys and leading authorities on corporate governance.

Professor Grundfest's scholarship and pedagogy relating to Exchange regulation is amplified by his real-world experience as a director, and audit committee member or chair, of three publicly traded corporations, two of which were Nasdaq-listed at the time of Professor Grundfest's board service: Oracle Corp., KKR & Co. Inc., and Financial Engines, Inc.

Professor Grundfest thus addresses the question presented from the perspective of a director of a listed corporation subject to the challenged Diversity Rules, as well as from the perspective of an academic expert in the field.

1

All parties to this case have consented to the filing of this amicus brief.

No party or its counsel authored this brief or contributed money to fund the preparation and submission of this brief.

## INTRODUCTION

Petitioners attack a strawman. They mischaracterize the Diversity Rules by incorrectly claiming that the Rules mandate quotas; require that listed companies impose labels on their directors; and compel directors to divulge gender and demographic information. None of these characterizations are accurate. Petitioners thus challenge Rules that Nasdaq never proposed and that the Commission never approved. Indeed, these mischaracterizations are foundational because Petitioners implicitly recognize that their objections fail if lodged against the Rules as written. Their challenge fails for this reason alone.

Petitioners' next error is their contention that Nasdaq's and the Commission's authority is limited to disclosure rules that apply exclusively to "material" information—a concept that Petitioners mischaracterize to mean only financial information relating to "quantitative considerations." Alliance for Fair Board Recruitment ("**Alliance**") En Banc Br. 60; *see* National Center for Public Policy Research ("**NCPPR**") En Banc Br. 25 (claiming SEC rulemaking is limited to information related to "financial returns on investments" and "decision[s] to invest"). The statute's plain text, legal precedent, and Commission regulations all powerfully reject this proposition. The Commission and Exchanges are authorized by statute to require disclosure of non-material information. Imposing a materiality

constraint would cause nothing less than a tectonic shift in a disclosure regime that has worked well for decades.

Petitioners' materiality analysis is additionally flawed because, even if a materiality constraint is incorrectly applied, the record establishes that the Diversity Rules *do* call for material disclosures. Many of the world's largest and most sophisticated investors consider overall board diversity information when casting their proxy votes. A minimalist resolution of this question could thus conclude that the Rules do call for disclosure of material information, and then not need to address the incorrect claim that a materiality constraint applies.

Construed as written, and not as imagined, the Rules also easily satisfy the requirements of Section 6(b) of the Exchange Act.

## ARGUMENT

### I.    Petitioners Mischaracterize the Diversity Rules' Requirements

Justice Scalia, writing for the Court, explained that "statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The same is true for construing the Diversity Rules. Requirements and exemptions go hand in hand. Courts cannot squint at text by focusing on requirements while ignoring exemptions. That is not holistic analysis.

4

Petitioners hide from the Rules' exemptions because the exemptions are fatal to large portions of Petitioners' critique. For their arguments to gain traction, Petitioners must imagine Rules that operate very differently from the actual Rules proposed by Nasdaq and approved by the Commission. Petitioners thus ask that this Court vacate Rules that Nasdaq never proposed and that the Commission never approved.

For example, NCPPR describes the Diversity Rules as

[R]equir[ing] companies listed on the Nasdaq Stock Exchange ("Nasdaq") to disclose the race, gender, and sexuality of their directors and to ensure their boards of directors satisfy quotas for those characteristics. Any company that fails to meet these race, gender, and sexuality quotas must publicly explain why it has fallen short of this government-approved requirement. Companies that fail to meet these disclosure and quota requirements are subject to the draconian penalty of delisting from Nasdaq.

NCPPR En Banc Brief at 1. Similarly, Alliance claims that the Rules "require[] the disclosure of controversial information," Alliance En Banc Br. at 1, and "require[] companies to discriminate based on race, sex, and sexual orientation," *id.* at 13.

These materially inaccurate descriptions ignore the central fact that the Rules only require the listed company to disclose its directors' "*voluntary* self-identified characteristics."[1] The Rules' "Instructions" expressly permit individual directors to

---

[1] Rule 5606 (emphasis added).

5

"choose[] not to disclose" how they self-identify.[2] Listed companies are *not* required to provide information that directors "choose not to disclose." The required matrix includes a separate column and a separate row that the listed company uses to report the total number of directors who "did not disclose" to the company how they self-identified.[3] The Rules thus allow for continued listing of companies that fail to disclose any diversity information about any of their directors; that maintain entirely non-diverse boards; and that "explain" this state of affairs by stating that the company disapproves of the entire diversity agenda. To put the matter bluntly, Nasdaq-listed companies can have all-male, all-Caucasian boards; never state that their boards are all-male and all-Caucasian; give no meaningful explanation for that board composition; and they still will not be delisted.

The Rules operate as follows:

*1. The listed company surveys its board.* The listed company must ask its directors how they "*self*-identif[y]."[4] The Rules do not require the listed company to provide its *own* description of how the *company* characterizes the director.

*2. Individual directors respond to the listed company—and can decline to provide gender or demographic information.* The Rules do not require directors to

---

[2] Nasdaq, Board Diversity Matrix Instructions and Templates ¶ 4, last updated June 6, 2023, available at https://perma.cc/Z4B5-RJR5 (last viewed on May 1, 2024).
[3] Rule 5606.
[4] *Id.* (emphasis added).

provide information in response to the listed company's survey. Nasdaq emphasizes that each director's response is to be "*voluntary*."[5] Nasdaq's instructions emphasize that directors are free to "choose[] not to disclose" how they self-identify.[6]

   *3. The listed company must report the <u>overall</u> results of its survey.* The listed company must tally the directors' responses and then report, in an aggregated "matrix" format defined by Rule 5606, the *total number* of directors who self-identified in each category. *Individual* directors' responses are not reported; only the *aggregate totals* are reported. And the matrix contains separate categories for directors who "did not disclose" self-identifications.[7] The diversity information reported by the listed company is therefore entirely derivative of and conditional on individual directors' disclosure decisions, including individual directors' decisions to decline to provide gender or demographic information. The listed company is *not* required to provide its *own* characterization of any director's gender or demographic information.

   *4. The listed company may be required to include an "explanation"—which can be entirely anodyne and still not cause delisting.* If the listed company's matrix

---

[5] *Id.* (emphasis added).

[6] Nasdaq, Board Diversity Matrix Instructions and Templates ¶ 4, last updated June 6, 2023, available at https://perma.cc/Z4B5-RJR5 (last viewed on May 1, 2024).

[7] Rule 5606.

reports fewer directors self-identifying as diverse than the applicable number set forth in Rule 5605(f)(2), then the listed company must provide an "explanation" that can be entirely anodyne. Nasdaq "will not assess the substance of" the explanation, and the listed company can "disclose as much, or as little, insight into the company's circumstances or diversity philosophy as the company determines." John Zecca, Letter to Vanessa Countryman, at 7 & 8 (Feb. 26, 2021).[8] The listed company can even satisfy the "explanation" requirement with a single sentence that expresses disagreement with the Diversity Rules. If the listed company's explanation states (in total) that "The Company does not meet the diversity objectives of Rule 5605(f)(2)(C) because it does not believe Nasdaq's listing rule is appropriate," then that would satisfy the listed company's obligation and it would not be delisted. *Id.* Other anodyne (and acceptable) explanations include the following:

- "The Company does not meet the diversity objectives of Rule 5605(f)(2)(A) because the Nominations Committee considers a variety of professional, industry, and personal backgrounds and skill sets to provide the Board with the appropriate talent, skills, and expertise to oversee the Company's business."

- "[The company] is committed to ensuring that the Board's composition appropriately reflects the current and anticipated needs of the Board and the company."

---

[8]  https://www.sec.gov/comments/sr-nasdaq-2020-081/srnasdaq2020081-8425992-229601.pdf.

- "[The company] does not believe achieving Nasdaq's diversity objectives are feasible given the company's current circumstances."

*Id.*

The Diversity Rules thus permit a listed company: (1) to have an entirely non-diverse board; (2) to provide a matrix containing no board diversity information (if each director declines to provide that information); and (3) to explain that matrix by stating that it rejects the entire exercise as inappropriate, or by explaining that its board has determined that its "composition appropriately reflects" the Company's "needs." *Id.*

Petitioners would have this Court believe that a listed company so contumacious of the Diversity Rules would be delisted. That is simply not true, and that rendition of the Rules' operation distorts the plain language of the text. Petitioners thus dramatically and strategically distort what the Rules actually require, and exaggerate the magnitude of compulsion inherent in the Rules. Indeed, this exaggeration is a necessary foundation for many of the challenges Petitioners lodge against the SEC's approval.

## II. The Exchange Act Does Not Limit Disclosure Requirements to Material Information

Petitioners next claim that the Exchange Act limits disclosure rules to only "material" information—by which they mean, "financially material" and "quantitative" information. Alliance En Banc Br. 60; *see* NCPPR En Banc Br. 25

(claiming the Exchange Act limits disclosure rules to information related to "financial returns on investments" and "decision[s] to invest"). Both propositions are demonstrably incorrect. The Exchange Act's disclosure rules are not constrained solely to "material" matters and the concept of "materiality" is not limited solely to "financial" or "quantitative" information.

### A.    The Statutory Text Nowhere Limits Disclosure Requirements to "Material" Information

Petitioners' first mistake is claiming that the Exchange Act limits disclosure rules only to *material* information. Alliance En Banc Br. 58-60; NCPPR En Banc Br. at 25-26. Petitioners cite no direct statutory support for one simple reason. No such support exists.

The Exchange Act nowhere limits disclosure requirements to solely requiring disclosure of "material" information. To the contrary, when Congress adopted the Securities Act in 1933 it expressly commanded disclosure of *immaterial* information and did not amend that requirement when it adopted the Exchange Act in 1934. Nor has Congress modified that command on the numerous subsequent occasions when it has amended the federal securities laws.

Petitioners ask that this Court rewrite federal securities law to impose a constraint Congress never intended, that would conflict with express statutory provisions, and that would cause a dramatic change in the entire structure of federal

securities law. They ask that this Court impose a materiality constraint that was never enacted by Congress and that would raise separation-of-powers concerns.

Congress clearly knew in 1933 and 1934 how to impose materiality constraints. Section 11(a) of the Securities Act of 1933 imposes civil liability for any "untrue statement of a *material* fact" in a registration statement, or for omission of "a *material* fact" from that statement. 15 U.S.C. § 77k(a) (emphasis added). Congress did so again in Section 17(a)(2), which makes it "unlawful" to "obtain money or property by means of any untrue statement of a *material* fact or any omission to state a *material* fact." *Id.* § 77q(a)(2) (emphasis added).

But when it came to *disclosure* requirements, Congress imposed no such materiality requirement. Indeed, Congress *commanded* immaterial disclosures in Schedule A of the Securities Act of 1933.[9] To this day, the Commission's integrated disclosure regime is based on Schedule A, which prescribes 32 categories of information that must be included in registration statements. Several Schedule A items require immaterial disclosures. Item 17 requires disclosure of "all commissions or discounts paid" by the issuer to underwriters—even if the amounts are trivial. Item 18 calls for disclosure of all expenses "in connection with the sale of the security to be offered," even if the expenses are *de minimis*. Item 20 compels

---

[9] Pub. L. No. 73-22, 73 Cong. Ch. 38, May 27, 1933, 48 Stat. 74, Schedule A. Schedule A is currently codified at 15 U.S.C. § 77aa.

disclosure of "any amount paid within two years preceding the filing of the registration statement" to "any promoter," no matter how small. The claim that Congress intended to limit disclosure requirements only to *material* information thus contradicts Schedule A's plain text.

Congress also authorized the Commission to mandate disclosure of "such other information . . . as the Commission may by rules or regulations require as being necessary or appropriate in the public interest or for the protection of investors." Securities Act of 1933, § 7(a)(1), *now codified at* 15 U.S.C. § 77g(a)(1). This delegation also has no materiality constraint, just as Schedule A has no materiality constraint. Thus, "the Commission has been vested by Congress with broad discretionary powers to promulgate (or not to promulgate) rules requiring disclosure of information beyond that specifically required by statute," with no materiality requirement. *Nat. Res. Def. Council, Inc. v. Sec. & Exch. Comm'n*, 606 F.2d 1031, 1045 (D.C. Cir. 1979).

The federal securities laws have been frequently amended.[10] None of those many amendments have ever imposed materiality constraints on the Commission's or the Exchanges' disclosure rules. If such constraints are to be imposed, the imposition should come from our elected representatives in Congress and not be

---

[10] Usha Rodrigues, Dictation and Delegation in Securities Regulation, 92 Ind. L.J. 435 (2017).

invented by the courts. Indeed, Congress is currently considering legislation that would impose a materiality restriction on mandatory disclosure requirements.[11] If the current law is as Petitioners claim, this legislation would be superfluous. But the law is not as Petitioners claim, and just as the courts should not imply private rights of action never intended by Congress, *see Alexander v. Sandoval*, 532 U.S. 275, 289 (2001), so too courts should not apply materiality restrictions never intended by Congress, particularly when a sitting Congress is debating precisely those questions.

### B.     Materiality is Not Limited to "Investment Factors" or "Quantitative Considerations."

Petitioners compound their error by claiming that "material" information is limited solely to information relevant to "investment decisions." NCPPR claims that diversity information is not "material" because it "ha[s] no relevance to investment returns." NCPPR En Banc Br. 2; *id.* at 25-26 (claiming that information is only material if it would be considered important in "making a decision to invest"). Alliance goes even further and states that "materiality" is limited to so-called "quantitative considerations":

> The SEC itself has said that, outside the narrow realm of unlawful behavior or misstatements, materiality is triggered by "quantitative considerations" like

---

[11] *Mandatory Materiality Requirement Act of 2023*, S. 2005, 118th Congress (2023-2024), https://www.congress.gov/bill/118th-congress/senate-bill/2005/text.

profit, loss, and revenue—things that the SEC just concluded have no demonstrable link to "diversity."

Alliance En Banc Br. 60.

This narrow characterization of "materiality" overlooks the fact that stockholders are not solely *investors* who seek an *investment* return on their capital. They are also *owners* of the listed company with statutory rights to *vote* at shareholder meetings on many matters, including matters entirely unrelated to financial returns.[12] Section 14(a) of the Exchange Act expressly protects investor rights to receive information when exercising the corporate franchise in any context, including votes relating to matters that are not related to financial returns.[13]

Ironically, Petitioners rely extensively on *TSC Industries, Inc. v. Northway, Inc*., 426 U.S. 438 (1976), a decision holding that *voting* information is material and does not restrict the definition of materiality to *financial* information. Stockholder

---

[12] "The shareholder meeting to elect directors is a cornerstone of Delaware corporate law, and stockholders' entitlement to such a meeting is paramount." *Spanakos v. Pate*, 237 A.3d 809, 815 (Del. 2020) (cleaned up); *Newcastle Partners, L.P. v. Vesta Ins. Grp., Inc.*, 887 A.2d 975, 977 (Del. Ch.) (ordering company to hold annual meeting, even though audited financial statements were not yet available), *aff'd*, 906 A.2d 807 (Del. 2005).

[13] 15 U.S.C. § 78n(a); *see, e.g.*, *Resnik v. Woertz*, 774 F. Supp. 2d 614, 631 (D. Del. 2011) (details of a compensation plan for company's consultants and advisors was a "material" issue because "a reasonable shareholder would consider it important in deciding how to vote"); *Dillon v. Berg*, 326 F. Supp. 1214, 1233 (D. Del.), *aff'd, 453 F.2d 876, 877* (3d Cir. 1971) (proxy statement's incorrect description of director's status was "material" because the statement claimed that the director "had resigned," but this "purported resignation" was "not effective" under the company's by-laws).

14

plaintiffs in *TSC* alleged that a proxy statement about a proposed sale of the company was materially misleading in violation of Section 14(a) of the Exchange Act. The Supreme Court held that information is "material" if it pertains to any *voting* decision—not solely *investment* decisions: "an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Id.* at 449. "Materiality" does "not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote." *Id.*

A disclosure is therefore material if it significantly influences a *voting* decision. The information need not implicate an *investment* decision or involve a matter of *financial* importance. The matter's influence also does not need to be so significant that it causes even a single stockholder to "change his vote." *Id.* The information need only be a significant element of the decision process by which stockholders decide how to vote.

Petitioners cite *TSC* as though it limits the scope of Commission rulemaking authority or the Commission's ability to approve Exchange disclosure rules. Not so. *TSC* addresses an alleged proxy *fraud* and nowhere addresses the Commission's rulemaking authority. If anything, *TSC* accepts, as given, the Commission's authority to adopt Rule 14a-9, which implements Section 14 by forbidding proxy statements from containing any statement that is "false or misleading with respect

15

to any material fact." 17 C.F.R. § 240.14a-9(a). *TSC* nowhere suggests that the Commission's disclosure requirements must be limited to material matters. *TSC* thus defines "materiality" while never imposing materiality as a constraint on all disclosure requirements, and never limiting materiality to financial or investment considerations.

Alliance also incorrectly asserts that the "SEC itself has said that . . . materiality is triggered by 'quantitative considerations' like 'profit, loss, and revenue.'" Alliance En Banc Br. 60. On the contrary, the Commission's staff has repeatedly repudiated this position by emphasizing that *qualitative* information can also be material. In 1999 the Commission's staff issued Accounting Bulletin 99 titled "Materiality" to address just this point. SEC Staff Accounting Bulletin: No. 99 – Materiality, Release No. SAB 99, 64 Fed. Reg. 45,150 (Aug. 12, 1999).[14] That bulletin unequivocally states that:

> [F]inancial management and the auditor must consider both "quantitative" and "qualitative" factors in assessing an item's materiality. Court decisions, Commission rules and enforcement actions, and accounting and auditing literature have all considered "qualitative" factors in various contexts.

---

[14]   The bulletin is also available on the SEC's website here: https://www.sec.gov/interps/account/sab99.htm. It continues to be listed in the Code of Federal Regulations at 17 C.F.R. § Pt. 211, Subpt. B.

*Id.* at 45,151. Accordingly, "materiality cannot be reduced to a numerical formula."

*Id.* "[E]xclusive reliance on . . . any percentage or numerical threshold has no basis

in the accounting literature or in the law." *Id.*

A more resounding repudiation of Alliance's claim—that the SEC has limited

"materiality" to "quantitative considerations"—would be hard to craft.

## III. The Diversity Rules Satisfy the Exchange Act Provisions Regarding SEC Approval of Exchange Rules

The Diversity Rules—as properly construed, above—are entirely consistent

with Section 6(b)'s provisions governing SEC approval of Exchange rules. 15 U.S.C.

§ 78f(b). Section 6(b)'s text contains no requirement constraining an Exchange's

rules to "material" or "quantitative" or "investment" matters. The statutory text is

instead very broad. The accompanying Senate Report accurately describes the

statutory text as setting forth "purposes and standards" rather than "subject matters":

> Under the bill the *scope of the rule-making authority* and responsibility of all
> self-regulatory organizations would be *defined in terms of purposes and
> standards rather than subject matters*.

S. Rep. 94-75, at 27-28, 1975 U.S.C.C.A.N. 179, at 206 (emphases added).

The SEC correctly found that the Diversity Rules are "designed to . . . remove

impediments to and to perfect the mechanism of a free and open market." 15 U.S.C.

§ 78f(b)(5). The Rules do this by "mak[ing] consistent and comparable information

relating to the corporate governance of Nasdaq-listed companies (i.e., information

regarding board diversity) widely available on the same basis to investors, which

17

would increase efficiency for investors that gather and use this information." SEC Release No. 34-92590 (Aug. 6, 2021) ("**Order**"), at 57.

Many investors consider overall board diversity and the company's explanation for its board composition as relevant to their proxy voting decisions. As documented in an amicus brief submitted to the panel in 2022, public statements by investors and advisors with more than $18 trillion of assets under management attest that board composition information is relevant to them. *Brief of Investors and Investment Advisers as Amici Curiae*, No. 21-60626, at 9 (filed Feb. 24, 2022).

The Diversity Rules significantly reduce these investors' search costs, and thus "remove impediments to" and "perfect the mechanism" of the market, by presenting information about overall board diversity in an easily accessible format. *Id.* at 27. Without the matrix required by the Rules, this information can be very difficult for investors to find. *Id.* at 24-26 (describing the short time frame investors typically have to assess overall board diversity before casting proxy votes, and describing one amicus's efforts to obtain information by "looking at photographs on company websites").

Petitioners nowhere dispute the existence of investor demand for rules that reduce search costs for information relating to board diversity. Nor do Petitioners contend that the Diversity Rules will be ineffective in reducing those search costs. Instead, Petitioners contend that investors are wrong to want this information in the

18

first instance. Petitioners are effectively asking this Court to rule as a matter of law that managers with more than $18 trillion under management are behaving "irrational[ly]." *See* NCPPR En Banc Br. at 31.

The market for investment-management services is a better gauge of "rational" behavior than legal arguments by lawyers. Congress wisely left these disputes to be resolved through market competition. It's not the job of the Commission, or of this Court, to tell investors how they should and shouldn't invest their money or cast proxy votes.

Nasdaq is a private entity that competes for listings with other Exchanges. Its function is to enact rules that serve the evolving needs of the investors and investment advisers who buy, sell, and vote the securities listed on Nasdaq's platforms, and to do so in a competitive manner that is responsive to, and that balances investor interests with, listed company concerns. Whether Nasdaq succeeds or fails in this mission is best determined by intermarket competition that allows listed companies to list and delist in response to changes in listing standards.

Section 6(b)(8) requires that the Commission consider the rule's impact on competition, and prohibits the Commission from adopting rules that "impose any burden on competition not necessary or appropriate in furtherance of the purposes of" the Act. 15 U.S.C. § 78f(b)(8). But Petitioners never explain how the Diversity Rules impose any burden "*to competition*" in the first place.

Indeed, the Diversity Rules are fully compliant with Section 6(b)(8) because they *enhance* "competition," and do not burden it. The Diversity Rules enhance competition between issuers by making information about issuers' overall board diversity, and explanations for non-diversity, easier for investors to locate. *See* Order, at 57 (finding that the rules will "increase efficiency for investors that gather and use this information"). Petitioners dislike the fact that investors make decisions based on this information, but Petitioners' disapproval of investors' choices does not transform the Diversity Rules into a "burden" on "competition."

A differentiated, voluntary approach to diversity disclosure, combined with the free market, creates precisely the form of inter-market competition valued by Congress. There is a robust competition *between* Exchanges, as the SEC correctly pointed out:

> No company is required to list on Nasdaq. Rather, exchanges compete for listings, with four exchanges that currently list securities of operating companies and nine exchanges that have rules for the listing of issuers on the exchange. Listing exchanges compete with each other for listings in many ways, including listing fees, listing standards, and listing services.

Order, at 17.

Inter-Exchange competition is the appropriate market-based solution to Petitioners' critiques of the Diversity Rules. If diversity disclosures add value, Nasdaq will thrive. If the Rule imposes burdens that exceed benefits, Nasdaq will suffer. If Nasdaq "gets it wrong" by adopting overly stringent Diversity Rules, then

listed companies can "vote with their feet" and relist on a competing Exchange. By the same token, issuers listed on competing exchanges who prefer the Diversity Rules' informational efficiency can list on the Nasdaq market. This is the essence of competition. These matters are best decided by markets, not by courts.

The Diversity Rules also satisfy 15 U.S.C. § 78c(f), which requires that, whenever the Commission considers the "public interest" in rulemaking, it "shall also consider, in addition to the protection of investors, whether the action will promote efficiency, competition, and capital formulation." The Diversity Rules' standardization promotes efficiency in obtaining information; the Rules' differentiation promotes competition between Exchanges; and the Rules' reduction of search costs promotes capital formation. The 15 U.S.C. § 78c(f) test is satisfied, as the SEC correctly determined when it found no significant negative effects with respect to any of these characteristics. Order, at 4 n.14 & 51-54.

## CONCLUSION

Petitioners attack a strawman version of the Diversity Rules, and not the Diversity Rules that Nasdaq actually proposed and that the SEC actually approved. The Diversity Rules nowhere compel self-identification by any director. They impose no quotas. They allow a company to remain listed even if the company provides no demographic information and "explains" this by expressing strong disagreement with the Diversity Rules. The Exchange Act imposes no "materiality"

limitation on disclosure rules, and the Diversity Rules easily satisfy the requirements that the Act actually does impose. The petitions should be denied.

Dated:   May 6, 2024                        Respectfully submitted,

                                            */s/ Steven M. Shepard*
                                            Steven M. Shepard

                                            **SUSMAN GODFREY L.L.P.**

                                            One Manhattan West, 50th Floor
                                            New York, NY 10001
                                            Phone: (212) 336-8330
                                            sshepard@susmangodfrey.com

                                            *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this proposed brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because the brief contains 4,497 words, excluding those parts of the brief that are exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in 14-point Times New Roman Font.

*/s/ Steven M. Shepard*
Steven M. Shepard

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I caused the foregoing proposed brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will effect electronic service on all counsel of record.

*/s/ Steven M. Shepard*
Steven M. Shepard